70

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION -

United States District Court
Southern District of Texas
ENTERED

AUG 10 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MARIA F. GUAJARDO, Individually as Administrator of the Estate of Juan Jose Guajardo, and as Guardian of Thomas Guajardo, III, Cynthia Guajardo, and Caroline Guajardo, Minor Children and Alexandro Garcia | § § § § § § | |
| VS. | § § | CIVIL ACTION NO. B-97-215 |
| CITY OF BROWNSVILLE, CITY OF BROWNSVILLE POLICE DEPARTMENT, BEN REYNA, Chief of Police for City of Brownsville Police Department, Individually and in Official Capacity, EDUARDO TREVINO, Individually and in his Official Capacity, and ANA HERNANDEZ, Individually and in her Official Capacity | § § § § § § § § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is Defendants' Motion for Summary Judgment. (Docket No. 32). The Plaintiffs have filed their Second Amended Response to Defendants' Motion for Summary Judgment (Docket No. 64) and the Defendants have filed their Reply (Docket No. 67).

For the reasons set forth below, the Defendants' Motion should be denied in part and granted in part.

### FACTUAL BACKGROUND

The following factual summary is derived from the Plaintiffs' Second Amended Complaint ("Complaint") (Docket No. 36) and Second Amended Response ("Response") (Docket No. 64), and the Defendants' Motion for Summary Judgment ("Motion") (Docket No. 32).

The Plaintiffs-Juan Jose Guajardo's ("Guajardo") estate, mother, and children, bring suit

against the Defendants City of Brownsville ("City"), the City of Brownsville Police Department ("Police Department"), Ben Reyna ("Chief Reyna"), Chief of Police, Officer EduardoTrevino ("Officer Trevino"), and Officer Ana Hernandez ("Officer Hernandez"), in their individual and official capacities for the death of Guajardo while in the custody of the Police Department.  Plaintiffs assert claims under 42 U.S.C. §1983 for violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  In addition, the Plaintiffs assert a claim for fraud and bring a wrongful death and survival action under Texas law, alleging negligence and gross negligence on the part of all Defendants.

On April 8, 1997, Guajardo was admitted into the City Jail following his arrest for public intoxication.  At the time of the incident on which this suit is based, Chief Reyna was the Chief of Police, Officer Trevino was the detention officer on duty, and Officer Hernandez was the jail matron on duty.  The events leading up to Guajardo's death are contested.

The Defendants allege that at the time of his booking, Guajardo was uncooperative, belligerent, intoxicated, and under the influence of cocaine.  As a result of his alleged belligerent behavior, Guajardo was placed in a single cell for his own safety and that of the other inmates. Subsequently, Guajardo was permitted to telephone his mother and was escorted by Officer Treviño to a general holding cell designated as the women's drunk tank ("WDT").  The Defendants claim that Guajardo observed other prisoners in the WDT with blankets and requested one for himself.  Officer Treviño allegedly advised Guajardo that one would be provided upon entering the cell.  The Defendants argue that Guajardo became agitated and belligerent towards Officer Treviño stating "You think you're a big man" and yelling out other expletives in Spanish.  Officer Treviño then attempted to escort Guajardo to a padded cell when Guajardo allegedly grabbed the Officer's

2

uniform, spinning him around, and slamming Officer Treviño against a corner wall outside the WDT. The Defendants claim that Guajardo raised Officer Treviño off the floor and pinned him against a wall. Officer Treviño, allegedly in self defense, placed Guajardo in a bear hug, wrapped his arms around Guajardo's neck, and attempted to push off the wall with his feet. Officer Treviño then called to Officer Hernandez for help. Officer Hernandez came out of the control room and allegedly attempted to pull on Guajardo's leg to separate him from Officer Treviño. The Defendants claim that Officer Hernandez then kicked the back of Guajardo's knee, causing him and Officer Treviño to fall.

The two officers allegedly restrained and handcuffed Guajardo face down on the floor. Noticing that Guajardo was having trouble breathing, Officer Treviño claims to have removed the handcuffs, placed Guajardo on his side, and instructed Officer Hernandez to call Emergency Medical Services ("EMS"). EMS is alleged to have arrived within one or two minutes of the call. EMS personnel allegedly initiated treatment and CPR, but found no signs of breathing or a pulse. Guajardo was then transported to Brownsville Medical Center where he was diagnosed as having a full cardiac arrest. Guajardo did not regain consciousness and died a day later on April 9, 1997 at the Brownsville Medical Center. The Defendants allege that Guajardo's death was a result of a combination of his severe heart disease, his agitated state, and his simultaneous use of alcohol and cocaine.

In contrast, the Plaintiffs allege in their Complaint the following events. The Plaintiffs contend that Officer Treviño and Guajardo entered into a verbal confrontation over a blanket on their way back to Guajardo's cell. While other inmates offered Guajardo a blanket, Officer Treviño allegedly pulled Guajardo from behind towards the booking area while applying a choke hold around his neck. The Plaintiffs contend that while holding Guajardo in this position, Officer Treviño slammed

3

Guajardo's head against a steel access door causing Guajardo to bounce to the lateral wall in the main hall. Thereafter, Officer Treviño called to Officer Hernandez for help. As Officer Treviño allegedly maintained his choke hold, Officer Hernandez grabbed Guajardo's legs causing him to fall face down and handcuffed him. The Plaintiffs aver that the choke hold lasted for about two minutes.

Subsequently, Guajardo was allegedly dragged to a padded cell. The Plaintiffs contend that upon noticing that Guajardo was having trouble breathing, Officers Treviño and Hernandez argued about whether to call EMS or not. Officer Hernandez eventually called EMS against Officer Treviño's suggestion. Upon arrival, the EMS attendant found Guajardo to have no pulse or sign of breathing and was transported to the Brownsville Medical Center following attempts to resuscitate him.

In their Response, the Plaintiffs additionally contest several facts which the Defendants represented in their Motion to be uncontested and admitted. Specifically, the Plaintiffs contend that they have not admitted that Guajardo was intoxicated, under the influence of cocaine, was belligerent, hostile, aggressive and abusive, that he suffered from a heart disease, and that he posed a safety risk to himself and others. The Plaintiffs further argue that they have not admitted Guajardo to have assaulted Officer Treviño without provocation. The Plaintiffs aver that Officer Treviño first assaulted Guajardo. Further, the Plaintiffs contend that they have not admitted that Officer Treviño was slammed against a wall, that the Officers immediately noticed Guajardo's breathing difficulties, or that Officer Hernandez immediately called EMS. The Plaintiffs further contest the cause of death alleged by the Defendants.

4

# REPORT AND RECOMMENDATION

A.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Ellison v. Connor,* 153 F.3d 247, 251 (5th Cir. 1998). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Auto Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Douglass,* 79 F.3d at 1429. Once the moving party presents the district court with a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson,* 477 U.S. at 256. Rather, the nonmoving party must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Stults v. Conoco, Inc.,* 76 F.3d 651, 656 (5th Cir. 1996). Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 456-58 (1992). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

5

B.    SECTION 1983 CLAIMS

The initial inquiry in section 1983 cases is whether a constitutional right has been infringed. *Drain v. Galveston County,* 979 F. Supp. 1101,1103 (S.D. Tex 1997). In this case, the Plaintiffs alleged several constitutional violations against all the Defendants. Accordingly, this court first reviews the basis of each alleged violation to determine whether the Plaintiffs have met their initial burden.

### Fourth Amendment

The Fourth Amendment prohibits the use of excessive force by the police against seized persons. U.S. Const. Amend. IV; *Gutierrez v. City of San Antonio,* 139 F.3d 441, 446 (5th Cir. 1998). However, while the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fourteenth Amendment. *Gutierrez,* 139 F.3d at 446; *see also Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir. 1993), *cert. denied,* 509 U.S. 905 (1993). Although the point at which an arrest ends and pretrial detainment begins is not always clear, the Fifth Circuit has held that a plaintiff who had been arrested, processed by the police department and spent several hours in jail before the police allegedly used excessive force on him was a pretrial detainee protected by the Fourteenth Amendment. *Gutierrez,* 139 F.3d at 452;  In the instant case, the uncontroverted summary judgment evidence establishes that Guajardo was a pretrial detainee. He had been processed by the police department and spent some time in jail before the Defendant Officers allegedly used excessive force on him. Accordingly, Guajardo cannot invoke the protections of the Fourth Amendment, and the Plaintiffs' claim for violation of Guajardo's Fourth Amendment rights should be dismissed.

## Fifth Amendment

The Fifth Amendment provides that "[n]o person shall be...deprived of life, liberty, or property without due process of law." U.S. Const. amend V. The Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case. *Morin v. Caire,* 77 F.3d 116,120 (5th Cir. 1996). Because the Fifth Amendment has no reference to state actions, Plaintiffs claims under the Fifth Amendment should be dismissed.

## Sixth Amendment

Under the Sixth Amendment, the accused is guaranteed the right to a speedy trial, the right to an impartial jury, the right to confront witnesses, the right to call witnesses, and the right to counsel. U.S. Const. amend VI. Construing the pleadings and the uncontroverted summary judgment evidence in a light most favorable to the nonmovants, it is evident that the Plaintiffs have failed to allege facts implicating the guarantees afforded by the Sixth Amendment. Accordingly, the Plaintiffs' claims for violation of the Sixth Amendment should be dismissed.

## Eighth Amendment

The Eighth Amendment's proscription against "cruel and unusual punishment" is limited in scope to convicted prisoners and does not apply to pretrial detainees. U.S. Const. amend. VIII; *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1987); *Morin*, 77 F.3d at 120. It is well settled that a pretrial detainee is afforded protection under the Fourteenth Amendment from conditions or deprivations that are wanton, arbitrary, or intended to punish. *Bell*, 441 U.S. at 536-37. As noted above, Guajardo was a pretrial detainee and had not been convicted of a crime. Therefore, the Eighth Amendment has no application to the case at hand, and the Plaintiffs' claim for violation of Guajardo's rights under the Eighth Amendment should be dismissed.

Fourteenth Amendment

The Fourteenth Amendment affords pretrial detainees the constitutional basis for excessive force suits. *Valencia*, 981 F.2d at 1445. Therefore, the Plaintiffs' only remaining constitutional claim is premised on the protections of the Fourteenth Amendment's due process clause against excessive force.

C.      LIABILITY UNDER SECTION 1983

The Plaintiffs bring suit against the City, the Police Department and Chief Reyna for their failure to properly train and supervise their officers, and for consequently promoting a practice of permitting jailers to use excessive force. In addition, the Plaintiffs complain that Officers Treviño and Hernandez violated Guajardo's Fourteenth Amendment rights by using excessive force which led to his death during his detention in the Police Department.

Section 1983 permits suit against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage....subjects, or causes to be subjected, any citizen of the United States...deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983.

### 1.  Claims Against The Police Department, The City, and Chief Reyna, in their Official Capacities

The Plaintiffs name the Police Department as a defendant in the instant suit. However, the Police Department is not a proper party defendant arising from the purported actions of the City's police officers as it is not a "person" for purposes of section 1983. *Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313-315 (5th Cir. 1991). Therefore, Plaintiffs' claims against the Police Department should be dismissed.

8

The Supreme Court has held that, although municipalities are "persons" within the meaning of section 1983, they may not be held liable under a theory of respondeat superior or vicarious liability. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690-94 (1978). To hold a municipality liable for the misconduct of one its employees, a plaintiff must first prove a direct causal link between an official municipal policy or custom and the constitutional deprivation. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). In lieu of an officially adopted or promulgated policy statement, the Fifth Circuit has defined official policy or custom as:

> "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted policy is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or official to whom that body has delegated policy-making authority."

*Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennet v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984), *cert denied,* 472 U.S. 1016 (1985). Proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy. *Fraire v. City of Arlington, 957* F.2d 1268,1278 (5th Cir. 1992), *cert. denied,* 506 U.S. 973 (1992). Further, a municipality is not liable for performance of a custom unless actual or constructive knowledge of the custom is attributable to the governing body of the municipality or to a policy maker. *Oklahoma City v. Tuttle,* 471 U.S. 808, 820-824. A pattern of similar incidents that is general or widespread must be shown before it can be presumed that a final policymaker had knowledge of an unconstitutional custom or practice. *Languirand v. Hayden,* 717 F.2d 220, 227-28 (5th Cir. 1983). Such a pattern is evident if there are numerous prior incidents showing systemic violations of constitutional rights. *See Bennett v. City*

9

*of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984) (en banc).

### a. Inadequate Training

The Plaintiffs contend that Guajardo's injury and death were a result of the City and the Police Department's inadequate and incomplete training and/or hiring procedures.

In order to hold a municipality liable under section 1983 for a policy of hiring or training, a plaintiff must show, in addition to an official policy or custom, that: (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policy maker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 385-87 (1989)).

The Defendants argue that the Officer Treviño was properly trained and that neither the City or the Police Department were deliberately indifferent to Guajardo's consitutional rights. To bolster this allegation, the Defendants produced evidence that Officer Treviño had completed the Cameron County Basic Jailer Course and passed the jailer certification examination. (Docket No. 67, Exs. A, H, I, J, & K). They further claim that Officer Treviño had gained extensive on-the-job experience and training in his three years of employment. (Docket No. 64).

The Plaintiffs' contend that Officer Treviño admitted in his deposition that he had not taken a basic jail operations course, a defensive tactics course or a pressure point course. (Docket No. 64, Ex. N, pp. 53 & 54). The Plaintiffs argue that Eliborio Rios ("Rios"), Officer Treviño's supervisor, admitted that the Officer was not required to complete any courses in basic jail operations. (Docket No. 64, Ex. O, p. 26). The Plaintiffs further allege that although Officer Treviño's certifications in Standard First Aid and Adult CPR were expired at the time he was hired, Rios testified that Officer

10

Treviño was not required to be re-certified.  (Docket No. 64, Ex. O, p. 78).

Even taking the Plaintiffs' allegations as true, there is insufficient evidence to establish municipal liability for inadequate training.  Generally, there must be considerably more proof than a single instance of an injury or an isolated case of a poorly trained employee in a case in which the plaintiff alleges a policy of failure to train employees. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).  There is no evidence that establishes a pattern of violations committed by inadequately trained officers.  There is also no evidence that the City or Chief Reyna were aware of any problems arising from the training of its officers.  In addition, the Plaintiffs have adduced no evidence that the City was deliberately indifferent to the constitutional rights of its citizens when it adopted the training methods of its detention officers.  Because the Plaintiffs have failed to demonstrate a constitutionally infirm municipal policy or custom that proximately caused Guajardo's death, the City is entitled to summary judgment on the Plaintiffs' section 1983 claim for inadequate training.

For a police chief to be liable for failure to provided proper supervision and training, the plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiffs rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Baker,* 75 F.3d at 199.

As discussed above, the Plaintiffs have presented no evidence of a pattern of violations committed by inadequately trained officers.  Nor have the Plaintiffs presented any summary judgment evidence establishing a causal connection between the Officers' training and the alleged violations.  Finally, proof of deliberate indifference is also absent.  Accordingly, Chief Reyna is entitled to summary judgment in his official capacity on the Plaintiffs' Fourteenth Amendment claim for

inadequate training pursuant to section 1983.

b. Excessive Force

When the claim is one of excessive force, the key to recovering against a municipality for the acts of the non-policymaking employee is to demonstrate that (1) a policy or practice existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532-533 (5th Cir. 1996); *Holland v. City of Houston,* 41 F. Supp.2d 678, 697 (S.D. Tex. 1999).

In support of their claim, the Plaintiffs offer the deposition testimony of Orlando Benavides ("Benavides") and Yvonne Salazar ("Salazar"). Benavides testified that sometime in 1994 and 1995 he was arrested and the arresting officer held him by the neck and pressed his face against the booking window while someone else hit him on the back. (Docket No. 64, Ex. G, p. 42 & 43). He further stated that on the night of April 7, 1997, while detained in the Police Department, he heard an inmate being hit against the cell wall. (Docket No. 64, Ex. G, p. 45). Benavides testified that the following morning, he saw bruises on the inmate's back. *Id.* In addition, the Plaintiffs offer the deposition of Salazar, a former detention officer at the City Jail from July 1997 to September 1998. Salazar testified that during her employment she witnessed the use of excessive force by a detention officer on four or five occasions. (Docket No. 64, Ex. J, pp. 24, 31-32.). She also named two former detention officers that used excessive force on inmates but the acts of excessive force had not been reported to her supervisor, Rios. (Docket No. 64, Ex. J, p. 32 & 58).

The Defendants argue that the deposition testimony proffered by the Plaintiffs is insufficient to create a genuine issue of fact at to whether the City tolerated excessive force at the jail. The

12

Defendants argue that Benavides cannot identify the jailers involved or when the incident exactly happened. (Docket No. 67, Ex. B. pp 44-45). Benavides testimony also indicates that he did not report the alleged incident to the Police Department. (Docket No.67, Ex. B, pp. 44-45). As to the alleged use of force on April 7, 1997, Benavides admits that he never saw a jailer hit the inmate. (Docket No. 67, Ex. B, p. 46). In regard to Salazar's testimony, the Defendants argue that she was not employed as a jailer until three months after the Guajardo incident. (Docket No. 67, Ex. L, p. 12). The Defendants contend that any alleged incidents observed by Salazar involving use of force from July 1997 to September 1998, after Guajardo's death, cannot be attributed to his death nor form the basis of a policy or custom.

The evidence proffered by the Plaintiffs is insufficient to raise a genuine issue of material fact as to whether there was policy, practice or custom of excessive force at the jail. Benavides' failure to identify the jailers and the time of the incidents leads this court to find that his allegations of excessive force are at best speculative and conclusory. Further, there is no evidence that the City had notice of the alleged incidents. In addition, the Plaintiffs have not adduced sufficient evidence to establish that a policy or custom of the City was the "moving force" behind the alleged constitutional violation. Therefore, the City is entitled to summary judgment on the Plaintiffs' Fourteenth Amendment claim of excessive force pursuant to section 1983 and the claims should be dismissed.

A suit against an individual in their official capacity is not a suit against the official personally, but rather is a suit against the official's office. *Will,* 491 U.S. at 71. As such, it is no different than a suit against the City itself. *Id.* Accordingly, absent a specific standard of liability for a police chief, Chief Reyna's liability is coextensive with the City's. Therefore, summary judgment

CHPDF - www.fastio.com

is warranted and the Plaintiffs Fourteenth Amendment claim of excessive force against Chief Reyna in his official capacity should be dismissed.

###### 2. Claims against Officers Treviño and Hernandez, in their Official Capacity

In excessive force claims brought under the Due Process Clause of the Fourteenth Amendment, the question is whether the detention officer's use of force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Valencia,* 981 F.2d at 1449. The focus is on the detention officer's subjective intent to punish. *Id.* In calculating such intent, the trier of fact must include such objective factors as the extent of the injuries suffered, the apparent need for application of force, the degree of force exerted, the threat reasonably perceived by the detention facility official, and the need to act quickly and decisively. *Id.* In addition, an officer who is present at the scene and does not take reasonable measures to protect a suspect from another's use of force may be liable under section 1983. *Snyder v. Trepagnier,* 149 F.3d 791, 801 n.11 (5th Cir. 1998). The appropriate inquiry is whether the bystanding police officer had reasonable opportunity to realize the excessive nature of the force used by another officer. *Hale v. Townley,* 45 F.3d 914,919 (5th Cir. 1995).

The Defendants argue that the force employed by the Defendants was applied solely to restore the jail's discipline and to protect themselves from physical harm. The Defendants allege Guajardo was drug influenced and that he attacked Officer Treviño, pushed him into the booking area, and pinned him against the wall. The Defendants aver that Guajardo's conduct warranted Officer Treviño's use of the choke hold in self defense. As to Officer Hernandez, the Defendants contend that the allegations against Hernandez are conclusory and are not sufficient to overcome her qualified immunity. The Defendants argue that the Plaintiffs present no evidence rebutting these facts.

14

In their Response, the Plaintiffs contend that Officer Treviño struck Guajardo first, pushed him into the booking area, applied the choke hold, and drug him towards a padded cell. In support of these allegations, the Plaintiffs offer the depositions of Hector Eguia Garcia ("Garcia") and Benavides, individuals in custody on April 8, 1997, and eye witnesses to the events in question. Garcia testified that Officer Treviño struck Guajardo first. (Docket No. 64, Ex. E, pp. 17 & 19). Benavides testified that as he was handing Guajardo a blanket, "[Officer Treviño] looked at me, and remember just seeing him tilt [Guajardo's] head and I saw the guard's fist or... like I said, slap or something on the side of his face." (Docket No. 64, Ex. G, pp. 10 & 11). Benavides further stated that prior to the that incident, only a verbal confrontation occurred between the two men and that Guajardo had not tried to hit, shove, or push Officer Treviño. (Docket No. 64, p. 29). The Plaintiffs further contest the extent of the injuries suffered by Guajardo as a result of the use of force. The Plaintiffs aver that the choke hold was the cause of Guajardo's death.

In regard to Officer Hernandez, the Plaintiffs proffer the following testimony in support of their claim. Garcia testified that during the alleged incident he heard Officer Hernandez call to Officer Treviño to "stop it" and leave Guajardo alone. (Docket No. 64, Ex. D, p.22). Further, Officer Hernandez testified that she and Officer Treviño argued as to whether Officer Treviño should remove Guajardo's handcuffs, call their supervisor and call EMS. (Docket No. 64, Ex. D, p.22). The Defendants offer no controverting summary judgment evidence and argue that these facts, if proved, are insufficient to overcome Officer Hernandez's qualified immunity.

There are clearly factual disputes material to the legal outcome of this case. The controverted summary judgment evidence shows the parties are at odds as to (a) whether Guajardo posed a threat of serious injury, (b)whether Officer Treviño struck Guajardo first or vice versa, (c) whether the

subsequent application of the choke hold was in fact necessary, and (d) the extent of the injuries suffered. These material issues of fact in dispute ultimately impinge upon the determination as to whether the Officers' subjective intent was to apply force, the choke hold, in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Further, viewing the allegations and summary evidence in a light favorable to Guajardo, the nonmovant, there is a fact issue as to whether Officer Hernandez had a reasonable opportunity to realize the excessive nature of the force used so as to intervene and protect Guajardo. Consequently, the Defendants' Motion should be denied as to the Plaintiffs' Fourteenth Amendment claim of excessive force against Officers Treviño and Hernandez, in their official capacities.

### 3. Claims against Chief Reyna, Officers Treviño and Hernandez, in their Individual Capacities.

Qualified immunity protects officials in the course of performance of their discretionary duties unless their conduct violates a "clearly established [federal] or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must first determine whether a plaintiff has alleged a violation of a clearly established constitutional right. *Seigert v. Gilley*, 500 U.S. 226, 231 (1991). If the right is clearly established, the court must examine the objective legal reasonableness of the official's conduct under the circumstances and in light of the established law and information possessed by the officer. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right. *Anderson*, 483 U.S. at 641.

The Defendants argue that the Plaintiffs have not alleged a violation of a clearly established constitutional right. The Plaintiffs allege that Guajardo has a right to be free from excessive force

16

pursuant to the Fourteenth Amendment. The Plaintiffs further contend that Guajardo had a right to be free from an unprovoked use of excessive force. The Fourteenth Amendment's prohibition of the use of excessive force by the police against a pretrial detainee has been clearly established in the Fifth Circuit since 1993. In *Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir. 1993), the Fifth Circuit set forth the appropriate standard for the use of excessive in the context of a pretrial detainee: whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Accordingly, this court finds the pretrial detainee's right against use of excessive force to have been clearly established prior to April 8, 1997, the date of the alleged conduct.

A material dispute of fact exists with regard to whether the Officers' conduct was objectively reasonable under the circumstances. As discussed above, a factual dispute exists with regard to the circumstances leading to Officer Treviño's use of force. In light of the material dispute of factual issues with regard to whether the Officers' conduct was reasonable under the circumstances, the Defendants Motion should be denied as to the Plaintiffs' Fourteenth Amendment claim for excessive force against Officers Treviño and Hernandez in their individual capacities.

## D. STATE LAW CLAIMS

The Plaintiffs seek to recover damages against the Defendants pursuant to the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM. CODE ANN. § 71.002, and the Survival Statute, TEX. CIV. PRAC. REM. CODE ANN. § 71.021, alleging negligence and gross negligence on behalf of all the Defendants. The Plaintiffs further assert a cause of action for fraud as to all Defendants.

### Negligence Claim

The Plaintiffs allege claims of negligence against Chief Reyna, Officer Treviño, and Officer

Hernandez,  and seek to impose vicarious liability on the City and the Police Department for the alleged acts of negligence committed by the individual Defendants.  The Defendants argue, however, that they are entitled to sovereign immunity.

In support of their claim against the City, the Police Department, and Chief Reyna,  the Plaintiffs' Second Amended Complaint (Docket No. 36) lists the following allegations of negligence:  allowing their employees to use excessive force and to batter and abuse Guajardo; failing to discipline their employees who abused Guajardo in light of their prior knowledge of employee misconduct; aggravating Guajardo's pre-existing heart condition;  causing Guajardo's death;  failing to discipline Treviño for the use of the choke hold;  failing to train, supervise and promulgate appropriate procedures; implementing a policy promulgated by the officers of the Police Department; not reviewing complaints; allowing employees to falsely reduce to writing the eye witness statement; submitting inaccurate witness statements in the Custodial Death Report; and misleading the Attorney General's Office by representing that there was a video recording of the events in question.

As to Officers Treviño and Hernandez, the Plaintiffs allege they were negligent in exposing Guajardo to irreparable harm and danger to his person and body; using the choke hold; using excessive force when it was not required; failing to provide medical assistance; and failing to follow appropriate policy for handling detainees.  Further, in their Response to Defendants' Motion for Summary Judgment, the Plaintiffs generally assert "that a jailhouse door, panel and wall were used in a negligent manner to further the application of unreasonable and excessive force..."   (Second Amended Complaint, Docket No. 36).

### I.  Claims against the City and the Police Department

A party must have the capacity to sue or be sued.  Fed. R. Civ. P. 17.  In order for the

Plaintiffs to sue a city department, that department must have a separate legal existence. *Darby,* 939 F.2d at 313 (5th Cir. 1991). The Plaintiffs have not shown that the City granted to the Police Department the capacity to engage in separate litigation. Therefore, the Plaintiffs' state law claims against the Police Deparment should be dismissed.

In Texas, under the doctrine of sovereign immunity, a governmental unit cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. *City of Amarillo v. Martin,* 971 S.W.2d 426, 427 (Tex. 1998). The Texas Tort Claims Act ("TTCA") waives immunity from suit in negligence actions if (1) the plaintiff's injuries were proximately caused by the operation or use of a motor-driven vehicle or equipment or (2) by a condition or use of tangible real or personal property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). To base a claim on the use or misuse of personal property, the property need not be the instrumentality of the harm, but it must have been a contributing factor. *Holland,* 41 F. Supp.2d at 711.

The Defendants argue that the Plaintiffs claims for negligence are barred by sovereign immunity because they have failed to allege any facts that give rise to a claim under the TTCA. The Plaintiffs contend in their Response that the application of excessive force which led to Guajardo's death, was furthered by Officer Treviño's negligent use of tangible real or personal property--the jailhouse door, panel, and wall. A dispute between the accounts of the events leading to Guajardo's death precludes this court from resolving the negligence claim. Taking the Plaintiffs allegations as true, the court finds that the Plaintiffs may possibly prove a set of facts that would entitle them to relief in light of case law defining the use of tangible real or personal property. Accordingly, the Defendants Motion on Plaintiffs negligence claims against the City and the Police Department arising

out of the use of tangible real or personal property should be denied.

The Plaintiffs further seek to impose liability on the City and the Police Department by contending that the Defendants failed to properly train employees, and develop and enforce policies concerning the handling of detainees. Such claims do not involve the operation or use of a motor vehicle, or the condition or use of tangible personal or real property. Accordingly, these claims are barred by the TTCA and cannot form the basis for liability. The City and the Police Department are immune from liability as to these specific claims under the doctrine of sovereign immunity and the Defendants' Motion should be granted.

> ### 2. Claims against Chief Reyna and Officers Treviño and Hernandez, in their Official Capacities.

Sovereign immunity also protects the City's employees from suits in their representative capacity. *Allen v. City of Midlothian,* 927 S.W.2d 316, 322 (Tex. App.-Waco 1996, no writ). Because there is a genuine issue of material fact with respect to the City's immunity, summary judgment is not warranted on the Plaintiffs' claims against Chief Reyna, Officer Treviño, and Hernandez. Accordingly, this issue should be reserved for trial pending the resolution of the City's entitlement to sovereign immunity and the Defendants Motion should be denied.

> 3. Chief Reyna and Officers Treviño and Hernandez, in their Individual Capacities

While sovereign immunity protects the governmental officials in their official capacity, the immunity does not apply to suits against individuals. *Holland,* 41 F.Supp.2d at 716. Rather, official immunity protects officials from liability in their individual capacities. *See DeWitt v. Harris County,* 904 S.W.2d 650, 652 (Tex. 1995). Governmental officials are entitled to immunity from suits arising from performance of their (1) discretionary duties (2) in good faith (3) while acting within the scope

of their authority. *Holland,* 41 F. Supp.2d at 715. An official acts in good faith if any reasonably prudent officer could have believed that the conduct was consistent with the plaintiff's rights. *Cantu v. Rocha,* 77 F.3d 795, 808 (5th Cir. 1996). The test of good faith is one of objective reasonableness. *Holland,* 41 F.Supp.2d at 715.

In the instant case, the Defendants plead the official immunity defense in their Answer (Docket No. 53). However, they failed to argue and submit proof of the elements of official immunity. Similarly, the Plaintiffs do not brief the issue, but rather limit their discussion to the application of sovereign immunity. The motion for summary judgment can be supported by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." Fed. R. Civ. P. 56(c). The pleadings and legal memoranda are not competent summary judgment proof. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996). Absent competent summary judgment proof, the Defendants' answer alone cannot stand as a basis for summary judgment. Further, there is a material fact dispute as to whether the Defendants' use of force was in good faith. Therefore, summary judgment is not warranted on the Plaintiffs' negligence claims against Chief Reyna, Officer Treviño, and Officer Hernandez in their individual capacities, and the Defendants' Motion should be denied as to these claims.

## FRAUD

In their Second Amended Complaint ("Complaint") (Docket No. 36), the Plaintiffs allege that the Defendants, by and through their employees[1], committed fraud by not accurately reducing the statements of three eye witnesses. Further, the Plaintiffs aver that Chief Reyna, by and through his

---

[1]Based on this language, the court construes "the Defendants" to refer to the City and the Police Department.

officers, participated in fraud by not accurately reducing to writing the eye witness statements, issuing a false Custodial Report to the Attorney General's Office ("AG's Office"), and leading the AG's office to believe there was a video tape of the events. The Plaintiffs contend that the Defendants knew the eye witness statements were false and were "relied on to determine Defendants' acts towards JUAN JOSE GUAJARDO and his untimely death."

### 1. Claims Against the City

This court circumvents an inquiry into the merits of the Plaintiffs' fraud claim against the City in light of the TTCA's exemption from liability. The TTCA shields municipalities from suits arising out of the intentional torts committed by governmental employees. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 1997); *Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir. 1993), *cert. denied,* 510 U.S. 1072 (1994). Accordingly, summary judgment is warranted as to the Plaintiffs' fraud claims against the City.

### 2. Claims against Chief Reyna, Officer Treviño and Officer Hernandez, in their Official Capacities

As noted above, officials acting in their representative capacities are afforded sovereign immunity. *Allen,* 927 S.W.2d at 322. Because the City is entitled to sovereign immunity for intentional torts, the same is afforded to Chief Reyna, Officer Treviño, and Officer Hernandez, in their official capacities. Therefore, the Defendants Motion should be granted and the Plaintiffs' fraud claims against Chief Reyna, Officer Treviño and Officer Hernandez in their official capacities should be dismissed.

### 3. Claims against Chief Reyna, Officer Treviño and Officer Hernandez, in their Individual Capacities.

As noted above, the Defendants' raised the official immunity defense in their answer, but

failed to brief its application to the fraud claim as well. The Plaintiffs also fail to brief the claim in their Response. The pleadings and legal memoranda are not competent summary judgment proof. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Absent any summary judgment proof from either party, this issue should be reserved for trial and the Defendants' Motion should be denied as to the fraud claim against Chief Reyna, Officer Treviño and Officer Hernandez, in their individual capacities.

GROSS NEGLIGENCE

In their Complaint, Plaintiffs aver that the conduct alleged as a basis for their fraud claim was of such a character as to constitute gross negligence. They contend the Defendants' conduct involved an extreme degree of risk and was intentional, willful, wanton, malicious, with a reckless disregard for the rights and safety of others.

1. Claims against the City and the Police Department

The TTCA does not waive sovereign immunity from liability for gross negligence. *Hockaday v. Texas Dept of Criminal Justice*, 914 F.Supp 1439, 1447. (S.D. Tex 1996). Accordingly, the gross negligence claims should be dismissed as to the City and the Police Department, and the Defendants' Motion should be granted.

2. Claims Against Chief Reyna, Officer Treviño and Officer Hernandez,<br>in their Official Capacities.

In addition, the City's employees are entitled to sovereign immunity from suits in their representative capacities. Having determined the City's entitlement to sovereign immunity, this court finds Chief Reyna, Officer Treviño and Officer Hernandez to be entitled to the same. Therefore, the Defendants Motion should be granted and the Plaintiffs' gross negligence claims against Chief Reyna,

23

Officer Treviño, and Officer Hernandez in their official capacities should be dismissed

### 3.   Claims Against Chief Reyna, Officer Treviño and Officer Hernandez, in their Individual Capacities.

In regard to Plaintiffs gross negligence claims against Chief Reyna, Officer Treviño and Officer Hernandez in their individual capacities, the claims should be preserved for trial.  The parties failure to argue and establish the official immunity defense.  Absent any summary judgment proof, the Defendants Motion should be denied as to the gross negligence claims against Chief Reyna, Officer Treviño, and Officer Hernandez in their individual capacities.  Accordingly, this issue should be carried to trial.

IT IS THEREFORE RECOMMENDED that the Defendants' Motion on Plaintiffs' claim for violation of Guajardo's rights under the Fourth, Fifth, Sixth,  and Eighth Amendment be GRANTED and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs Fourteenth Amendment claims pursuant to section 1983 for inadequate training be granted as to the City and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs Fourteenth Amendment claims pursuant to section 1983 for inadequate training be granted as to Chief Reyna in his official capacity, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' Fourteenth Amendment claims pursuant to section 1983 for excessive force be GRANTED as to the City, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' Fourteenth

24

Amendment claims pursuant to section 1983 for excessive force be GRANTED as to Chief Reyna in his official capacity, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' Fourteenth Amendment claims pursuant to section 1983 for excessive force be DENIED as to Officers Treviño and Hernandez in their official capacities.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' Fourteenth Amendment claims pursuant to section 1983 for excessive force be DENIED as to Officers Treviño and Hernandez in their individual capacities.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' negligence claims premised on the use of tangible real property should be DENIED as to the City and the Police Departmen.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' negligence claims premised on inadequate training should be GRANTED as to the City and the Police Department, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' negligence claims premised on the use of tangible real property should be DENIED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their official capacities.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' negligence claims premised on the use of tangible real property should be DENIED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their individual capacities.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' fraud claims should be GRANTED as to the City and the Police Department, and these claims should be

dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' fraud claims should be GRANTED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their official capacities, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' fraud claims should be DENIED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their individual capacities.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' gross negligence claims should be GRANTED as to the City and the Police Department, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' gross negligence claims should be GRANTED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their official capacities, and these claims should be dismissed.

IT IS FURTHER RECOMMENDED that the Defendants' Motion on Plaintiffs' gross negligence claims should be DENIED as to Chief Reyna, Officer Treviño, and Officer Hernandez in their individual capacities.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 2nd day of August, 1999.

John Wm. Black
United States Magistrate Judge

27