*81*

United States District Court
Southern District of Texas
ENTERED

OCT 0 6 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION -

| | | |
|---|---|---|
| MARIA F. GUAJARDO, Individually | § | |
| as Administrator of the Estate of Juan Jose | § | |
| Guajardo, and as Guardian of | § | |
| Thomas Guajardo, III, Cynthia Guajardo, | § | |
| and Caroline Guajardo, Minor Children and | § | |
| Alexandro Garcia | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | |
| CITY OF BROWNSVILLE, CITY OF | § | |
| BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, Chief of Police for City of | § | |
| Brownsville Police Department, Individually | § | |
| and in Official Capacity, EDUARDO | § | |
| TREVINO, Individually and in his Official | § | |
| Capacity, and ANA HERNANDEZ, | § | |
| Individually and in her Official Capacity | § | |

## MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

Pending before the court is Defendant's Motion to Dismiss (Docket No. 3) and Defendants'

Motion for Summary Judgment (Docket No. 32). The Plaintiffs have filed a Second Amended

Response to Defendants' Motion for Summary Judgment (Docket No. 64) and the Defendants have

filed their Reply (Docket No. 67). A Report and Recommendation was filed on August 10, 1999

(Docket No. 70). Objections have been filed by Defendants (Docket No. 77). In the interests of

justice, these objections are being considered as a supplement to the previously filed Motion for

Summary Judgment.

### FACTUAL BACKGROUND

The following factual summary is derived from the Plaintiffs' Second Amended Complaint

("Complaint") (Docket No. 36), Second Amended Response (Docket No. 64), the Defendants' Motion for Summary Judgment (Docket No. 32) and the Defendants Objections to the Magistrate Judge's Report and Recommendation (Docket No. 77).

Maria Guajardo, individually, on behalf of the Estate of Juan Jose Guajardo and as next friend of Thomas Guajardo, III, Cynthia Guajardo and Caroline Guajardo, minor children, and Alexandro Garcia have sued the Defendants City of Brownsville ("City"), the City of Brownsville Police Department ("Police Department"), Ben Reyna, Chief of Police ("Chief Reyna"), Officer Eduardo Trevino ("Officer Trevino"), and Officer Ana Hernandez ("Officer Hernandez"), in their individual and official capacities for the death of Juan Jose Guajardo ("Guajardo") while in the custody of the Police Department. Plaintiffs assert claims under 42 U.S.C. §1983 for violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. In addition, the Plaintiffs assert a claim for fraud and bring a wrongful death and survival action under Texas law, alleging negligence and gross negligence on the part of all Defendants.

On April 8, 1997, Guajardo was admitted into the City Jail following his arrest for public intoxication. At the time of the incident on which this suit is based, Chief Reyna was the Chief of Police, Officer Trevino was the detention officer on duty, and Officer Hernandez was the jail matron on duty. The events leading to Guajardo's death are disputed.

THE DEFENDANTS' VERSION

At the time of his booking, Guajardo was uncooperative, belligerent, intoxicated, and under the influence of cocaine. As a result of his belligerent behavior, Guajardo was placed in a single cell for his own safety and that of the other inmates. Subsequently, Guajardo was permitted to telephone his mother and after calling his mother, Guajardo was escorted by Officer Trevino to a general

2

holding cell designated as the women's drunk tank ("WDT"). Guajardo observed other prisoners in the WDT with blankets and requested one for himself. Officer Trevino advised Guajardo that one would be provided upon entering the cell. Guajardo became agitated and belligerent towards Officer Trevino and began yelling out expletives at him, including the statement, "You think you're a big man". Officer Trevino then attempted to escort Guajardo to a padded cell. Guajardo grabbed Officer Trevino's uniform, spun him around, and slammed him against a corner wall outside the WDT. Guajardo raised Officer Trevino off the floor and pinned him against a wall. Officer Trevino, defending himself, placed Guajardo in a bear hug, wrapped his arms around Guajardo's neck, and attempted to push off the wall with his feet. Officer Trevino then called to Officer Hernandez for help. Officer Hernandez came out of the control room and attempted to pull on Guajardo's leg to separate him from Officer Trevino. Officer Hernandez then kicked the back of Guajardo's knee, causing him and Officer Trevino to fall.

The two officers restrained and handcuffed Guajardo face down on the floor. Noticing that Guajardo was having trouble breathing, Officer Trevino removed the handcuffs, placed Guajardo on his side, and instructed Officer Hernandez to call Emergency Medical Services ("EMS"). EMS arrived within one or two minutes of the call. EMS personnel initiated treatment and CPR, but found no signs of breathing or a pulse. Guajardo was then transported to Brownsville Medical Center ("BMC") where he was diagnosed as having a full cardiac arrest. Guajardo did not regain consciousness and died on April 9, 1997. Defendants maintain that Guajardo's death was a result of a combination of his severe heart disease, his agitated state, and his simultaneous use of alcohol and cocaine.

3

## THE PLAINTIFFS' VERSION

Officer Trevino and Guajardo engaged in a verbal confrontation about a blanket on their way back to Guajardo's cell. When other inmates offered Guajardo a blanket, Officer Trevino pulled Guajardo from behind towards the booking area and applied a choke hold. While holding Guajardo in this position, Officer Trevino slammed Guajardo's head against a steel access door causing Guajardo to bounce to the lateral wall in the main hall. Thereafter, Officer Trevino called to Officer Hernandez for help. As Officer Trevino maintained his choke hold, Officer Hernandez grabbed Guajardo's legs causing him to fall face down and handcuffed him. The choke hold lasted about two minutes.

Subsequently, Guajardo was dragged to a padded cell. Upon noticing that Guajardo was having trouble breathing, Officers Trevino and Hernandez argued about whether to call EMS or not. Officer Hernandez eventually called EMS against Officer Trevino's suggestion. Upon arrival, the EMS attendant found Guajardo to have no pulse or sign of breathing and was transported to the BMC following attempts to resuscitate him.

## REPORT AND RECOMMENDATION

A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Auto Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect

4

the outcome of the suit under governing law. *Douglass,* 79 F.3d at 1429. Once the moving party

presents the district court with a properly supported motion for summary judgment, the burden shifts

to the nonmoving party to show that summary judgment is inappropriate. *Morris v. Covan*

*Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). The nonmoving party may not rest

upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that

a fact issue exists will not suffice. *Anderson,* 477 U.S. at 256. The nonmoving party must go beyond

the pleadings and designate specific facts showing there is a genuine issue for trial. *Stults v. Conoco,*

*Inc.,* 76 F.3d 651, 656 (5th Cir. 1996). Summary judgment evidence is viewed in the light most

favorable to the party opposing the motion. *Eastman Kodak v. Image Technical Services,* 504 U.S.

451, 456-58 (1992). In addition, factual controversies are resolved in favor of the nonmovant, but

only when both parties have submitted evidence of contradictory facts, thus creating an actual

controversy. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). *See also*

*Burge v. Parish of St. Tammany,* ----F.3d.---- 1999 W.L. 649080 (5th Cir. (LA.)).

B.     SECTION 1983 CLAIMS

    The initial inquiry in § 1983 cases is whether a constitutional right has been infringed. *Drain*

*v. Galveston County,* 979 F. Supp. 1101, 1103 (S.D. Tex. 1997). In this case, the Plaintiffs alleged

several constitutional violations against all the Defendants.

Claims Brought Under the Fourth, Fifth, Sixth and
Eighth Amendments to the United States Constitution

    The Fifth Circuit teaches that claims of excessive force brought by pre-trial detainees are

governed by the due process clause of the Fourteenth Amendment. *Valencia v. Wiggins,* 981 F.2d

1440 (5th Cir. 1993), *cert. denied,* 509 U.S. 905 (1993); *Brothers v. Klevenhagen,* 28 F.3d 452, 456

5

(5th Cir. 1994). Plaintiffs' claims brought under the remaining constitutional amendments should be dismissed.

### Fourteenth Amendment

The Fourteenth Amendment affords pretrial detainees the constitutional basis for excessive force suits. *Valencia,* 981 F.2d at 1445. Therefore, the Plaintiffs' only viable constitutional claim is based on the Fourteenth Amendment's due process clause.

### C.    LIABILITY UNDER SECTION 1983

The Plaintiffs bring suit against the City, the Police Department and Chief Reyna for their failure to properly train and supervise their officers, and for consequently promoting a practice of permitting jailers to use excessive force. In addition, the Plaintiffs complain that Officers Trevino and Hernandez violated Guajardo's Fourteenth Amendment rights by using excessive force which led to his death during his detention in the Police Department.

Section 1983 permits suit against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage....subjects, or causes to be subjected, any citizen of the United States...deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983.

#### 1. Claims Against The Police Department, The City, and Chief Reyna, in their Official Capacities

The Plaintiffs name the Police Department as a defendant in the instant suit. However, the Police Department is not a proper party defendant as it is not a "person" for purposes of § 1983. *Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313-315 (5th Cir. 1991). Therefore, Plaintiffs' claims against the Police Department should be dismissed.

6

The Supreme Court has held that, although municipalities are "persons" within the meaning

of § 1983, they may not be held liable under a theory of respondeat superior or vicarious liability.

*Monell v. New York City Dep't. of Social Services,* 436 U.S. 658, 690-94 (1978).  To hold a

municipality liable for the misconduct of one its employees, a plaintiff must first prove a direct causal

link between an official municipal policy or custom and the constitutional deprivation.  *City of Canton*

*v. Harris,* 489 U.S. 378, 389 (1989).  A policy or custom as defined by the Fifth Circuit may be:

> "a persistent, widespread practice of city officials or employees, which, although not
> authorized by officially adopted policy is so common and well settled as to constitute a
> custom that fairly represents municipal policy.  Actual or constructive knowledge of such
> custom must be attributable to the governing body of the municipality or official to whom
> that body has delegated policy-making authority."

*Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennet v. City of Slidell,* 735 F.2d 861,

862 (5th Cir. 1984), *cert denied,* 472 U.S. 1016 (1985)).  Proof of random acts or isolated incidents

is not sufficient to show the existence of a custom or policy.  *Fraire v. City of Arlington,* 957 F.2d

1268, 1278 (5th Cir. 1992), *cert. denied,* 506 U.S. 973 (1992).  Further, a municipality is not liable

for performance of a custom unless actual or constructive knowledge of the custom is attributable

to the governing body of the municipality or to a policy maker.  *City of Oklahoma City v. Tuttle,* 471

U.S. 808, 820-824 (1985).  A pattern of similar incidents that is general or widespread must be shown

before it can be presumed that a final policy maker had knowledge of an unconstitutional custom or

practice.  *Languirand v. Hayden,* 717 F.2d 220, 227-28 (5th Cir. 1983).  Such a pattern is evident

if there are numerous prior incidents showing systematic violations of constitutional rights.  *See*

*Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984) (*en banc*); *Board of County*

7

*Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997).

> a. Inadequate Training

The Plaintiffs contend that Guajardo's injury and death were a result of the City and the Police Department's inadequate and incomplete training and/or hiring procedures.

In order to hold a municipality liable under § 1983 for a policy of hiring or training, a plaintiff must show, in addition to an official policy or custom, that: (1) the training or hiring procedures of the municipality's policy maker were inadequate; (2) the municipality's policy maker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 385-87 (1989)).

The Defendants argue that Officer Trevino was properly trained and that neither the City nor the Police Department were deliberately indifferent to Guajardo's constitutional rights. The Defendants produced evidence that Officer Trevino had completed the Cameron County Basic Jailer Course and passed the jailer certification examination. (Docket No. 67, Exs. A, H, I, J, & K). They further argue that Officer Trevino had gained extensive on-the-job experience and training in his three years of employment. (Docket No. 67).

The Plaintiffs' contend that Officer Trevino admitted in his deposition that he had not taken a basic jail operations course, a defensive tactics course or a pressure point course. (Docket No. 77, Ex. L, pp. 53 & 54). The Plaintiffs argue that Eliborio Rios ("Rios"), Officer Trevino's supervisor, admitted that the Officer was not required to complete any courses in basic jail operations. (Docket No. 64, Ex. O, p. 26). The Plaintiffs further allege that although Officer Trevino's certifications in Standard First Aid and Adult CPR were expired at the time he was hired, Rios testified that Officer

8

Trevino was not required to be re-certified.   (Docket No. 64, Ex. O, p. 78).

Even taking the Plaintiffs' allegations as true, there is insufficient evidence to establish municipal liability for inadequate training.   Generally, there must be considerably more proof than a single instance of an injury or an isolated case of a poorly trained employee in a case in which the plaintiff alleges a policy of failure to train employees. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).  There is no evidence that establishes a pattern of violations committed by inadequately trained officers.  There is also no evidence that the City or Chief Reyna were aware of any problems arising from the training of its officers.  In addition, the Plaintiffs have adduced no evidence that the City was deliberately indifferent to the constitutional rights of its citizens when it adopted the training methods of its detention officers.  Because the Plaintiffs have failed to demonstrate a constitutionally infirm municipal policy or custom that proximately caused Guajardo's death, the City is entitled to summary judgment on the Plaintiffs' § 1983 claim for inadequate training.

For a police chief to be liable for failure to provide proper supervision and training, the plaintiff must show that: (1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiffs rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference. *Baker*, 75 F.3d at 199.

As discussed above, the Plaintiffs have presented no evidence of a pattern of violations committed by inadequately trained officers.  Nor have the Plaintiffs presented any summary judgment evidence establishing a causal connection between the Officers' training and the alleged violations. Finally, proof of deliberate indifference is also absent.  Accordingly, Chief Reyna is entitled to summary judgment in his official capacity on the Plaintiffs' Fourteenth Amendment claim for

inadequate training pursuant to § 1983.

b.  Excessive Force

When the claim is one of excessive force, the key to recovering against a municipality for the acts of the non-policy making employee is to demonstrate that (1) a policy or practice existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532-533 (5th Cir. 1996); *Holland v. City of Houston,* 41 F. Supp.2d 678, 697 (S.D. Tex. 1999).

In support of their claim, the Plaintiffs offer the deposition testimony of Orlando Benavides ("Benavides") and Yvonne Salazar ("Salazar").  Benavides testified that sometime in 1994 and 1995 he was arrested and the arresting officer held him by the neck and pressed his face against the booking window while someone else hit him on the back.  (Docket No. 77, Ex. F, pp. 42 & 43).

Benavides testified that on the night of April 7, 1997, while detained in the Police Department, he saw Officer Trevino strike Guajardo.  He further testified that Trevino applied choke holds to Guajardo and slammed him against the jail door.  Benavides described the incident in detail.  (Docket No. 77, Ex. F, pp.12-23).  However, these details were not in the statement Benavides gave to the officers investigating the death of Guajardo.  (Docket No. 77, Ex. E).  In that statement, Benavides only stated that after a vulgar remark by Guajardo, he saw Trevino grab  "...the prisoner..." by the shoulder and he heard, but did not see a struggle.

In addition, the Plaintiffs offer the deposition of Salazar, a former detention officer at the City Jail from July 1997 to September 1998.  Salazar testified that during her employment she witnessed the use of excessive force by a detention officer on four or five occasions.  (Docket No. 67, Ex. L,

10

pp. 24, 31-32.). She also named two former detention officers who used excessive force on inmates. However, these acts of excessive force had not been reported to her supervisor, Rios. (Docket No. 67, Ex. L, pp. 32 & 58).

The Defendants argue that the deposition testimony proffered by the Plaintiffs is insufficient to create a genuine issue of fact as to whether the City tolerated excessive force at the jail. For example, Benavides testimony reflects that he did not report an alleged excessive force jail incident in 1993 to the Police Department. (Docket No. 67, Ex. B, pp. 44-45).

In regard to Salazar's testimony, the Defendants argue that she was not employed as a jailer until three months after the Guajardo incident. (Docket No. 67, Ex. L, p. 12). The Defendants contend that any alleged incidents observed by Salazar involving use of force from July 1997 to September 1998, after Guajardo's death are irrelevant to this case.

Applying the summary judgment standard mandated by the U. S. Supreme Court and the Fifth Circuit and "... drawing all inferences most favorable to the non-moving party", *Burge, supra*, the evidence proffered by the Plaintiffs is insufficient to raise a genuine issue of material fact as to whether there was a policy, practice or custom of excessive force at the jail. Further, there is no evidence that the City had notice of the alleged incidents. In addition, the Plaintiffs have not adduced sufficient evidence to establish that a policy or custom of the City was the "moving force" behind the alleged constitutional violation. Therefore, the City is entitled to summary judgment on the Plaintiffs' Fourteenth Amendment claim of excessive force.

A suit against an individual in his or her official capacity is not a suit against the official personally, but rather is a suit against the official's office. *Will*, 491 U.S. at 71. As such, it is no different than a suit against the City itself. *Id.* Accordingly, Chief Reyna's liability is coextensive

11

with the City's. Therefore, summary judgment is warranted and the Plaintiffs Fourteenth Amendment claim of excessive force against Chief Reyna in his official capacity should be dismissed.

### 2. Claims against Officers Trevino and Hernandez, in their Official Capacity

Suits against officers in their official capacity are the equivalent of suits against the municipality which employs them. *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Callis v. Sellars*, 931 F. Supp. 504, 510 (S. D. Tex. 1996).

The suit against the Officers in their official capacities should be dismissed.

### 3. Claims against Chief Reyna and Officers Trevino and Hernandez in their Individual Capacities

Qualified immunity protects officers acting in the performance of their discretionary duties unless their conduct violates a "clearly established [federal] or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must first determine whether a plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). If the right is clearly established, the court must examine the objective legal reasonableness of the official's conduct under the circumstances and in light of the established law and information possessed by the officer. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *Gunaca v. State of Texas*, 65 F.3d 467, 473-474 (5th Cir. 1995). Qualified immunity protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right. *Anderson*, 483 U.S. at 641. *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992).

The Defendants argue that the Plaintiffs have not alleged a violation of a clearly established constitutional right. The Plaintiffs allege that Guajardo has a right to be free from excessive force

pursuant to the Fourteenth Amendment. The Plaintiffs further contend that Guajardo had a right to
be free from an unprovoked use of excessive force. The Fourteenth Amendment's prohibition of the
use of excessive force by the police against a pretrial detainee has been clearly established in the Fifth
Circuit since 1993. In *Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir. 1993), the Fifth Circuit set forth
the appropriate standard for the use of excessive in the context of a pretrial detainee: whether the
force was applied in a good-faith effort to maintain or restore discipline, or maliciously and
sadistically to cause harm. Accordingly, this court finds the pretrial detainee's constitutional right
against use of excessive force to have been clearly established prior to April 8, 1997, the date of the
alleged conduct.

In excessive force claims, such as this, brought under the Due Process Clause of the
Fourteenth Amendment, the question is whether the detention officer's use of force was applied in
a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.
*Valencia,* 981 F.2d at 1449. The focus is on the detention officer's subjective intent to punish. *Id.*
In calculating such intent, the trier of fact must include such objective factors as the extent of the
injuries suffered, the apparent need for application of force, the degree of force exerted, the threat
reasonably perceived by the detention facility official, and the need to act quickly and decisively. *Id.*
In addition, an officer who is present at the scene and does not take reasonable measures to protect
a suspect from another's use of force may be liable under § 1983. *Snyder v. Trepagnier,* 142 F.3d
791, 801 n.11 (5th Cir. 1998). The appropriate inquiry is whether the by standing police officer had
reasonable opportunity to realize the excessive nature of the force used by another officer. *Hale v.
Townley,* 45 F.3d 914, 919 (5th Cir. 1995).

The Defendants argue that the force employed by the Defendants was applied solely to restore

13

the jail's discipline and to protect themselves from physical harm.  The Defendants allege Guajardo was drug influenced and that he attacked Officer Trevino, pushed him into the booking area, and pinned him against the wall.  The Defendants aver that Guajardo's conduct warranted Officer Trevino's use force in self defense.  As to Officer Hernandez, the Defendants contend that the allegations against Hernandez are conclusory and are not sufficient to overcome her qualified immunity.  The Defendants argue that the Plaintiffs present no evidence rebutting these facts.

In their Response, the Plaintiffs contend that Officer Trevino struck Guajardo first, pushed him into the booking area, applied the choke hold, and dragged him towards a padded cell.  In support of these allegations, the Plaintiffs offer the depositions of Hector Eguia Garcia ("Garcia") and Benavides, individuals in custody on April 8, 1997, and eye witnesses to some of the events in question. Garcia testified that Officer Trevino struck Guajardo first.  (Docket No. 77, Ex. C, pp. 17 & 19). Benavides testified that as he was handing Guajardo a blanket,  "[Officer Trevino] looked at me, and remember just seeing him tilt [Guajardo's] head and I saw the guard's fist or... like I said, slap or something on the side of his face." (Docket No. 77, Ex. F, pp. 10 & 11).  Benavides further stated that prior to the that incident, only a verbal confrontation occurred between the two men and that Guajardo had not tried to hit, shove, or push Officer Trevino.  (Docket No. 77 Ex. F, p. 29).

With regard to Officer Hernandez, Garcia testified that during the alleged incident he heard Officer Hernandez call to Officer Trevino to "stop it".  (Docket No. 77, Ex. C, p. 24).  Further, Officer Hernandez testified that she and Officer Trevino argued as to whether Officer Trevino should remove Guajardo's handcuffs, call their supervisor and call EMS.  (Docket No. 64, Ex. D, p. 22). A complete reading of this page reveals that EMS was in fact summoned almost immediately after Guajardo started having difficulty breathing.

In their Objections, Defendants claim that the Garcia and Benavides depositions should be disregarded, since they contradict affidavits given the Brownsville Police Department during its investigation of Guajardo's death. ( Docket No. 77, Exs. B & E).  Both affidavits indicate that there was an altercation between Guajardo and Officer Trevino.  Garcia's affidavit (Ex. B) states that Garcia saw Trevino grab Guajardo and pull him back after Guajardo had asked for a blanket.  Garcia then states that he heard a fight.  There is nothing in the affidavit which indicates that Trevino instigated the violence.  Benavides' affidavit (Docket No. 77, Ex. E) states that Guajardo used obscene language to the guard.  Neither affidavit confirms the deposition testimony relied on by the Plaintiffs to show that the claimed assault on Guajardo was violent and unprovoked.  In fact, Benavides' affidavit is at odds with his deposition.  It seems inconceivable that Benavides would not have told the officer investigating Guajardo's death the dramatic story related in the deposition if in fact it had taken place.  In the same manner, Garcia's affidavit is at odds with his deposition testimony which describes an unprovoked brutal assault on Guajardo by Trevino (Docket No. 77,  Ex. C pp. 19-21).  However, this court cannot ignore the fact that there are substantial differences in the stories told by the guards and the inmates in the jail at the time of Guajardo's death.  All reasonable inferences must be decided in favor of the non-movant.  *Burditt v. West American Insurance Company*, 86 F.3d 475 (5th Cir. 1996).  The invitation by Defendants to make a credibility determination must be declined.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

Consequently, the Defendants' Motion should be denied as to the Plaintiffs' Fourteenth Amendment claim of excessive force against Officers Trevino and Hernandez, in their individual capacities and that they be found not entitled to qualified immunity.

Since, as previously stated, the claims against Chief Reyna are the equivalent to claims against the City they should be dismissed.

## D.  STATE LAW CLAIMS

The Plaintiffs seek to recover damages against the Defendants pursuant to the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM. CODE ANN. § 71.002, and the Survival Statute, TEX. CIV. PRAC. REM. CODE ANN. § 71.021, alleging negligence and gross negligence on behalf of all the Defendants.  The Plaintiffs further assert a cause of action for fraud as to all Defendants.

### NEGLIGENCE CLAIM

The Plaintiffs allege claims of negligence against Chief Reyna, Officer Trevino, and Officer Hernandez, and seek to impose vicarious liability on the City and the Police Department for the alleged acts of negligence committed by the individual Defendants.  The Defendants argue, however, that they are entitled to sovereign immunity.

In support of their claim against the City, the Police Department, and Chief Reyna, the Plaintiffs' Second Amended Complaint (Docket No. 36) lists the following allegations of negligence: allowing their employees to use excessive force and to batter and abuse Guajardo; failing to discipline their employees who abused Guajardo in light of their prior knowledge of employee misconduct; aggravating Guajardo's pre-existing heart condition;  causing Guajardo's death;  failing to discipline Trevino for the use of the choke hold; failing to train, supervise and promulgate appropriate procedures; implementing a policy promulgated by the officers of the Police Department; not reviewing complaints; allowing employees to falsely reduce to writing the eye witness statement; submitting inaccurate witness statements in the Custodial Death Report; and misleading the Attorney General's Office by representing that there was a video recording of the events in question.

16

As to Officers Trevino and Hernandez, the Plaintiffs allege they were negligent in exposing Guajardo to irreparable harm and danger to his person and body; using the choke hold; using excessive force when it was not required; failing to provide medical assistance; and failing to follow appropriate policy for handling detainees.  Further, in their Response to Defendants' Motion for Summary Judgment, the Plaintiffs generally assert "that a jailhouse door, panel and wall were used in a negligent manner to further the application of unreasonable and excessive force..."  (Second Amended Complaint, Docket No. 36).

1.  Claims against the City and the Police Department

A party must have the capacity to sue or be sued.  Fed. R. Civ. P. 17.  In order for the Plaintiffs to sue a city department, that department must have a separate legal existence.  *Darby,* 939 F.2d at 313 (5th Cir. 1991).  The Plaintiffs have not shown that the City granted to the Police Department the capacity to engage in separate litigation.  Therefore, the Plaintiffs' state law claims against the Police Department should be dismissed.

In Texas, under the doctrine of sovereign immunity, a governmental unit cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity.  *City of Amarillo v. Martin,* 971 S.W.2d 426, 427 (Tex. 1998).  The Texas Tort Claims Act ("TTCA") waives immunity from suit in negligence actions if (1) the plaintiff's injuries were proximately caused by the operation or use of a motor-driven vehicle or equipment or (2) by a condition or use of tangible real or personal property.  Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).

The Defendants argue that the Plaintiffs' claims for negligence are barred by sovereign immunity because they have failed to allege any facts that give rise to a claim under the TTCA.  The

17

Plaintiffs contend in their Response that the application of excessive force which led to Guajardo's death, was furthered by Officer Trevino's negligent use of tangible real or personal property--the jailhouse door, panel, and wall.  However, Plaintiffs entire case is premised on intentional acts, not negligence, therefore, the Defendants Motion on Plaintiffs negligence claims against the City and the Police Department  arising out of the use of tangible real or personal property should be granted.

The Plaintiffs further seek to impose liability on the City and the Police Department by contending that the Defendants failed to properly train employees, and develop and enforce policies concerning the handling of detainees.  Such claims do not involve the operation or use of a motor vehicle, or the condition or use of tangible personal or real property.  Accordingly, these claims are barred by the TTCA and cannot form the basis for liability.  The City and the Police Department are immune from liability as to these specific claims under the doctrine of sovereign immunity and the Defendants' Motion should be granted.

### 2.  Claims against Chief Reyna and Officers Trevino and Hernandez, in their Official Capacities.

Since there are no negligence claims against the city, there can be no negligence claims against the city employees in their official capacity. These claims should be dismissed.  *Allen v. City of Midlothian,* 927 S.W.2d 316, 322 (Tex. App.-Waco 1996, no writ).

### 3.  Chief Reyna and Officers Trevino and Hernandez, in their Individual Capacities

All of the conduct complained of was done while the individuals were acting within the course and scope of their employment.  Thus the claims against them are tantamount to claims against the City and should be dismissed for the same reasons.  *Callis v. Sellars*, 931 F. Supp. 504, 521 (S. D. Tex. 1996).

18

## FRAUD

In their Second Amended Complaint ("Complaint") (Docket No. 36), the Plaintiffs allege that the Defendants, by and through their employees[1], committed fraud by not accurately reducing the statements of three eye witnesses. Further, the Plaintiffs aver that Chief Reyna, by and through his officers, participated in fraud by not accurately reducing to writing the eye witness statements, issuing a false Custodial Report to the Attorney General's Office ("AG's Office"), and leading the AG's Office to believe there was a video tape of the events. The Plaintiffs contend that the Defendants knew the eye witness statements were false and were "relied on to determine Defendants' acts towards JUAN JOSE GUAJARDO and his untimely death."

### 1. Claims Against the City

There is no need to evaluate the Plaintiffs' fraud claims. They are barred by the fact that TTCA shields municipalities from suits arising out of the intentional torts committed by governmental employees. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 1997); *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993), *cert. denied,* 510 U.S. 1072 (1994). Accordingly, summary judgment is warranted as to the Plaintiffs' fraud claims against the City.

### 2. Claims against Chief Reyna, Officer Trevino and Officer Hernandez, in their Official Capacities

As noted above, officials acting in their representative capacities are afforded sovereign immunity. *Allen,* 927 S.W.2d at 322. Because the City is entitled to sovereign immunity for intentional torts, the same is afforded to Chief Reyna, Officer Trevino, and Officer Hernandez, in their official capacities. Therefore, the Defendants' Motion should be granted and the Plaintiffs' fraud

---

[1]Based on this language, the court construes "the Defendants" to refer to the City and the Police Department.

claims against Chief Reyna, Officer Trevino and Officer Hernandez in their official capacities should be dismissed.

### 3.  Claims against Chief Reyna, Officer Trevino and Officer Hernandez, in their Individual Capacities

If the City is not liable, Chief Reyna, Officer Trevino and Officer Hernandez cannot be liable, *Callis, supra.*  In addition all the fraud claims refer to post death conduct which could not have caused any damages to Plaintiffs.

### GROSS NEGLIGENCE

In their Complaint, Plaintiffs allege that the conduct alleged as a basis for their fraud claim was of such a character as to constitute gross negligence.  They contend the Defendants' conduct involved an extreme degree of risk and was intentional, willful, wanton, malicious, with a reckless disregard for the rights and safety of others.

### 1. Claims against the City and the Police Department

The TTCA does not waive sovereign immunity from liability for gross negligence.  *Hockaday v. Texas Dept. of Criminal Justice*, 914 F. Supp. 1439, 1447 (S.D. Tex. 1996).  Accordingly, the gross negligence claims should be dismissed as to the City and the Police Department, and the Defendants' Motion should be granted.

### 2. Claims Against Chief Reyna, Officer Trevino and Officer Hernandez, in their Official Capacities.

In addition, the City's employees are entitled to sovereign immunity from suits in their representative capacities.  Having determined the City's entitlement to sovereign immunity, this court finds Chief Reyna, Officer Trevino and Officer Hernandez to be entitled to the same.  Therefore, the Defendants' Motion should be granted and the Plaintiffs' gross negligence claims against Chief

20

Reyna, Officer Trevino, and Officer Hernandez in their official capacities should be dismissed

> 3. Claims Against Chief Reyna, Officer Trevino and Officer Hernandez,
> in their Individual Capacities.

These claims should be dismissed, *Callis, supra.*

IT IS THEREFORE **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** in part.

IT IS FURTHER **RECOMMENDED** that Defendants' Motion for Summary Judgment in so far as it seeks dismissal of 42 U.S.C. § 1983 claims brought against Officers Trevino and Hernandez in their individual capacities be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this  day of 5th day of October 1999.

John Wm. Black
United States Magistrate Judge

21