102

United States District Court
Southern District of Texas
FILED

MAR 3 0 2001

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY & AS ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO, AND AS GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, AND CAROLINE GUAJARDO, MINOR CHILDREN AND ALEJANDRO GARCIA | CIVIL ACTION NO. 97-215 |
| VS. | |
| EDUARDO TREVIÑO, INDIVIDUALLY | |

---

## AMENDED JOINT PRE-TRIAL ORDER

---

## 1. APPEARANCE OF COUNSEL

1.    Plaintiffs:        **MARIA F. GUAJARDO, INDIVIDUALLY,** and as
**ADMINISTRATOR OF THE ESTATE OF JUAN JOSE
GUAJARDO,** and as **GUARDIAN OF THOMAS
GUAJARDO, III, CYNTHIA GUAJARDO,** and **CAROLINE
GUAJARDO, MINOR CHILDREN,** and **ALEJANDRO
GARCIA**

Plaintiff's counsel:        Hon. Victor Quintanilla
State Bar No. 00786181
Federal Id. No. 16073
**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas  78520
Telephone No.: (956) 541-3820
Facsimile No.: (956) 541-7694

2.    Defendant:    **EDUARDO TREVIÑO, INDIVIDUALLY**

Defendant's counsel:        Hon. George C. Kraehe
                            State Bar No. 00792631
                            Federal Id. No. 19355
                            **WILLETTE & GUERRA, L.L.P.**
                            3505 Boca Chica Blvd., Suite 460
                            Brownsville, Texas 78521
                            Telephone No.: (956) 541-1846
                            Facsimile No.: (956) 541-1893

## 2. STATEMENT OF THE CASE

This is a wrongful death and survivorship action brought by Plaintiffs against Defendant

**EDUARDO TREVIÑO** under 42 U.S.C. § 1983 alleging deprivation of **JUAN JOSE**

**GUAJARDO's** rights under the United States Constitution to be free from the use of excessive

force. Plaintiffs make this claim against Defendant **EDUARDO TREVIÑO** as a result of an

altercation between **JUAN JOSE GUAJARDO** and **EDUARDO TREVIÑO** which occurred on

**April 8, 1997** at the Brownsville City Jail. **MR. GUAJARDO** sustained certain bodily injuries as

a result of the altercation and subsequently died on **April 9, 1997**. Defendant **TREVIÑO** was a

detention officer employed by the City of Brownsville at the Brownsville City Jail at the time of

the incident made the basis of this civil action. Plaintiffs seek to recover compensatory damages,

past medical expenses incurred, funeral and burial expenses, and punitive (exemplary) damages

from Defendant **TREVIÑO**.

## 3. JURISDICTION

42 U.S.C. § 1983 vests jurisdiction of this case in the United States District Court for the

Southern District of Texas. Because the incident made the basis of this lawsuit occurred in

Brownsville, the Brownsville Division has venue. Jurisdiction is undisputed.

2

## 4. MOTIONS

The following motions are pending at the time of the Pretrial Conference:

1.    **Defendant's Motion in Limine.  (See attached).**

2.    **Plaintiffs' Motion in Limine.     (See attached).**

## 5. CONTENTIONS OF THE PARTIES

A.    **PLAINTIFF'S CLAIMS:**

(1)    Defendant **EDUARDO TREVIÑO** was employed as a detention officer with the City of Brownsville starting May 2, 1994 and January 15, 1998.

(2)    Defendant **EDUARDO TREVIÑO** worked as a detention officer at the Brownsville City Jail.

(3)    Defendant **EDUARDO TREVIÑO** was a detention officer at the Brownsville City Jail on **April 8, 1997**.

(4)    Defendant **EDUARDO TREVIÑO's** work shift on **April 8, 1997** was 3:00 p.m. to 11:00 p.m..

(5)    Defendant **EDUARDO TREVIÑO** was terminated from his employment as a detention officer with the City of Brownsville as a result of being involved in an automobile accident and being charged with driving while intoxicated.

(6)    **MR. GUAJARDO** was born on February 9, 1958.

(7)    **MR. GUAJARDO** died on **April 9, 1997** at the age of thirty-nine (39) years of age.

(8)    **MR. GUAJARDO** died at Brownsville Medical Center in Brownsville, Texas.

(9)    **MR. GUAJARDO** was arrested for public intoxication by Brownsville police on **April 8, 1997**.

(10)    **MR. GUAJARDO** was booked into the Brownsville City Jail and placed into a single cell (W3).

3

(11)   At approximately 9:25 p.m., **MR. GUAJARDO** was allowed to use the jail telephone to call is mother, **MARIA F. GUAJARDO**.

(12)   After using the telephone and on the way back to his cell, a verbal confrontation between **MR. GUAJARDO** and Defendant **EDUARDO TREVIÑO** commenced in regard to a blanket.

(13)   While other inmates were offering a blanket to **MR. GUAJARDO**, Defendant **EDUARDO TREVIÑO** pulled **MR. GUAJARDO** back towards the booking area while applying a **"choke hold"** from behind, around **MR. GUAJARDO's** neck.

(14)   In this holding position, Defendant **EDUARDO TREVIÑO** slammed **MR. GUAJARDO's** head against a steel access door, which caused **MR. GUAJARDO** to bounce to the lateral wall in the main hall.

(15)   While Defendant **EDUARDO TREVIÑO** had **MR. GUAJARDO** in the **"choke hold"**, Jail Matron, Ana Hernandez, then grabbed **MR. GUAJARDO** from the legs causing him to fall to the ground faced down.

(16)   This incident lasted for a few minutes with the **"choke hold"** for about two minutes.

(17)   Defendant **EDUARDO TREVIÑO** applied the **"choke hold"** to **MR. GUAJARDO** and changed his hold at least once from right to left or visa versa. Thereafter, Defendant **TREVIÑO** dragged **MR. GUAJARDO** to a padded cell.

(18)   Since **MR. GUAJARDO** was gurgling and having trouble breathing, Defendant **EDUARDO TREVIÑO** argued with Jail Matron, Ana Hernandez, about whether to call Brownsville EMS or not.  Defendant **TREVIÑO** did not want to call the EMS unit.

(19)   Upon arrival at the Brownsville City Jail, a Brownsville EMS attendant checked **MR. GUAJARDO** who appeared to be unconscious.  The Brownsville EMS attendant further examined **MR. GUAJARDO** who, by then, was not breathing and had not pulse.

(20)   The Brownsville EMS attendant radioed a **"CODE BLUE"** call to the Brownsville EMS supervisor, and another unit was dispatched for assistance.

(21)   The Brownsville EMS attendant administered CPR, hyperventilation, intubation, IV line place, EPI and Atropine was used, sodium bicarbinnte, and the EKG tracing indicated that there was no response from **MR. GUAJARDO**.

4

(22)   After Brownsville EMS attempted to resuscitate **MR. GUAJARDO**, he was transported to Brownsville Medical Center where he was treated and required advanced life support, **"FULL CODE BLUE"**.

(23)   **MR. GUAJARDO** never regained consciousness from the **"choke hold"** and died at Brownsville Medical Center approximately twenty-four (24) hours later on **April 9, 1997.**

(24)   Defendant **EDUARDO TREVIÑO's** actions violated **MR. GUAJARDO's** constitutional rights.

(25)   **MR. GUAJARDO** was unarmed and helpless, and in no way posed a threat to Defendant **EDUARDO TREVIÑO** on **April 8, 1997.**

(26)   The force applied by Defendant **EDUARDO TREVIÑO** on **April 8, 1997** was not done in a good faith effort to maintain or restore discipline, rather it was one for the purpose of causing harm to **MR. GUAJARDO.**

(27)   Defendant **EDUARDO TREVIÑO** had either no training or inadequate training in carrying his duties as a detention officer at the Brownsville City Jail.

(28)   The lack of education, experience, and/or training is a contributing cause in the use of the excessive force upon **MR. GUAJARDO.**

(29)   As a direct and proximate result of the conduct of Defendant **EDUARDO TREVIÑO, MR. GUAJARDO** suffered abrasions to the right forehead, bridge of the nose, elbow, bruises to his back, right side of his face, elbows, arms, legs, and a **"choke hold"**, which resulted in the hemorrhaging to his left eye, neck, just behind the right ear, and his entire body.

(30)   The **"choke hold"** prevented the blood and air flow through **MR. GUAJARDO's** body which caused his body to go into shock and resulted in his untimely death.

(31)   The loss of consciousness and death points toward asphyxia as the mechanism that triggered the chain of events that killed **MR. GUAJARDO.**

(32)   **MR. GUAJARDO's** entire body was bruised, battered, and contused, and he suffered great shock to his entire nervous system.

(33)   **MR. GUAJARDO** further suffered the following injuries:

(a)     Massive injuries to his entire body as a result of the excessive force which were aggravated by Defendant **TREVIÑO's "choke hold"**.

(b)     Great shock to his entire nervous system from the **"choke hold" by Defendant TREVIÑO**, which caused his heart attack.

(c)     Great physical mental pain and anguish from the excessive force used on him by Defendant **TREVIÑO**.

(34)   **MR. GUAJARDO** died on **April 9, 1997** as a direct and proximate result of the subject occurrence and the injuries inflicted upon him by the conduct of Defendant **EDUARDO TREVIÑO**, including, but not limited to the violation of **MR. GUAJARDO's** constitutional rights.

(35)   As a result of Defendant **EDUARDO TREVIÑO's** conduct, **MR. GUAJARDO** suffered great physical and mental pain and anguish.  He suffered from being battered and placed in a **"choke hold"** which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment.

(36)   **MR. GUAJARDO** suffered great shock to his entire body and nervous system. **MR. GUAJARDO** died on **April 9, 1997**, after several hours of conscious pain and suffering.

(37)   **MR. GUAJARDO** was the father of **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA**.

(38)   During his lifetime, **MR. GUAJARDO** was industrious and energetic, a good father, a good son, and provider.  He performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to his mother and children.  In all reasonable probability, he would have continued to do so, providing for and supporting his mother for the remainder of her natural life, and caring for and supporting his children at least until they attained adulthood, and probably thereafter.

(39)   **MARIA F. GUAJARDO** has suffered pecuniary losses from the death of her son, **JUAN JOSE GUAJARDO**, including, loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, funeral and burial expenses, and contribution of a pecuniary value that she would in all reasonable probability, have received from her son during his lifetime had he lived.

(40)   **MARIA F. GUAJARDO** has suffered the destruction of the parent-child relationship and mental depression and anguish, grief and sorrow as a result of the

death of her son, **JUAN JOSE GUAJARDO**, is likely to continue to suffer for a long time in the future.

(41) **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA** have suffered pecuniary losses from the death of their father, **JUAN JOSE GUAJARDO**, including, loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, funeral and burial expenses, and contribution of a pecuniary value that they would in all reasonable probability, have received from their father during his lifetime had he lived.

(42) **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA** have suffered the destruction of the parent-child relationship and mental depression and anguish, grief and sorrow as a result of the death of their father, **JUAN JOSE GUAJARDO**, is likely to continue to suffer for a long time in the future.

(43) Plaintiffs suffered a loss of inheritance that, in all reasonable probability, **MR. GUAJARDO** would have left to them by will or inheritance.

(44) The Estate of **MR. GUAJARDO** has paid or incurred liability to pay **FIVE THOUSAND FOUR HUNDRED SIXTY-ONE AND NO/100THS DOLLARS ($5,461.00)** in funeral and burial services, which is a reasonable and customary charge.

(45) The Estate of **MR. GUAJARDO** has paid or incurred liability to pay reasonable and necessary charges for medical care and treatment, including, **FOUR HUNDRED FORTY-THREE AND NO/100THS DOLLARS ($443.00)** for ambulance services, and **THIRTY-TWO THOUSAND FIVE HUNDRED SEVENTY AND 70/100THS ($32,570.70)** for hospital services, physician fees, and supplies.

(46) Plaintiffs contend that Defendant **EDUARDO TREVIÑO** struck the **"first blow"** to **JUAN JOSE GUAJARDO** and that he started the altercation.

**B.    DEFENDANT'S CONTENTIONS:**

(1) Guajardo was highly intoxicated at the time of the incident made the basis of this lawsuit.

(2) Guajardo was under the influence of cocaine at the time of the incident made the basis of this lawsuit.

CamPDF - www.fastio.com

(3)     Guajardo was hostile, belligerent, aggressive, and uncooperative at the time of the incident made the basis of this lawsuit, and had been investigated for a possible assault occurring prior to Guajardo's arrest on April 8, 1997.

(4)     Guajardo was hostile, belligerent, aggressive, and uncooperative during his stay at the Brownsville City Jail. Because of Guajardo's behavior, Officer Treviño attempted to direct Guajardo to the padded cell for his safety, the safety of the other detainees, and the safety of the prison staff.

(5)     In response to Officer Treviño's attempt to direct him to the padded cell, Guajardo became verbally abusive, hostile, and aggressive.

(6)     Guajardo, without provocation, assaulted Officer Treviño.

(7)     Guajardo lifted Officer Treviño off the ground and pinned him against a wall.

(8)     To restore discipline and to defend himself from physical harm or even death, Officer Treviño executed a bear hug around Guajardo's upper chest and neck area and pushed with his feet against the wall.

(9)     Officer Hernandez, first noticing the struggle only after it started, came to Officer Treviño's assistance.

(10)    Officer Hernandez pulled on Guajardo's pant leg and applied pressure to the back of his knee, bringing him and Officer Treviño to the ground.

(11)    Guajardo continued to resist after he was brought to the ground.

(12)    Officers Treviño and Hernandez hand-cuffed Guajardo and brought him to the padded cell.

(13)    After bringing the prisoner to the padded cell, Officer Treviño noticed that Guajardo was having trouble breathing.

(14)    Officer Hernandez immediately called EMS, which arrived one (1) or two (2) minutes later.

(15)    EMS personnel immediately started treating Guajardo, but found no signs of breathing or a pulse. CPR was administered, and Guajardo was transported to Brownsville Medical Center for further treatment.

(16)    Guajardo was diagnosed as having a full cardiac arrest. Guajardo never regained consciousness and died a day later on April 9, 1997, at 11:45 p.m..

8

(17)   Guajardo's body was transported to Valley Baptist Medical Center in Harlingen, Texas, where Margie W. Cornwell, M.D., performed an autopsy on April 10, 1997.

(18)   Guajardo had a blood-alcohol content of .212 at the time of his death (more than twice legal intoxication), high levels (190 ng/ml) of cocaine in his bloodstream, and had a history of heart disease, diabetes, heavy alcohol use, prior trauma, ciggarette use, and heart attacks.

(19)   There were no signs of significant lethal trauma to Guajardo by external and internal examination of the organs, including the skull, brain, and neck. The only bruising on the neck appears to have been caused in the course of Guajardo's medical treatment.  There were no bruises or any signs of choking.

(20)   Dr. Cornwell determined Guajardo's cause of death to be arrhythmia brought on by decedent's "abnormal heart."  Dr. Cornwell stated in her autopsy report: "Such an abnormal heart would be susceptible to sudden lethal cardiac arrhythmia. Coupling such an abnormal heart with cocaine toxicity and alcohol abuse could readily produce lethal arrhythmia, particularly in this man's physically agitated state."

(21)   Eduardo Treviño's use of force was appropriate under the circumstances in that it was applied in a good faith effort to restore discipline, was not excessive, was not malicious, wanton, or sadistic.

(23)   Eduardo Treviño is entitled to qualified immunity because his actions were objectively reasonable under the circumstances with reference to clearly established law.

## 6. ADMISSIONS OF FACT

### A.   PLAINTIFFS' ADMISSIONS OF FACT:

(1)   Plaintiffs admit that JUAN JOSE GUAJARDO was arrested for public intoxication on April 8, 1997.

(2)   Plaintiffs admit that JUAN JOSE GUAJARDO was thirty-nine (39) years of age on April 8, 1997.

(3)   Plaintiffs admit that JUAN JOSE GUAJARDO lived with his mother, MARIA F. GUAJARDO at 2125 Southmost Road, Brownsville, Texas.

9

(4)     Plaintiffs admit that **JUAN JOSE GUAJARDO** died on **April 9, 1997** at Brownsville Medical Center in Brownsville, Texas.

(5)     Plaintiffs admit that **JUAN JOSE GUAJARDO** placed a telephone call to his mother, **MARIA F. GUAJARDO**, on the evening of **April 8, 1997** from the Brownsville City Jail.

(6)     Plaintiffs admit that **JUAN JOSE GUAJARDO** was taken to the Brownsville City Jail or Municipal Jail following his arrest on **April 8, 1997**.

(7)     Plaintiffs admit that **JUAN JOSE GUAJARDO** was the father of **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA**.

## B.     DEFENDANT'S ADMISSIONS OF FACT

(1)     Defendant admits that **JUAN JOSE GUAJARDO** was arrested for public intoxication on **April 8, 1997**.

(2)     Defendant admits that **JUAN JOSE GUAJARDO** was thirty-nine (39) years of age on **April 8, 1997**.

(3)     Defendant admits that **JUAN JOSE GUAJARDO** died on **April 9, 1997** at Brownsville Medical Center in Brownsville, Texas.

(4)     Defendant admits that **JUAN JOSE GUAJARDO** placed a telephone call to his mother, **MARIA F. GUAJARDO**, on the evening of **April 8, 1997** from the Brownsville City Jail.

(5)     Defendant admits that **JUAN JOSE GUAJARDO** was taken to the Brownsville City Jail or Municipal Jail following his arrest on **April 8, 1997**.

(6)     Defendant admits that **EDUARDO TREVIÑO** was employed as a detention officer with the City of Brownsville starting May 2, 1994.

(7)     Defendant admits **EDUARDO TREVIÑO** worked as a detention officer at the Brownsville City Jail.

(8)     Defendant admits that **EDUARDO TREVIÑO** was a detention officer at the Brownsville City Jail on **April 8, 1997**.

(9)     Defendant admits that **MR. GUAJARDO** was born on February 9, 1958.

10

(10)     Defendant admits that **MR. GUAJARDO** died on **April 9, 1997** at the age of thirty-nine (39) years of age.

(11)     Defendant admits that **MR. GUAJARDO** died at Brownsville Medical Center in Brownsville, Texas.

(12)     Defendant admits that **MR. GUAJARDO** was arrested for public intoxication by Brownsville police on **April 8, 1997**.

(13)     Defendant admits that **MR. GUAJARDO** was booked into the Brownsville City Jail and placed into a single cell.

(14)     Defendant admits that at approximately 9:25 p.m., **MR. GUAJARDO** was allowed to use the jail telephone.

(15)     Defendant admits that after using the telephone and on the way back to his cell, a verbal confrontation between **MR. GUAJARDO** and Defendant **EDUARDO TREVIÑO** commenced in regard to a blanket.

(16)     Defendant admits that upon arrival at the Brownsville City Jail, a Brownsville EMS attendant checked **MR. GUAJARDO** who appeared to be unconscious. The Brownsville EMS attendant further examined **MR. GUAJARDO** who, by then, was not breathing and had not pulse.

(17)     Defendant admits that the Brownsville EMS attendant radioed a **"CODE BLUE"** call to the Brownsville EMS supervisor, and another unit was dispatched for assistance.

(18)     Defendant admits that the Brownsville EMS attendant administered CPR, hyperventilation, intubation, IV line place, EPI and Atropine was used, sodium bicarbinnte, and the EKG tracing indicated that there was no response from **MR. GUAJARDO**.

(19)     Defendant admits that after Brownsville EMS attempted to resuscitate **MR. GUAJARDO**, he was transported to Brownsville Medical Center where he was treated and required advanced life support, **"FULL CODE BLUE"**.

(20)     Defendant admits that **MR. GUAJARDO** never regained consciousness and died at Brownsville Medical Center approximately twenty-four (24) hours later on **April 9, 1997**.

## 7.  CONTESTED ISSUES OF FACT

11

CSkPDF - www.tesisi.com

(1)     Plaintiffs dispute Defendant's contention that any loss or damages allegedly
        sustained by Plaintiffs at the time, place, and occasion mentioned in **Plaintiffs'
        Second Amended Complaint** were caused, in whole or in part, or were
        contributed to, by the negligence of **JUAN JOSE GUAJARDO**, and not by any
        negligence or fault or want of care on the part of Defendants.

(2)     Plaintiffs dispute Defendant's contention that Plaintiffs' injuries and damages
        alleged were caused in whole or in part, or contributed to, by the negligence, fault,
        or want of care of parties, persons or instrumentalities over whom Defendants
        exercised no control and for whose acts Defendants are not under the law
        responsible.

(3)     Plaintiffs dispute Defendant's contention that the use of force alleged in **Plaintiffs'
        Second Amended Complaint** was necessary under the circumstances, was
        privileged under the law as an act of self-defense or for other reasons, and was in
        every way constitutional under constitutional standards applicable at the time of
        the incident made the basis of this lawsuit.

(4)     Plaintiffs dispute Defendant's contention that at the time of **JUAN JOSE
        GUAJARDO's** booking on **April 8, 1997**, he was uncooperative, belligerent,
        intoxicated, and under the influence of cocaine.

(5)     Plaintiffs dispute Defendant's contention and/or assertion that as a result of his
        belligerent behavior, **JUAN JOSE GUAJARDO** was placed in a single cell for his
        own safety and that of the other inmates.

(6)     Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE
        GUAJARDO** became agitated and belligerent towards Defendant **EDUARDO
        TREVIÑO** over a request for blankets.

(7)     Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE
        GUAJARDO** grabbed Defendant **EDUARDO TREVIÑO's** uniform, spun him
        around, and slammed him (i.e. Defendant **TREVIÑO**) against a corner wall
        outside the women's drunk tank ("WDT").

(8)     Plaintiffs dispute Defendant's contention and/or assertion that Defendant
        **EDUARDO TREVIÑO**, defending himself, placed **JUAN JOSE GUAJARDO**
        in a bear hug, wrapped his arms around **MR. GUAJARDO's** neck, and attempted
        to push off the wall with his feet.

(9)     Plaintiffs dispute Defendant's contention and/or assertion that Defendant
        **EDUARDO TREVIÑO** acted in good faith to maintain or restore discipline in

12

dealing with **JUAN JOSE GUAJARDO** on **April 8, 1997**.

(10)    Plaintiffs dispute Defendant's contention and/or assertion that Defendant **EDUARDO TREVIÑO** had to restore discipline and defend himself from physical harm or even death on **April 8, 1997**.

(11)    Plaintiffs dispute Defendant's contention and/or assertion that Defendant **EDUARDO TREVIÑO's** actions on **April 8, 1997** were taken in response to the drug-induced aggressiveness of a career criminal and drug abuser in an attempt to restore institutional security and discipline.

(12)    Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** assaulted Defendant **EDUARDO TREVIÑO** and in essence delivered the first blow on **April 8, 1997**.

(13)    Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** was more than twice the legal limit for intoxication at the time of his arrest on **April 8, 1997**.

(14)    Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** was under the influence of cocaine at the time of his arrest on **April 8, 1997**.

(15)    Plaintiffs dispute Defendant's contention and/or assertion that on **April 8, 1997**, **JUAN JOSE GUAJARDO** was placed in a cell by himself because he posed a safety risk to himself, other prisoners and to jail employees.

(16)    Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** assaulted Defendant **EDUARDO TREVIÑO** without provocation on **April 8, 1997**.

(17)    Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** suffered from any heart disease.

(18)    Plaintiffs dispute Defendant's contention and/or assertion that Defendant **EDUARDO TREVIÑO** was slammed against a wall and placed in jeopardy of physical injury or even death.

(19)    Plaintiffs dispute Defendant's contention and/or assertion that on **April 8, 1997**, after the altercation between **JUAN JOSE GUAJARDO** and Jailer **EDUARDO TREVIÑO**, the Defendant immediately noticed that **JUAN JOSE GUAJARDO** was having difficulty breathing.

13

(20) Plaintiffs dispute Defendant's contention and/or assertion that Jailer **EDUARDO TREVIÑO** immediately called or caused to be called EMS after noticing that **JUAN JOSE GUAJARDO** was having difficulty breathing.

(21) Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** died on **April 9, 1997** of a heart attack brought on by a combination of his severe heart disease, his simultaneous use of alcohol and cocaine and his physically agitated state.

(22) Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO's** death was not caused by any lack of supervision and/or training with respect to Defendant **EDUARDO TREVIÑO**.

(23) Plaintiffs dispute Defendant's contention and/or assertion that **JUAN JOSE GUAJARDO** did not suffer deprivation of his constitutional rights.

(24) Plaintiffs dispute Defendant's contention and/or assertion that he is entitled to the defense of quality immunity.

(25) Defendant contests all of Plaintiffs' contentions and allegations set forth herein and in Plaintiffs' pleadings except those expressly admitted herein and expressly denies that Defendant used excessive force against Juan Jose Guajardo in violation of the Fourteenth Amendment to the United States Constitution and specifically denies that the defense of qualified immunity is not available to him.

(26) Defendant disputes Plaintiffs' contention that while other inmates were offering a blanket to **MR. GUAJARDO**, Defendant **EDUARDO TREVIÑO** pulled **MR. GUAJARDO** back towards the booking area while applying a **"choke hold"** from behind, around **MR. GUAJARDO's** neck.

(27) Defendant disputes Plaintiffs' contention that in this holding position, Defendant **EDUARDO TREVIÑO** slammed **MR. GUAJARDO's** head against a steel access door, which caused **MR. GUAJARDO** to bounce to the lateral wall in the main hall.

(28) Defendant disputes Plaintiffs' contention that while Defendant **EDUARDO TREVIÑO** had **MR. GUAJARDO** in the **"choke hold"**, Jail Matron, Ana Hernandez, then grabbed **MR. GUAJARDO** from the legs causing him to fall to the ground faced down.

(29) Defendant disputes Plaintiffs' contention that this incident lasted for a few minutes with the **"choke hold"** for about two minutes.

14

(30)   Defendant disputes Plaintiffs' contention that Defendant **EDUARDO TREVIÑO** applied the **"choke hold"** to **MR. GUAJARDO** and changed his hold at least once from right to left or visa versa.  Thereafter, Defendant **TREVIÑO** dragged **MR. GUAJARDO** to a padded cell.

(31)   Defendant disputes Plaintiffs' contention since **MR. GUAJARDO** was gurgling and having trouble breathing, Defendant **EDUARDO TREVIÑO** argued with Jail Matron, Ana Hernandez, about whether to call Brownsville EMS or not. Defendant **TREVIÑO** did not want to call the EMS unit.

(32)   Defendant disputes that **MR. GUAJARDO** was ever put in a lethal **"choke hold."**

(33)   Defendant denies that **EDUARDO TREVIÑO's** actions violated **MR. GUAJARDO's** constitutional rights.

(34)   Defendant denies that **MR. GUAJARDO** was unarmed and helpless, and in no way posed a threat to Defendant **EDUARDO TREVIÑO** on **April 8, 1997**.

(35)   Defendant denies Plaintiffs' contention that the force applied by Defendant **EDUARDO TREVIÑO** on **April 8, 1997** was not done in a good faith effort to maintain or restore discipline, rather it was one for the purpose of causing harm to **MR. GUAJARDO**.

(36)   Defendant denies Plaintiffs' contention that Defendant **EDUARDO TREVIÑO** had either no training or inadequate training in carrying his duties as a detention officer at the Brownsville City Jail.

(37)   Defendant denies Plaintiffs' contention that the lack of education, experience, and/or training is a contributing cause in the use of the excessive force upon **MR. GUAJARDO**.

(38)   Defendant denies Plaintiffs' contention that as a direct and proximate result of the conduct of Defendant **EDUARDO TREVIÑO, MR. GUAJARDO** suffered abrasions to the elbow, bruises to his back, right side of his face, elbows, arms, legs, and a **"choke hold"**, which resulted in the hemorrhaging to his left eye, neck, just behind the right ear, and his entire body.

(39)   Defendant denies Plaintiffs' contention that any **"choke hold"** prevented the blood and air flow through **MR. GUAJARDO's** body which caused his body to go into shock and resulted in his untimely death.

(40)   Defendant denies Plaintiffs' contention that any loss of consciousness and death

15

points toward asphyxia as the mechanism that triggered the chain of events that killed **MR. GUAJARDO**.

(41)   Defendant denies Plaintiffs' contention that **MR. GUAJARDO's** entire body was bruised, battered, and contused, and he suffered great shock to his entire nervous system.

(42)   Defendant denies that **MR. GUAJARDO** further suffered the following injuries:

   (a)   Massive injuries to his entire body as a result of the excessive force which were aggravated by Defendant **TREVIÑO's "choke hold"**.

   (b)   Great shock to his entire nervous system from the **"choke hold" by Defendant TREVIÑO**, which caused his heart attack.

   (c)   Great physical mental pain and anguish from the excessive force used on him by Defendant **TREVIÑO**.

(43)   Defendant denies Plaintiffs' contention that **MR. GUAJARDO** died on **April 9, 1997** as a direct and proximate result of the subject occurrence and the injuries inflicted upon him by the conduct of Defendant **EDUARDO TREVIÑO**, including, but not limited to the violation of **MR. GUAJARDO's** constitutional rights.

(44)   Defendant denies Plaintiffs' contention that as a result of Defendant **EDUARDO TREVIÑO's** conduct, **MR. GUAJARDO** suffered great physical and mental pain and anguish. He suffered from being battered and placed in a **"choke hold"** which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment.

(45)   Defendant denies Plaintiffs' contention that **MR. GUAJARDO** suffered great shock to his entire body and nervous system. **MR. GUAJARDO** died on **April 9, 1997**, after several hours of conscious pain and suffering.

(46)   Defendant denies Plaintiffs' contention that **MR. GUAJARDO** was the father of **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA and that MARIA F. GUAJARDO was his mother**.

(47)   Defendant denies Plaintiffs' contention that during his lifetime, **MR. GUAJARDO** was industrious and energetic, a good father, a good son, and provider. He performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to his mother and children.

16

Defendant denies Plaintiffs' contention that Guajardo in all reasonable probability, he would have continued to do so, providing for and supporting his mother for the remainder of her natural life, and caring for and supporting his children at least until they attained adulthood, and probably thereafter.

(48)   Defendant denies Plaintiffs' contention that **MARIA F. GUAJARDO** has suffered pecuniary losses from the death of her son, **JUAN JOSE GUAJARDO**, including, loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, funeral and burial expenses, and contribution of a pecuniary value that she would in all reasonable probability, have received from her son during his lifetime had he lived.

(49)   Defendant denies Plaintiffs' contention that **MARIA F. GUAJARDO** has suffered the destruction of the parent-child relationship and mental depression and anguish, grief and sorrow as a result of the death of her son, **JUAN JOSE GUAJARDO**, is likely to continue to suffer for a long time in the future.

(50)   Defendant denies Plaintiffs' contention that **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA** have suffered pecuniary losses from the death of their father, **JUAN JOSE GUAJARDO**, including, loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, funeral and burial expenses, and contribution of a pecuniary value that they would in all reasonable probability, have received from their father during his lifetime had he lived.

(51)   Defendant denies Plaintiffs' contention that **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO**, and **ALEJANDRO GARCIA** have suffered the destruction of the parent-child relationship and mental depression and anguish, grief and sorrow as a result of the death of their father, **JUAN JOSE GUAJARDO**, is likely to continue to suffer for a long time in the future.

(52)   Defendant denies Plaintiffs' contention that Plaintiffs suffered a loss of inheritance that, in all reasonable probability, **MR. GUAJARDO** would have left to them by will or inheritance.

(53)   Defendant denies Plaintiffs' contention that the Estate of **MR. GUAJARDO** has paid or incurred liability to pay **FIVE THOUSAND FOUR HUNDRED SIXTY-ONE AND NO/100THS DOLLARS ($5,461.00)** in funeral and burial services, which is a reasonable and customary charge.

17

(54)    Defendant denies Plaintiffs' contention that the Estate of **MR. GUAJARDO** has paid or incurred liability to pay reasonable and necessary charges for medical care and treatment, including, **FOUR HUNDRED FORTY-THREE AND NO/100THS DOLLARS ($443.00)** for ambulance services, and **THIRTY-TWO THOUSAND FIVE HUNDRED SEVENTY AND 70/100THS ($32,570.70)** for hospital services, physician fees, and supplies.

(55)    Defendant denies Plaintiffs' contention that **EDUARDO TREVIÑO** struck the **"first blow"** to **JUAN JOSE GUAJARDO** and that he started the altercation.

## 8. AGREED PROPOSITIONS OF LAW

(1)    A plaintiff alleging excessive force must claim that he **"suffered at least some form of injury,"** Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993).

(2)    In determining whether force is applied in a good faith effort to maintain or restore discipline, courts must balance the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 8. The United States Supreme Court has recognized that it is a difficult task to balance these factors:

> "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."

Id. at 7 (citing Whitley v. Albers, 475 U.S. 312, 320 (1986)).

(3)    In excessive force cases, a pretrial detainee receives the protection of the Due Process Clause of the Fourteenth Amendment, not the Fourth Amendment. Valencia v. Wiggins, 981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 509 U.S. 905 (1993).

(4)    A court examining the defense of qualified immunity must "employ a two step analysis." Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right." Baker v. Putnal, 75 F.3d 190, 198 (5th Cir. 1996) (construing Siegert v. Gilley, 500 U.S. 226 (1991)). If the answer to the first question is "yes," then "the issue becomes the objective legal reasonableness of the

defendants' conduct under the circumstances." <u>Baker v. Putnal</u>, 75 F.3d at 19 (citing <u>Quives v. Campbell</u>, 934 F.2d at 670-71). Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome it. <u>Whatley v. Philo</u>, 817 F.2d 19 (5th Cir. 1987).

(5)    "The burden of proof is on the plaintiff to overcome the defendant's defense of qualified immunity. To do so, the plaintiff must show that the defendants' conduct was not objectively reasonable and, further, that the defendants violated clearly established law." <u>Burns-Toole v. Byrne</u>, II F.3d 1270, 1274 (5th Cir. 1994) (footnotes omitted).

## 9.   CONTESTED PROPOSITIONS OF LAW

**A.    42 U.S.C. 1983.**

(1)    Plaintiff must show under 42 U.S.C. § 1983 that Defendant is a person who acted under color of state law and whose conduct deprived Plaintiff of a right under the United States Constitution. 42 U.S.C. § 1983.

(2)    42 U.S.C. § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979).

(3)    Mere negligence is not actionable under 42 U.S.C. § 1983. <u>Lewis v. Woods</u>, 888 F.2d 649 (1988).

(4)    A person is not necessarily liable under section 1983 if it violates its own rules, guidelines, or standards. <u>Murray v. Mississippi Department of Corrections</u>, 911 F.2d 1167 (5th Cir. 1990); <u>Jackson v. Cain</u>, 864 F.2d 1235, 1251 (5th Cir. 1989); <u>Hernandez v. Estelle</u>, 788 F.2d 1154 (5th Cir. 1986).

**B.    FOURTEENTH AMENDMENT AND EXCESSIVE FORCE.**

(5)    Under Valencia, the appropriate inquiry is "whether the measure taken inflicted unnecessary and wanton pain and suffering" and "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Id. at 1446 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)); see also <u>Brothers v. Klevenhagen</u>, 28 F.3d 452 (5th Cir. 1994) (stating same rule); <u>Rankin v. Klevenhagen</u>, 5 F.3d 103 (5th Cir. 1993) (stating same rule). "the amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." <u>Ikerd v. Blair</u>, 101 F.3d 430, 434 (5th Cir. 1996). To this end, when evaluating Hudson factors, the finder

of fact must keep in mind that prison officials "may have had to act quickly and decisively." Valencia, 981 F.2d at 1446. Accordingly, they are entitled to wide-ranging deference. Id.

(6)     An inmate's sore, bruised ear, lasting for three days, was de minimis, and thus he did not raise valid claim for excessive use of force nor did he have requisite "physical injury" to support claim for emotional or mental suffering. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

## C.     QUALIFIED IMMUNITY.

(7)     Under the first part of the test for qualified immunity, it is not enough to show that the right in question is established at a high "level of generality," as for example "the right to be free from unreasonable searches and seizures." Anderson v. Creighton, 483 U.S. 635, 639 (1987). Instead, "the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense." Id. at 640. Although the prior decisions need not have dealt with facts or "the very action in question," nevertheless, the "contours of the right" allegedly infringed must be "sufficiently clear that a reasonable official would understand that what he was doing violates that right." United States v. Lanier, 520 U.S. 259 (1997) (quoting Anderson v. Creighton, 483 U.S. at 640).

(8)     Under the second prong of qualified immunity analysis, if reasonable officials in an official's position "could have believed [his actions] to be lawful, in light of clearly established law and the information [he] possessed," then the official is entitled to qualified immunity. Anderson, 483 U.S. at 641.

(9)     The official's "subjective beliefs about [the challenged decisions] are irrelevant." Id.; see also Pfannstiel v. City of Marion, 918 F.2d at 1182 ("[I]t is therefore irrelevant whether the defendants in this case acted with intent to injure as long as their conduct was objectively reasonable.").

(10)    So long as public officials of reasonable competence could differ on the constitutionality of the actions at issue, the defendants are immune from suit and liability in their individual capacity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992), cert. denied, 506 U.S. 973 (1992).

(11)    It is not enough for the plaintiff to show that a "more reasonable interpretation of the events can be constructed." Hunter v. Bryant, 502 U.S. 224, 228 (1991). Instead, to overcome the defendants' qualified immunity, the plaintiff must establish "that no public official of reasonable competence could have believed that the actions of the individual defendants were lawful." Thompson v. City of

Arlington, 838 F. Supp. 1137, 1150 (N.D. Tex. 1993) (paraphrasing Malley v. Briggs, 475 U.S. at 343). 16.

(12) The determination of whether a reasonable official in the official's circumstances as viewed from the official's perspective could have believed his conduct to be legal is a question of law for this Court. Elder v. Holloway, 510 U.S. 510, 516 (1994); Hunter v. Bryant, 502 U.S. at 228; Mangieri v. Clifton, 29 F.3d at 105.

(13) Courts should be careful not to engage in second-guessing officers in situations in which they have to make split-second, on-the-scene decisions while confronted with a violent individual. "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." Gutierrez v. City of San Antonio, 139 F.3d 441, 445 (5th Cir.1998) (citing Anderson, 483 U.S. at 641). Consequently, "even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity." Id. at 447 (internal citations and punctuation omitted).

(14) Qualified immunity is available to individuals sued under 42 U.S.C. § 1983. Imbler v. Pachtman, 424 U.S. 409, 418 (1976).

(15) The doctrine of qualified immunity shields a government official performing discretionary functions from civil damages liability, provided his complained of actions meet the test of "objective legal reasonableness." Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982).

(16) The question of reasonableness is a question of law for the court. Elder v. Holloway, 510 U. S. 510, 516 (1994); Hunter v. Bryant, 502 U. S. at 22 8; Mangieri v. Clifton, 29 F.3d at 105.

(17) Even if a defendants' conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable measured with reference to the law as it existed at the time of the conduct in question and the information that the official possessed. Anderson v. Creighton, 483 U.S. 63 5 639 (1987); Mitchell v. Forsyth, 472 U.S. 511 (1985).

(18) The substantive law of the claim determines which fact issues are material. Id.

(19) Qualified immunity recognizes that, "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." Harlow v. Fitzgerald, 457 at 819 (citations omitted).

## 10. EXHIBITS

A.   **PLAINTIFFS' EXHIBITS:**  See attached Exhibit List attached hereto as **Exhibit "E"**.

B.   **DEFENDANTS' EXHIBITS:**  See attached Exhibit List attached hereto as **Exhibit "A"**.

## 11. WITNESSES

A.   **PLAINTIFFS' WITNESSES:**  See attached Witness List attached hereto as **Exhibit "F"**. **(NOTE:** With respect to several of the witnesses, Plaintiffs anticipate the videotapes of their depositions taken.  Specifically, Plaintiffs designate certain pages and lines which are contained on the attachment to **Exhibit "F"**.

B.   **DEFENDANTS' WITNESSES:**  See attached Witness List attached hereto as **Exhibit "B"**.

## 12. SETTLEMENT

This case will have to be tried.  Most recently, the parties and their counsel engaged in a

non-binding mediation conference on June 22, 1998 before Judge Gilberto Hinojosa.  However, a

settlement was not reached.

## 13. TRIAL

A.   **PROBABLE LENGTH OF TRIAL:**

Plaintiffs' case-in-chief will take approximately four (4) days for trial.  Plaintiffs' rebuttal may take approximately two (2) days.

B.   **LOGISTICAL PROBLEMS:**

Plaintiffs' and Defendants' experts must be notified of the trial date at least three days in advance.  There may be logistical problems in encountering the availability of some of the witnesses.

## 14. ATTACHMENTS

**A.    DEFENDANT'S ATTACHMENTS:**

      1.    **Attachment "A":**  Defendant's Exhibit List.

      2.    **Attachment "B":**  Defendant's Witness List.

      3.    **Attachment "C":**  Defendant's Proposed Jury Instructions and Issues.

      4.    **Attachment "D":**  Defendant's Proposed Voir Dire.

**B.    PLAINTIFFS' ATTACHMENTS:**

      5.    **Attachment "E":**  Plaintiffs' Exhibit List.

      6.    **Attachment "F":**  Plaintiffs' Witness List.

      7.    **Attachment "G":**  Plaintiffs' Proposed Jury Instructions, Definitions, and Interrogatories.

      8.    **Attachment "H":**  Plaintiffs' Proposed Questions on Voir Dire of Jury Panel.

**DATED** this _____ day of _____, 2001.

_____
**UNITED STATES DISTRICT JUDGE**

**APPROVED BY:**

**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
777 East Harrison Street
Brownsville, Texas 78520
TEL/ (956) 541-3820
FAX/ (956) 541-7694

BY: _____
   **VICTOR QUINTANILLA**
   State Bar No. 00786181
   Federal Id. No. 16073

   Attorney-in-Charge for Plaintiffs **MARIA F. GUAJARDO, INDIVIDUALLY**, and **as**
   **ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO**, and **as**
   **GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO**, and
   **CAROLINE GUAJARDO, MINOR CHILDREN**, and **ALEJANDRO GARCIA**


**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78521
Telephone No.: (956) 541-1846
Facsimile No.: (956) 541-1893


BY: _____
   **GEORGE C. KRAEHE**
   State Bar No. 00792631
   Southern District of Texas No. 19355

   Attorney-in-Charge for Defendant **EDUARDO TREVIÑO, INDIVIDUALLY**

24

# Exhibit "A"

## Defendant's Exhibit List

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

## DEFENDANT'S EXHIBIT LIST

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Eduardo Treviño, Defendant in the above styled and numbered matter, and

files this his Exhibit List, and for cause would show as follows:

**I.**

Defendant, Eduardo Treviño, asks the Court to admit the following exhibits in the trial of the

above-referenced matter:

Exhibit A    Photographs of the Brownsville City Jail taken after the incident made the
basis of this lawsuit.

1

1.    View from women's drunk tank.
2.    View from booking desk.
3.    View from hallway outside women's drunk tank.
4.    View from men's drunk tank.

**Exhibit B**    Diagrams of the Brownsville City Jail, the premises where the incident made the basis of this lawsuit occurred.

**Exhibit C**    Clothing worn by Officer Treviño at the time of the incident made the basis of this lawsuit. (can be inspected upon request.)

**Exhibit D**    Photographs of Eduardo Treviño.

1.    Side view of injury to the right knee sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

2.    Front view of injury to the right knee sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

3.    Front view of injury to the right knee sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

4.    View of injury to the right knee sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

5.    View of injury to the right knee sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

6.    View of paint scrapes on Edaurdo Treviño's belt and clothing sustained during the struggle with Jose Guajardo.

7.    View of paint scrapes on Edaurdo Treviño's belt and clothing sustained during the struggle with Jose Guajardo.

8.    View of paint scrapes on Edaurdo Treviño's clothing sustained during the struggle with Jose Guajardo.

9.    View of injury to the arm sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

10.    View of injury to the arm sustained by Edaurdo Treviño during the struggle with Jose Guajardo.

11.    View of paint scrapes on Edaurdo Treviño's clothing sustained during the struggle with Jose Guajardo.

12.     View of paint scrapes on Edaurdo Treviño's clothing sustained during the struggle with Jose Guajardo.

Exhibit E     Audiotape recording of Juan Jose Guajardo's telephone call to his mother from the Brownsville City Jail on April 8, 1997.

Exhibit F     EMS dispatch tapes.

Exhibit G     Dr. Margie W. Cornwell's pathology receipt and release records for Jose Guajardo dated April 14, 1997.

Exhibit H     The Custodial Death Report generated in connection with the incident made the basis of this lawsuit, including all attachments and exhibits thereto.

Exhibit H-1     Custodial Death Report form filed and submitted to the Texas Attorney General pursuant to Tex. Crim. Proc. Code § 49.18(b).

Exhibit H-2     Attachment I, Supplement to Custodial Death Report.

Exhibit H-3     Brownsville Police Department Vehicle Impoundment Report regarding impoundment of Guajardo's vehicle on April 8, 1997.

Exhibit H-4     Brownsville Police Department Property/Evidence Report for Case No. 97-027483 and all supplements and attachments thereto.

Exhibit H-5     Brownsville Police Department Inter-Departmental Communication (IDC) from Eduardo Trevino, Ana Bertha Hernandez, Officer Dalberto L. De Leon, Sgt. Perry Pepin, Lt. Edaurdo Garces, and Commander Randy Dunn to Chief Ben Reyna, regarding incident made the basis of this lawsuit.

Exhibit H-6     Brownsville Police Department Offense/Incident Narrative of Eduardo Trevino, sworn to on April 9, 1997.

Exhibit H-7     Affidavit of Eduardo Trevino, sworn to on April 12, 1997.

Exhibit H-8     Brownsville Police Department Offense/Incident Narrative of Ana Bertha Hernandez, sworn to on April 9, 1997.

Exhibit H-9     Brownsville Police Department Offense/Incident Narrative of Ana Bertha Hernandez, sworn to on April 15, 1997.

Exhibit H-10     Brownsville Police Department Offense/Incident Narrative of Cesar Barbosa, sworn to on April 8, 1997.

3

Exhibit H-11     Brownsville Police Department Offense/Incident Narrative of Juan Ortiz Salazar, sworn to on April 8, 1997.

Exhibit H-12     Brownsville Police Department Offense/Incident Narrative of Fernando Hinojosa Mendoza, sworn to on April 9, 1997.

Exhibit H-13     Brownsville Police Department Offense/Incident Narrative of Juan Loera, sworn to on April 9, 1997.

Exhibit H-14     Brownsville Police Department Offense/Incident Narrative of Santos Pedro Ochoa, sworn to on April 9, 1997.

Exhibit H-15     Brownsville Police Department Offense/Incident Narrative of Andres Posados, sworn to on April 9, 1997.

Exhibit H-16     Brownsville Police Department Offense/Incident Narrative of Orlando Benavides, sworn to on April 8, 1997.

Exhibit H-17     Brownsville Police Department Offense/Incident Narrative of Miguel Rios, sworn to on April 9, 1997.

Exhibit H-18     Brownsville Police Department Offense/Incident Narrative of Jaime Cortez, sworn to on April 9, 1997.

Exhibit H-19     Brownsville Police Department Offense/Incident Narrative of Guadalupe Garcia, sworn to on April 8, 1997.

Exhibit H-20     Brownsville Police Department Offense/Incident Narrative of Antonio Perez Espinosa, sworn to on April 8, 1997.

Exhibit H-21     Brownsville Police Department Offense/Incident Narrative of Julio Cesar Torres, sworn to on April 9, 1997.

Exhibit H-22     Brownsville Police Department Offense/Incident Narrative of Jose Perez, sworn to on April 9, 1997.

Exhibit H-23     Brownsville Police Department Offense/Incident Narrative of Cosme Berrones, sworn to on April 9, 1997.

Exhibit H-24     Brownsville Police Department Offense/Incident Narrative of Pete Lopez, sworn to on April 15, 1997.

Exhibit H-25     Brownsville Police Department Offense/Incident Narrative of Oscar Lara, sworn to on April 16, 1997.

Exhibit H-26     Brownsville Police Department Offense/Incident Narrative of Claudio Juventino Ortiz, III, sworn to on April 22, 1997.

Exhibit H-27     Brownsville Police Department Offense/Incident Narrative of Antonio Velasquez, sworn to on April 9, 1997.

Exhibit H-28     Brownsville Police Department Offense/Incident Narrative of Eduardo Martinez, sworn to on April 9, 1997.

Exhibit H-29     Brownsville Police Department Offense/Incident Narrative of Carlos Estrada, sworn to on April 9, 1997.

Exhibit H-30     Brownsville Police Department Offense/Incident Narrative of Marco Antonio Rodriguez, sworn to on April 9, 1997.

Exhibit H-31     Brownsville Police Department Offense/Incident Narrative of Manuel Olivarez, sworn to on April 9, 1997.

Exhibit H-32     Brownsville Police Department Offense/Incident Narrative of Jesse Garcia, sworn to on April 9, 1997.

Exhibit H-33     Affidavit of Sgt. James Paschall, sworn to on April 21, 1997.

Exhibit H-34     Emergency Medical Services treatment records for Jose Guajardo, April 8-10, 1997.

Exhibit H-35     Brownsville Medical Center treatment records for Jose Guajardo, April 8-9, 1997.

Exhibit H-36     Valley Regional Medical Center treatment records for Eduardo Trevino, April 8-9, 1997.

Exhibit H-37     TLETS printout, showing criminal history record information for Jose Gujardo.

Exhibit H-38     Newspaper articles regarding incident made the basis of this lawsuit

Exhibit H-39     Call to Omnicad Services on April 9,1997 at 21:34.

Exhibit H-40     Complaint against Juan Jose Guajardo by Gilbert Garcia, Jr., dated April 8, 1997.

Exhibit H-41     Note to Sgt. H. Etheridge and Sgt. A. Saavedra from Officer Dietrich, Case No. 27757 regarding the incident made the basis of this matter and attachments.

5

Exhibit H-42          Call to Omnicad Services on April 9,1997 at 17:43.

Exhibit H-43          Brownsville Police Department Jail Log for April 9, 1997

Exhibit H-44          Brownsville Police Department Jail Roster for April 9, 1997

Exhibit H-45          City of Brownsville/Loss Investigation Reports dated April 8, 1997.

Exhibit H-46          Note: with comments made by Plaintiff to the news media.

Exhibit H-47          Notes by Sgt. Paschall dated May 3, 1997.

Exhibit I             Photographs of Juan Jose Guajardo.

                      1.    View of scratches on Jose Guajardo ankles.
                      2.    View of scratches on Jose Guajardo ankles
                      3.    View of an old scar on Jose Guajardo's stomach.
                      4.    View of Jose Guajardo bruise on Jose Guajardo's right
                            shoulder.
                      5.    View of a scratch on Jose Guajardo's nose and forehead.
                      6.    View of a scratch on Jose Guajardo's nose and forehead.
                      7.    View of a scratch on Jose Guajardo's nose and forehead.
                      8.    View of a scratch on Jose Guajardo's nose and forehead.
                      9.    View of a scratch on Jose Guajardo's nose and forehead.

Exhibit J             Brownsville Police Department Custodial Death Report of Juan Jose
                      Guajardo, April 9, 1997.

# Exhibit "B"
## Defendant's Witness List

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

## DEFENDANT'S WITNESS LIST

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Eduardo Treviño, Defendant in the above styled and numbered matter, and

files this his Witness List, and for cause would show as follows:

### I.

Defendant, Eduardo Treviño, asks to call the following witnesses in the trial of the above-

referenced matter:

1

Chief Ben Reyna
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

As Brownsville police chief at the time of the incident made the basis of this lawsuit, he has personal knowledge of the policies and procedures of the Brownsville Police Department.

Officer Eduardo Treviño
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Jailer Treviño is the Defendant in this action and has personal knowledge of the incident made the basis of this lawsuit.

Officer Ana Hernandez
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Hernandez has personal knowledge of the incident made the basis of this lawsuit.

Sgt. Perry Peppin
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Sgt. Peppin arrived at the scene of the incident with Brownsville Emergency Medical Services ("EMS") and has personal knowledge relevant to Plaintiffs' claims and Defendants' defenses.

Sgt. James Paschall
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Sgt. Paschall is employed in the Brownsville Police Department's Internal Affairs Division and assisted in the investigation of the incident made the basis of this lawsuit.

Commander Charlie Cabler
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Commander Cabler is employed in the Brownsville Police Department and was the officer who advised Ms. Guajardo that decedent had been transported to Brownsville Medical Center on the night of the incident made the basis of this lawsuit.

Commander Randy Dunn
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Commander Dunn is employed in the Brownsville Police Department and assisted in the investigation of the incident made the basis of this lawsuit.

T. David Church, Jr., Special Agent
Federal Bureau of Investigation
1700 Paredes Line Road
Brownsville, Texas 78521
(956) 546-6922

Mr. Church assisted in the investigation made the basis of this lawsuit.

Officer Eduardo Zuniga
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Zuniga is the Brownsville police officer who arrested Juan Jose Guajardo on the night of the incident made the basis of this lawsuit.

Officer Juan Manuel Salinas
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Salinas is the Brownsville police officer who arrested Juan Jose Guajardo on the night of the incident made the basis of this lawsuit.

3

Officer Eduardo Garces
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Garces received a call from Plaintiff Maria Guajardo earlier on the night of the incident made the basis of this lawsuit regarding her son's arrest for public intoxication.

Terry Vinson
101 E. Resaca Drive
Los Fresnos, Texas 78566
(956) 233-3176

Mr. Vinson has personal knowledge about Eduardo Treviño's training.

Officer William Clough
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Clough assisted in the investigation of the incident made the basis of this lawsuit.

Detective David Garcia
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Detective Garcia assisted in the investigation of the incident made the basis of this lawsuit.

Detective Gilbert Garcia, Jr.
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Detective Garcia assisted in the investigation of the incident made the basis of this lawsuit.

Officer R. J. Pineda
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Pineda took the statements of witnesses Orlando Benavides, Guadalupe Garcia, Miguel Rios, Jaime Cortez, Andres Pasado, Antonio Velasquez, and Eduardo Treviño.

Officer Raul Rodriguez
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Rodriguez assisted in the investigation made the basis of this lawsuit, *e.g.*, by taking paint chip samples from Defendant Treviño's clothing.

Sgt. Sandra Galvan
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Sgt. Galvan assisted in the investigation made the basis of this lawsuit.

Pete Lopez
Security Officer
Federal Courthouse
600 E. Harrison
Brownsville, Texas 78520
Phone (956) 548-2500
Phone (956) 504-2614

Mr. Lopez was assaulted by Plaintiff on the evening of the incident made the basis of this lawsuit.

Oscar Ponce
Assistant District Attorney
Cameron County
874 E. Harrison Street
Brownsville, Texas  78520
(956) 544-0849

Mr. Ponce assisted in the investigation of the incident made the incident of this lawsuit.

Richard Tejeada
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
Phone (956) 548-7000

Officer Tejeada was working with Pete Lopez the night of the incident in question.

Brian Castro
BROWNSVILLE POLICE DEPARTMENT
600 E. Jackson
Brownsville, Texas 78520
(956) 548-7000

Mr. Castro a city jailer was working at the time and may have knowledge of the incident made the basis of this lawsuit.

Cesar Lerma Barbosa
1244 Norma Lane
Brownsville, Texas 78520
(956) 831-5880

Mr. Barbosa was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Fernando Hinojosa Mendoza
Colonia 19 Galeana #163
Matamoros, Tamps. Mexico
(no telephone number)

Mr. Mendoza was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jaime Gutierrez Cortez
Colonia Popular, Roberto Guerra
Callejon 11 #116
Matamoros, Tamps. Mexico
(no telephone number)

Mr. Cortez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Claudio Juventino Ortiz, III
34 Highland Drive
Brownsville, Texas 78520
(956) 541-2412

6

Mr. Ortiz was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Antonio Velasquez
825 Minnesota Avenue
Brownsville, Texas 78520
(no telephone number)

Mr. Velasquez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Antonio Perez Espinoza
Colonia Obrera #20
Calle Herrera
Matamoros, Tamps. Mexico
(no telephone number)

Mr. Espinoza was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Julio Cesar Torres
__ Coffeeport Road
Brownsville, Texas 78520
(no telephone number)

Mr. Torres was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Alejandro Medina
822 Adams Street
Brownsville, Texas 78520
(956) 504-1484
(no telephone number)

Mr. Medina was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Eduardo Martinez
352 Prestine
Brownsville, Texas 78520
(956) 541-9321

Mr. Martinez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Carlos Estrada
Rayon Y 10 (no #)
Matamoros, Tamps. Mexico
(no telephone number)

Mr. Estrada was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Marco Antonio Rodriguez
7 Elda Street
Brownsville, Texas 78520
(no telephone number)

Mr. Rodriguez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jesus Manuel Olivarez
728 West Washington
Brownsville, Texas 78520
(no telephone number)

Mr. Olivarez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jesse Garcia
1644 Isla De Palmas
Brownsville, Texas 78520
(956) 504-1624

Mr. Garcia was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jose Perez
3695 E. 26th
Brownsville, Texas 78520
(no telephone number)

Mr. Perez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Juan Ortiz Salazar
Adams Street (Apts at 6th & Adams) #9
Brownsville, Texas 78520
(956) 542-8704

Mr. Salazar was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Juan Loera
7918 Southmost Road
Brownsville, Texas 78520
(no telephone number)

Mr. Loera was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Miguel Rios
10 y Rayon
Matamoros, Tamps. Mexico
(no telephone number)

Mr. Rios was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Cosme Berrones
5712 Southmost Road
Brownsville, Texas 78520
(956) 542-6539

Mr. Berrones was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Andres Posados
402 Madison Street
Harlingen, Texas 78550
(no telephone number)

Mr. Posados was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Santos Pedro Ochoa
34 Zeina
Brownsville, Texas 78520
(no telephone number)

Mr. Ochoa was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jesse Garcia
1644 Isla De Palmas
Brownsville, Texas 78520
(956) 504-1624

Mr. Garcia was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Guadalupe Garcia
350 E. St. Charles, #116
Brownsville, Texas 78520
(956) 541-6185

Mr. Garcia was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Faustino Guzman Gonzalez
Address unknown at this time

Mr. Gonzalez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Martha Basurto Draper
Address unknown at this time

Ms. Draper was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Juan Jesus Escamilla
Address unknown at this time

Mr. Escamilla was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Julio Cesar Vazquez
Address unknown at this time

Mr. Vazquez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Pedro Guevara
Address unknown at this time

Mr. Guevara was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Roberto Juarez
Address unknown at this time

Mr. Juarez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Miguel Angel Barron
Address unknown at this time

Mr. Barron was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jose Maria Moreno
Address unknown at this time

Mr. Moreno was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Roberto S. Medina
Address unknown at this time

Mr. Medina was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Juan Garza
Address unknown at this time

Mr. Garza was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Juan Angel Gonzalez
Address unknown at this time

Mr. Gonzalez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Reynaldo Gonzalez, Jr.
Address unknown at this time

Mr. Gonzalez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Alejandro Anival Mendez
Address unknown at this time

Mr. Mendez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Antonio Perez
Address unknown at this time

Mr. Perez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Marco Antonio Rodriguez
Address unknown at this time

11

Mr. Rodriguez was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Jorge Treviño
Address unknown at this time

Mr. Treviño was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit.

Sam Ortega
Brownsville EMS
EMT Technician
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Ortega provided Juan Jose Guajardo with emergency medical treatment at the time of the incident made the basis of this lawsuit.

Oscar Lara
Brownsville EMS
EMT Technician
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Lara provided Juan Jose Guajardo with emergency medical treatment at the time of the incident made the basis of this lawsuit.

Jaime Ibarra
Brownsville EMS
EMT Technician
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Ibarra provided Juan Jose Guajardo with emergency medical treatment at the time of the incident made the basis of this lawsuit.

Reynaldo Gil
Brownsville EMS
EMT Technician
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

CutePDF - www.tesira.com

Mr. Gil provided Juan Jose Guajardo with emergency medical treatment at the time of the incident made the basis of this lawsuit.

Margie Cornwell, M.D.
Pathologist
P.O. Drawer 2588
Harlingen, Texas 78551
(956) 389-1100

Dr. Cornwell performed Juan Jose Guajardo's autopsy.

DeWitt S. Davenport, M.D.
Valley Baptist Medical Center
P.O. Drawer 2588
Harlingen, Texas 78550
(956) 389-1100

Dr. Davenport assisted Dr. Cornwell in performing Juan Jose Guajardo's autopsy.

Marvis Walton
Valley Baptist Medical Center
P.O. Drawer 2588
Harlingen, Texas 78550
(956) 389-1100

Dr. Walton assisted Dr. Cornwell in performing Juan Jose Guajardo's autopsy.

Francis Gumbel, M.D.
Brownsville Medical Center
1400 W. Jefferson
Brownsville, Texas 78520
Phone (956) 544-1400

Dr. Gumbel treated Juan Jose Guajardo for his injuries at Brownsville Medical Center at the time of the incident made the basis of this lawsuit.

Jaime Silva, M.D.
Brownsville Medical Center
1400 W. Jefferson
Brownsville, Texas 78520
Phone (956) 544-1400

Dr. Silva treated Juan Jose Guajardo for his injuries at Brownsville Medical Center at the time of the incident made the basis of this lawsuit.

Victor Gonzalez, M.D.
Brownsville Medical Center
1400 W. Jefferson
Brownsville, Texas 78520
Phone (956) 544-1400

Dr. Gonzalez treated Juan Jose Guajardo for his injuries at Brownsville Medical Center at the time of the incident made the basis of this lawsuit.

Roberto Lozano, M.D.
Brownsville Medical Center
1400 W. Jefferson
Brownsville, Texas 78520
Phone (956) 544-1400

Dr. Lozano treated Juan Jose Guajardo for his injuries at Brownsville Medical Center at the time of the incident made the basis of this lawsuit.

Dr. Nicholas Metcalf
Brownsville Medical Center
1400 W. Jefferson
Brownsville, Texas 78520
(956) 544-1400

Dr. Metcalf treated Juan Jose Guajardo for his injuries at Brownsville Medical Center at the time of the incident made the basis of this lawsuit.

Dr. Vincent DiMaio
7337 Louis Pasteur
San Antonio, TX 78229
Phone (210) 615-2155

Dr. DiMaio will offer forensic pathology expert testimony on Juan Jose Guajardo, including expert opinion regarding the cause of his death; the time of his death; factors that precipitated his death; the level of controlled substances in his system at the time of and prior to his death; the effects of controlled substances and other substances in his system at the time of and prior to his death; Mr. Guajardo's medical and behavioral history; medical protocols; police policies and procedures; and general medical knowledge, policies, and procedures. Dr. DiMaio can also be expected to offer testimony consistent with his expert's report.  Dr. DiMaio is also expected to testify that there was no unreasonable delay in providing Juan Jose Guajardo with medical treatment as previously provided.

# Exhibit "C"

## Defendant's Proposed Jury Instructions and Issues

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

---

## DEFENDANT'S JURY INSTRUCTIONS

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes Eduardo Treviño, Defendant herein, and requests that the Court submit to

the jury the instructions attached hereto.


**GENERAL INSTRUCTIONS:**

**Members of the Jury:**

Now that you have heard the evidence, my duty is to give you the instructions of the

Court on the law you should apply to this case. Your duty as jurors is to follow the law as stated

1

in these instructions and to apply these rules of law to the facts you find from the evidence in the case. You are not to single out on instruction alone as stating the law; rather, you must consider the instructions as a whole.

Regardless of any opinion you may have as to what the law should be, you would violate your sworn duty if you based a verdict upon any view of the law other than that given in the instructions stated by the Court. Similarly, you would violate your sworn duty as judges of the facts if you based your verdict upon anything but the evidence in this case. You, the Jury, are the sole and exclusive judges of the facts.

You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar situations in life.

You must consider only evidence properly admitted in the case. Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; any deposition testimony of witnesses that was admitted into evidence; all exhibits received in evidence, regardless of who may have produced them; and all facts that have been admitted or stipulated. You must entirely disregard any evidence that a party objected to if I sustained that objection and any evidence that was ordered stricken by the Court.

Statements and arguments of counsel are not evidence; rather they are intended only to

2

assist you in understanding the evidence and the contentions of the parties.  During the course of the trial, it often becomes the duty of counsel to make objections and for the Court to rule on them in accordance with the law.  You should not consider or be influenced by the fact that such objections have been made, whether they are sustained or overruled.

Similarly, you should not allow your attitude toward either party or the evidence to be affected by how you regard the general conduct or attitude of the attorneys.  Each attorney has a solemn duty to defend the client vigorously and with dedication and thus may not please everyone all the time.  Your decision on the facts of this case should therefore not be affected by your opinion of the attorneys.

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

You, as jurors, are the sole judges of the credibility of the witnesses and weight their testimony deserves.  You should carefully scrutinize all the testimony given and, in weighing the testimony of each witness, consider the relationship between the witness and the parties in the case, his or her interest in the outcome of the case, the witness's manner of testifying, candor, fairness, and intelligence, and the extent to which the witness's testimony has been confirmed or contradicted, if at all, by other credible evidence.

You will rely upon your own good judgment, your own common sense, and the experience you have gained as you have gone about your everyday affairs in weighing the

3

evidence and determining the weight to be given to it. You are permitted to accept as true and worthy of belief everything that a particular witness may have said, or you are permitted to reject everything that a particular witness may have said. Of course, you may also accept as true part of what a witness tells you and reject other portions of that witness's testimony.

**WITNESSES**

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness's present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

**EVIDENCE**

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness's testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial

4

evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PREPONDERANCE OF THE EVIDENCE

A "preponderance of the evidence" means the greater weight and degree of the credible evidence admitted in this trial. It does not necessarily mean the greater volume of evidence or the greater number of witnesses. To establish or prove something by a preponderance of the evidence means to prove that something is more likely true than not. In other words, a preponderance of the evidence in this case means such evidence that, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not.

## PROXIMATE CAUSE

A "proximate cause" is an event which plays a substantial part in bringing about or causing the injuries or damages complained of for which the injury or damage complained of was a reasonably foreseeable consequence.

## SPECIFIC INSTRUCTIONS

In this case the Plaintiffs, Maria F. Guajardo, individually, on behalf of the Estate of Juan Jose Guajardo and as next friend of Tomas Guajardo, III, Cynthia Guajardo, and Caroline Guajardo, minor children, claim that on or about April 8, 1997, Defendant Eduardo Treviño, a detention officer employed by the Brownsville Police Department, used excessive force against Juan Jose Guajardo while acting under color of state law, thereby depriving Plaintiffs of rights

5

secured to him, both the by the Constitution of the United States and by Act of Congress providing for equal rights of all persons within the jurisdiction of the United States.

You are instructed that 42 U.S.C. § 1983 provides that any citizen may seek redress in this Court by way of damages against any person who, under color of any State law or custom, subjects such citizen to the deprivation of any rights, privileges, or immunity secured or protected by the Constitution or laws of the United States.

Plaintiffs' right to prosecute this suit raising allegations against these particular Defendants is secured by 42 U.S.C. § 1983, one of the Civil Rights Acts enacted by Congress, which reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to a party injured in an action in law, suit in equity, or other proper proceedings for redress.

Plaintiffs contend that Juan Jose Guajardo's rights under the Fourteenth Amendment were violated. In order to prove an excessive force violation under the Fourteenth Amendment, the plaintiff must show that the defendant unnecessarily, wantonly, and maliciously inflicted pain on him. Whether a use of force against a detainee is unnecessary, wanton, or malicious depends on whether force was applied in a good faith effort to maintain or restore discipline, or whether it was done maliciously or sadistically for the very purpose of causing harm. In order to prove a violation under the Fourteenth Amendment in this case, therefore, Plaintiffs must prove each of the following two elements by a preponderance of the evidence:

6

First:           That Officer Treviño used force against plaintiff maliciously and sadistically for the very purpose of causing Juan Jose Guajardo harm, and

Second:      That Juan Jose Guajardo suffered some non-de minimus harm as a result of Officer Guajardo's use of force.

If Plaintiffs fail to prove either of these elements, you must find for the Defendant, Officer Treviño. The first element is to be evaluated by a subjective analysis of Officer Treviño and his state of mind at the time. To act "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that show an evil intent. It is not enough to show negligence or even gross negligence. In deciding whether this element has been proved, I remind you that you must given jail officials wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security in the prison.

Some of the things you may want to consider in determining whether Officer Treviño unnecessarily and wantonly inflicted pain on Juan Jose Guajardo include (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The nature of reasonableness must embody allowance for the fact that officers are often forced to make split-second decisions–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.

7

*Fifth Circuit Pattern Jury Charge.*

*Hudson v. McMillian*, 503 U.S.1 (1992).

*Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir.), *cert. denied*, 509 U.S. 905 (1993).

CibPDF – www.fastio.com

# QUALIFIED IMMUNITY

If you find that Plaintiffs have proven their claims, you must then consider Defendant's defense of qualified immunity. If the officer establishes entitlement to this defense, then he is not liable.

For a public employee to be able to properly do the work of the public, that employee must be free of the constant fear of threatened lawsuits for every decision he makes. A public employee must understand that actions he takes in good faith to perform his job assignment will not be punished if such actions were reasonable under the circumstances. Without such reassurances, public employees would be unable to make those difficult or controversial decisions which are necessary to accomplish the public's business. Qualified immunity shields a public employee from liability for damages unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." As a detention officer, the Defendant is a public employee.

In order to prove a claim of excessive force under the Fourteenth Amendment, Plaintiffs must prove that Officer Treviño used force against Juan Jose Guajardo maliciously and sadistically, for the very purpose of causing harm and that Juan Jose Guajardo suffered some harm as a result. This is the law Defendant is presumed to know as a public employee, and the standard by which to determine his entitlement to qualified immunity. If Plaintiffs fail to establish any one of the elements for excessive force, then the Defendant acted in good faith and is entitled to the defense of qualified immunity.

A public employee is entitled to a jury verdict that he acted in good faith whenever the employee, at the time of the incident, reasonably believed that his actions were a proper exercise

9

ANTM

of his discretion and within the course of his employment.  The Plaintiffs have the burden of proving that Defendant did not act in good faith.

Qualified immunity allows for mistaken judgments.  Even if in hindsight Defendant's actions violated Plaintiffs' constitutional rights, nevertheless Defendant is entitled to qualified immunity, if, in viewing the circumstances from the Defendant's perspective at the time, the conduct was objectively reasonable.  If reasonable public officials could differ on the lawfulness of the Defendant's actions, the Defendant is entitled to qualified immunity.

Detention officers are presumed to know about the basic, unquestioned constitutional rights of citizens.  Thus Plaintiffs need not prove that Defendant acted with the specific knowledge of Plaintiffs' particular constitutional right that was allegedly violated.

If, after considering the scope of the discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the circumstances of the case as they would have reasonably appeared at the time, you find from a preponderance of the evidence that Defendant had a reasonable and good faith belief that his actions would not violate Plaintiffs' constitutional rights, then you cannot find Defendant liable even if Plaintiffs' rights were in fact violated as a result of his good faith actions.

*Saldaña v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982).

*Malley v. Briggs*, 475 U.S. 335 (1986).

*King v. Chide*, 974 F.2d 653 (5th Cir. 1992).

*Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990).

*Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993).

*Mouille v. City of Live Oak, Texas*, 977 F.2d 924 (5th Cir. 1992).

10

*Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997).

.

11

# BURDEN OF PROOF

Plaintiffs must prove by a preponderance of the evidence that the act or failure to act by Defendant was a cause in fact of the damage Plaintiffs suffered. An act or a failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the damage Plaintiffs suffered. An act or omission is a proximate cause of the Plaintiffs' injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

12

# DAMAGES

I will now instruct you on the law governing damages. However, the fact that I instruct you on the issue of damages should not be interpreted in any way as an indication that I believe the Plaintiffs should, or should not, prevail in this case.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiffs, then you must determine an amount that is fair compensation for all of the Plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiffs whole--that is, to compensate the Plaintiffs for the damage that the Plaintiffs have suffered, if any, from the injuries they sustained as a result of the Defendant's acts or omissions.

You may award compensatory damages only for injuries that the Plaintiffs prove were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiffs' damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiffs have actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

13

You are specifically instructed that a person's constitutional rights have no intrinsic value. Thus, a plaintiff must prove more than that his constitutional rights were violated to prove that he or she suffered damages.

## CONCLUSION

You will now return to decide the case. In order to prevail, the Plaintiffs must sustain their burden of proof as I have explained to you with respect to each element of their complaint. If you find that the Plaintiffs have succeeded, you should return a verdict in his favor on that claim. If you find that the Plaintiffs failed to sustain their burden on any element of their claim or if you find that Defendant is entitled to qualified immunity, you should return a verdict against them.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself, but you should do so only after a consideration of the case for himself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh you respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No

14

juror should surrender his conscientious beliefs solely for the purpose of returning a unanimous

verdict.

CVisPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

## DEFENDANT'S PROPOSED JURY ISSUES

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Now Comes, Eduardo Treviño, Defendant herein, and requests that the Court submit to the jury the issues attached hereto.

- 1 -

**ISSUE NO. 2:**

Do you find from a preponderance of the evidence that Juan Jose Guajardo suffered some non-de minimus harm as a result of Officer Eduardo Treviño's use of excessive force?

Answer "Yes" or "No":

Yes_____

No_____

If you answer "Yes" to this issue, please proceed to Issue No. 3.  If you answer "No," please sign the verdict form.

**ISSUE NO. 3**

Do you find from a preponderance of the evidence that Officer Eduardo Treviño had a reasonable and good faith belief that in restraining Juan Jose Guajardo on April 8, 1997, he was not violating Juan Jose Guajardo's constitutional rights?

Answer "Yes" or "No":

Yes_____

No_____

If you answer "Yes" to this issue, please sign the verdict form.  If you answer "No," please proceed to Issue No. 4.

- 4 -

**Issue No. 4:**

What amount of money paid now in cash, if any, do you find from a preponderance of the evidence would fairly compensate Plaintiffs for their injuries?

$ _____


SO SAY WE ALL.

DATE: _____

FOREPERSON: _____

CibiPDF - www.fastio.com

# Exhibit "D"
## Defendant's Proposed Voir Dire

CibPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

## DEFENDANT'S PROPOSED VOIR DIRE

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COMES NOW Eduardo Treviño, Defendant herein, and submits this her Proposed Voir

Dire and requests that the following questions be asked of the jury panel in the same or

substantially similar wording:

1.      Have you or any members of your family or close friends ever had any dealings

with the City of Brownsville, or have you or any relatives or close friends ever worked for the

City of Brownsville?

2.      Have you or members of your family or close friends ever sued the City of

CUMPDF - www.fenixa.com

Brownsville or any of its employees or any law enforcement agency or law enforcement officer? (If yes, give details).

3.      Have you, your family members or close friends ever been a plaintiff (a person bringing a lawsuit) in a lawsuit for any reason? (If yes, give details).

4.      (Identify Plaintiff's witnesses) Do you know, or have you, your family members, or close friends, ever had any dealings whatsoever with any of these individuals?

5.      (Identify Defendant's witnesses, including Defendant) Do any of you know or have you had any dealing whatsoever with any of these named individuals? (If yes, give details).

6.      Some of the witnesses may be police officers or detention officers. Would any of you be more or less inclined to believe the testimony of such individuals simply because of his/her position?

7.      Are any of you, your family members, or close friends, lawyers or law students, or have any of ever studied law in the past? (If yes, explain type of practice or law study).

8.      Have any of you ever sat on a jury in a civil trial? (If yes, approach the bench and describe).

9.      Do any of you feel that just because a person files a lawsuit in federal court claiming he has sustained injury, that someone else must be at fault?

10.     Has anyone here ever been arrested or incarcerated. If yes, please describe.

11.     Has anyone formed or expressed an opinion already that a plaintiff generally or these Plaintiffs should recover from the Defendant?

12.     Do any members of the panel belong to any organization which has as one of its goals the protection of civil rights? Would this affiliation make you more or less likely to favor

- 2 -

the Plaintiffs if they say their civil rights were violated?

13.    Have any of you, your family members or close personal friends ever filed a claim or complaint or are planning to file a claim or complaint concerning discrimination or violation of your civil rights?

14.    Have any of you, your family members, or close friends ever had a complaint against the City of Brownsville or the Brownsville Police Department or any of their officials or employees or any other law enforcement agency or law enforcement officers?

15.    Have any of you, your family members, or close friends ever been employed by the government?  Would the fact that the Defendant is employed by the government make you more or less likely to discredit their testimony or award money to the Plaintiffs just because the Defendant was employed by the government?

16.    Does anyone harbor a bad opinion about the City of Brownsville or the Brownsville Police Department.  Have any of you, your family members, or close friends been involved in any lawsuit in any capacity in which the law firm of Willette & Guerra represented any side?  Have any of you, your family members, or close friends had any dealings at all with the law firm of Willette & Guerra?  Is there anyone here who would tend to favor the Plaintiffs or the Defendant simply because the law firm of Willette & Guerra represents the Defendant?

17.    Have any of you, or your spouse, family members, or close friends ever been arrested for reasons that you believed were not justified?

18.    Have you, or do you know of anyone, who has had a negative experience with a law enforcement officer?  Would that experience influence your ability to evaluate the issues in this case?

.

- 3 -

19.     Have you, or do you know anyone, who has been subject to a use of force by a peace officer.

20.     Do you believe that a detention officer should be able to defend himself if he is assaulted?

# Exhibit "E"

# Plaintiffs' Exhibit List

PDF – www.fastio.com

# UNITED STATES DISTRICT COURT ☆ SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Maria F. Guajardo, Individually, on Behalf of the Estate of Juan Jose Guajardo and As Next Friend of Tomas Guajardo, III, Cynthia Guajardo, and Caroline Guajardo, Minor Children and Alejandro Garcia<br><br>Vs.<br><br>Eduardo Treviño, Individually | CIVIL ACTION NO. B-97-215 |
| | **Exhibit List** |
| Judge Hilda G. Tagle | Case Manager: Stella Cavasos<br>Court Reporter: Breck Record |
| List of<br>**PLAINTIFFS** | Proceeding          Date |

| No. | Description | Adm. | Exd. |
|---|---|---|---|
| 1 | Medical Records from Brownsville Medical Center (04/08/97 & 04/09/97) (Including Emergency Room & Admitting Records) | | |
| 2 | City of Brownsville EMS Ambulance Activity Report (04/08/97) | | |
| 3 | Pathology Report from Margie W. Cornwell, M.D. (04/14/97) | | |
| 4 | Pathology Report from Margie W. Cornwell, M.D. (05/27/97) | | |
| 5 | Certificate of Death (06/04/97) | | |
| 6 | City of Brownsville EMS Charge Slip (06/04/97) | | |
| 7 | Diagram of Brownsville Municipal Jail | | |
| 8 | Jail Roster from Brownsville Police Department (04/09/97) | | |
| 9 | Photographs (Juan Jose Guajardo) | | |
| 10 | Curriculum Vitae of Luis Alberto Campos, M.D. | | |
| 11 | Written Report from Luis A. Campos, M.D. (09/08/97) | | |
| 12 | Photographs (Eduardo Treviño) | | |
| 13 | Photographs (Caller I.D.) | | |
| 14 | Personnel File of Eduardo Treviño (City of Brownsville) | | |
| 15 | Offense/Incident (04/08/97) (Call No. 97-027392) | | |
| 16 | Brownsville Police Department Booking Card (04/08/97) | | |

| No. | Description | Adm. | Exd. |
|---|---|---|---|
| 17 | Brownsville Police Department Property Receipt Acknowledgment (04/08/97) | | |
| 18 | Police Supplement Report (Case No. 97-027392) | | |
| 19 | Offense/Incident Narrative (04/15/97) (Lt. Eduardo Garces) | | |
| 20 | Brownsville Police Department Offense/Incident Narrative of Hector Eguia Garcia (04/08/97) | | |
| 21 | Cemetery Interment Rights, Merchandise and Services Purchase/Security Agreement (Rose Lawn Memorial Gardens) (04/11/97) | | |
| 22 | Statement of Funeral Goods and Services Selected (Treviño Funeral Home) (04/11/97) | | |
| 23 | Brownsville EMS Records (04/08/97) | | |
| 24 | Medical Bills from Dr. Nicholas Metcalf (04/08/97) | | |
| 25 | Medical Bills from Brownsville Medical Center (04/08/97 & 04/09/97) | | |
| 26 | Written Report from Billy R. Tidwell (03/25/99) | | |
| 27 | Business Records from Treviño Funeral Home | | |
| 28 | Curriculum Vitae of Billy Ray Tidwell | | |
| 29 | Written Report from Thadeus J. Schulz, M.D. (11/07/97) | | |
| 30 | Curriculum Vitae of Thadeus J. Schulz, M.D. | | |
| 31 | Records from Brownsville Police Department (obtained on 05/06/97) | | |
| 32 | Deposition on Written Questions of Juan Luis Zamora, M.D. (06/02/99) | | |
| 33 | Written Report of Juan Luis Zamora, M.D. (08/28/97) | | |
| 34 | Curriculum Vitae of Juan Luis Zamora, M.D. | | |
| 35 | Radio Dispatch EMS form (04/08/97) | | |
| 36 | Brownsville Police Department Offense/Incident Narrative of Eduardo Treviño (April 9, 1997) | | |
| 37 | Affidavit of Eduardo Treviño (April 12, 1997) | | |
| 38 | Brownsville Police Department Offense/Incident Narrative of Cesar Barbosa (April 8, 1997) | | |
| 39 | Brownsville Police Department Offense/Incident Narrative of Juan Ortiz Salazar (April 8, 1997) | | |
| 40 | Brownsville Police Department Offense/Incident Narrative of Juan Loera (April 9, 1997) | | |

| No. | Description | Adm. | Exd. |
|-----|-------------|------|------|
| 41 | Brownsville Police Department Offense/Incident Narrative of Santos Pedro Ochoa (April 9, 1997) | | |
| 42 | Brownsville Police Department Offense/Incident Narrative of Andres Posados (April 9, 1997) | | |
| 43 | Brownsville Police Department Offense/Incident Narrative of Orlando Benavides (April 8, 1997) | | |
| 44 | Brownsville Police Department Offense/Incident Narrative of Jaime Cortez (April 8, 1997) | | |
| 45 | Brownsville Police Department Offense/Incident Narrative of Oscar Lara, (April 16, 1997) | | |
| 46 | Brownsville Police Department Offense/Incident Narrative of Claudio Juventino Ortiz, III (April 22, 1997) | | |
| 47 | Brownsville Police Department Offense/Incident Narrative of Antonio Velasquez (April 9, 1997) | | |
| 48 | Brownsville Police Department Offense/Incident Narrative of Eduardo Martinez (April 9, 1997) | | |
| 49 | Brownsville Police Department Offense/Incident Narrative of Carlos Estrada (April 9, 1997) | | |
| 50 | Brownsville Police Department Offense/Incident Narrative of Marco Antonio Rodriguez (April 9, 1997) | | |
| 51 | Photographs (Brownsville City Jail) | | |
| 52 | Brownsville Police Department Inter-Departmental Communication (from Eduardo Treviño to Chief Ben Reyna) (04/08/97) | | |

# Exhibit "F"

# Plaintiffs' Witness List

PDF - www.fastio.com

| UNITED STATES DISTRICT COURT ☆ SOUTHERN DISTRICT OF TEXAS |
|---|

| Maria F. Guajardo, et. al.<br>*Versus* - - - - - - - -<br>Eduardo Treviño, Individually | CASE NO.   97-215 |
|---|---|
| | **Witness List** |
| Judge Hilda G. Tagle | Case Manager: Stella Cavasos<br>Court Reporter: Breck Record |
| List of<br>**PLAINTIFFS** | Proceeding            Date |

Maria Flores Guajardo,
2125 Southmost
Brownsville, Texas 78520
(956) 542-2875
        or
5311 Vae Drive
Baytown, Texas 77521
(281) 424-7310

Ms. Guajardo is the surviving mother of Juan Jose Guajardo. She may testify as to defendants' negligent conduct resulting in her son suffering great physical and mental pain and anguish. She may further testify to him being battered and placed in a choke hold which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment. Additionally, she may testify to the great shock to her son's entire body and nervous system. She may further testify to the conscious pain and suffering her son experienced before his death. Furthermore, she may testify to her suffering from the death of her son, Juan Jose Guajardo, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, and funeral and burial expenses. She may further testify to how she has suffered severe mental depression and anguish, grief and sorrow as a result of the death of her son, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the future. She may also testify to any additional knowledge she may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño and her son. Additionally, she has knowledge of the burial and funeral expenses she incurred as a result of her son's death.

Eva Guajardo Valadez
3888 Boca Chica Blvd.
Brownsville, Texas 78521
(956) 548-0500

Ms. Valdez is one of Juan Jose Guajardo's surviving sisters.  She may testify to defendants negligent conduct resulting in decedent, Juan Jose Guajardo suffering great physical and mental pain and anguish.  She may further testify to decedent being battered and placed in a choke hold which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment.  Additionally, she may testify to the great shock to decedent's entire body and nervous system.  She may further testify to the conscious pain and suffering decedent experienced before his death.  Furthermore, she may testify to her suffering from the death of her brother, Juan Jose Guajardo, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, and funeral and burial expenses.  She may further testify to how she has suffered severe mental depression and anguish, grief and sorrow as a result of the death of her brother, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the future.  She may also further testify to any additional knowledge she may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.  Additionally, Ms. Valadez may testify as to her knowledge of the burial and funeral expenses the Guajardo family incurred as a result of her brother's death.

Noemi Cottrel
709 Dean Court
Westchester, PA 19382
(610) 431-7871

Ms. Cottrel is one of Juan Jose Guajardo's surviving sisters.  She may testify to defendants negligent conduct resulting in decedent, Juan Jose Guajardo suffering great physical and mental pain and anguish.  She may further testify to decedent being battered and placed in a choke hold which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment.  Additionally, she may testify to the great shock to decedent's entire body and nervous system.  She may further testify to the conscious pain and suffering decedent experienced before his death.  Furthermore, she may testify to her suffering from the death of her brother, Juan Jose Guajardo, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, and funeral and burial expenses. She may further testify to how she has suffered severe mental depression and anguish, grief and sorrow as a result of the death of her brother, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the future.  In conclusion, she may testify to any additional knowledge she may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

2

Ruth Schultz
2125 Southmost
Brownsville, Texas 78520
(956) 542-2875

Ms. Schultz is one of Juan Jose Guajardo's surviving sisters. She may testify to
defendants negligent conduct resulting in decedent, Juan Jose Guajardo suffering great
physical and mental pain and anguish. She may further testify to decedent being battered
and placed in a choke hold which resulted in a heart attack, being brought back to life, and
taken to the hospital for treatment. Additionally, she may testify to the great shock to
decedent's entire body and nervous system. She may further testify to the conscious pain
and suffering decedent experienced before his death. Furthermore, she may testify to her
suffering from the death of her brother, Juan Jose Guajardo, including loss of care,
maintenance, support, services, advice, counsel, society, companionship, mental anguish,
the emotional and mental trauma resulting from the untimely death of a loved one, and
funeral and burial expenses. She may further testify to how she has suffered severe mental
depression and anguish, grief and sorrow as a result of the death of her brother, Juan Jose
Guajardo, and is likely to continue to suffer for a long time in the future. She may also
testify to any additional knowledge she may have of the incident that occurred on April 8,
1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail
Matron, Ana Hernandez. Additionally, Ms. Schultz may testify as to her knowledge of the
burial and funeral expenses the Guajardo family incurred as a result of her brother's death.

Hilda Hinojosa
2124 Coolidge, B
Brownsville, Texas 78521
(956) 504-5764

Ms. Hinojosa is one Juan Jose Guajardo's surviving sisters. She may testify to defendants
negligent conduct resulting in decedent, Juan Jose Guajardo suffering great physical and
mental pain and anguish. She may further testify to decedent being battered and placed in
a choke hold which resulted in a heart attack, being brought back to life, and taken to the
hospital for treatment. Additionally, she may testify to the great shock to decedent's
entire body and nervous system. She may further testify to the conscious pain and
suffering decedent experienced before his death. Furthermore, she may testify to her
suffering from the death of her brother, Juan Jose Guajardo, including loss of care,
maintenance, support, services, advice, counsel, society, companionship, mental anguish,
the emotional and mental trauma resulting from the untimely death of a loved one, and
funeral and burial expenses. She may testify to how she has suffered severe mental
depression and anguish, grief and sorrow as a result of the death of her brother, Juan Jose
Guajardo, and is likely to continue to suffer for a long time in the future.
In conclusion, she may testify to any knowledge she may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Ramona Espinoza
2425 Cardinal Loop, Apt. E108
Del Valle, Texas 78617
(512) 385-6654

Ms. Espinoza is one of Juan Jose Guajardo's surviving sisters. She may testify to
defendants negligent conduct resulting in decedent, Juan Jose Guajardo suffering great
physical and mental pain and anguish. She may further testify to decedent being battered
and placed in a choke hold which resulted in a heart attack, being brought back to life, and
taken to the hospital for treatment. Additionally, she may testify to the great shock to
decedent's entire body and nervous system. She may further testify to the conscious pain
and suffering decedent experienced before his death. Furthermore, she may testify to the
suffering from the death of her brother, Juan Jose Guajardo, including loss of care,
maintenance, support, services, advice, counsel, society, companionship, mental anguish,
the emotional and mental trauma resulting from the untimely death of a loved one, and
funeral and burial expenses. She may further testify to how she has suffered severe mental
depression and anguish, grief and sorrow as a result of the death of her brother, Juan Jose
Guajardo, and is likely to continue to suffer for a long time in the future. In conclusion,
she may testify to the incident that occurred on April 8, 1997, between City Jailer,
Eduardo Treviño, Decedent, Juan Jose Guajardo, and City Matron, Ana Hernandez.

Blanca Peña
5311 Vae Drive
Baytown, Texas 77521
(281) 424-7310

Ms. Peña is one of Juan Jose Guajardo's surviving sisters. She may testify to her suffering
from the death of her brother, Juan Jose Guajardo, the emotional and mental trauma
resulting from the untimely death of a loved one. She may further testify to how she has
suffered severe mental depression and anguish, grief and sorrow as a result of the death of
her brother, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the
future. In conclusion, she may testify to any additional knowledge she may have of the
incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent,
Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Timoteo Guajardo (decedent's brother)
2124 Coolidge, A
Brownsville, Texas 78521
(956) 541-9255

Timoteo is a surviving brother of Juan Jose Guajardo. He may testify to defendants
negligent conduct resulting in decedent, Juan Jose Guajardo suffering great physical and
mental pain and anguish. He may further testify to decedent being battered and placed in a
choke hold which resulted in a heart attack, being brought back to life, and taken to the
hospital for treatment. Additionally, he may testify to the great shock to decedent's entire
body and nervous system. He may further testify to the conscious pain and suffering

4

decedent experienced before his death. Furthermore, he may testify to his suffering from the death of his brother, Juan Jose Guajardo, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, and funeral and burial expenses. He may further testify to how he has suffered severe mental depression and anguish, grief and sorrow as a result of the death of his brother, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the future. In conclusion, he may testify to any additional knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Noe Guajardo
2125 Southmost
Brownsville, Texas 78520
(956) 542-2875

Noe is a surviving brother of Juan Jose Guajardo. He may testify to defendants negligent conduct resulting in decedent, Juan Jose Guajardo suffering great physical and mental pain and anguish. He may further testify to decedent being battered and placed in a choke hold which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment. Additionally, he may testify to the great shock to decedent's entire body and nervous system. He may further testify to the conscious pain and suffering decedent experienced before his death. Furthermore, he may testify to his suffering of the loss of his brother, Juan Jose Guajardo, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, and funeral and burial expenses. He may further testify to how he has suffered severe mental depression and anguish, grief and sorrow as a result of the death of his brother, Juan Jose Guajardo, and is likely to continue to suffer for a long time in the future. In conclusion, he may testify to any additional knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Ben Reyna
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Mr. Reyna is the Chief of Police for the CITY OF BROWNSVILLE and was the Chief of Police at the time the incident in question occurred. He may testify as to any knowledge he may have of the incident that occurred on April 8, 1997 between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. He may also have knowledge of the training, if any, that jail personnel undergo while employed at the Brownsville city jail.

Sgt. Robert Avitia (Custodian of Records)
c/o Brownsville Police Department
600 E. Jackson Street
Brownsville, Texas    78520
(956) 544-7000

Sgt. Avitia is the custodian of records for the Brownsville Police Department.  He may
testify to any and all incident reports, police reports, narratives, photographs, etc. taken by
any officer of the Brownsville Police Department as a result of the April 8, 1997 incident
between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron,
Ana Hernandez.  He may also have knowledge of the training, if any, that jail personnel
undergo while employed at the Brownsville city jail.

Thomas Guajardo, III
1763 Villanova
Brownsville, Texas 78520
(956) 504-5194

Thomas is a surviving son of Juan Jose Guajardo.  He may testify to his suffering from the
death of his father, Juan Jose Guajardo, including loss of care, maintenance, support
services, advice, and counsel.  He may further testify to his suffering of additional loss by
virtue of the destruction of the parent-child relationship, including the right to love,
affection, solace, comfort, companionship, society, emotional support and happiness.
Additionally, he may testify to his suffering of severe mental depression and anguish, grief
and sorrow as a result of the death of his father, Juan Jose Guajardo, and he is likely to
continue to suffer for a long time in the future.  In conclusion, he may testify to any
knowledge he may have of the incident that occurred on April 8, 1997, between City
Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Cynthia Guajardo (Minor Plaintiff)
1763 Villanova
Brownsville, Texas 78520
(956) 504-5194

Cynthia is a surviving daughter of Juan Jose Guajardo.  She may testify to her suffering
from the death of her father, Juan Jose Guajardo, including loss of care, maintenance,
support services, advice, and counsel.  She may further testify to her suffering of
additional loss by virtue of the destruction of the parent-child relationship, including the
right to love, affection, solace, comfort, companionship, society, emotional support and
happiness.  Additionally, she may testify to her suffering of severe mental depression and
anguish, grief and sorrow as a result of the death of her father, Juan Jose Guajardo, and
she is likely to continue to suffer for a long time in the future.  In conclusion, she may
testify to any knowledge she may have of the incident that occurred on April 8, 1997,
between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron,
Ana Hernandez.

Caroline Guajardo (Minor Plaintiff)
1763 Villanova
Brownsville, Texas 78520
(956) 504-5194

Caroline is a surviving daughter of Juan Jose Guajardo. She may testify to her suffering from the death of her father, Juan Jose Guajardo, including loss of care, maintenance, support services, advice, and counsel. She may further testify to her suffering of additional loss by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness. Additionally, she may testify to her suffering of severe mental depression and anguish, grief and sorrow as a result of the death of her father, Juan Jose Guajardo, and she is likely to continue to suffer for a long time in the future. In conclusion, she may testify to any knowledge she may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Alejandro Garcia
3033 East 20th Street
Brownsville, Texas 78521
(956) 544-6448

Alejandro is a surviving son of Juan Jose Guajardo. He may testify to his suffering from the death of his father, Juan Jose Guajardo, including loss of care, maintenance, support services, advice, and counsel. He may further testify to his suffering of additional loss by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness. Additionally, he may testify to his suffering of severe mental depression and anguish, grief and sorrow as a result of the death of his father, Juan Jose Guajardo, and he is likely to continue to suffer for a long time in the future. In conclusion, he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. **(NOTE:** Alejandro's deposition was taken on February 19, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).

Ana Hernandez a/k/a Ana Berta Garcia Hernandez
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

She may testify to how City Jailer, Eduardo Treviño, hit decedent in the left side of the head producing decedent to lose his balance and stagger. She may further testify to how Mr. Treviño applied the choke hold on decedent, Juan Jose Guajardo, from behind and around his neck. Also, she may testify to how Mr. Treviño slammed decedent's head against a steel access door, which caused decedent to bounce to the lateral wall in the main hall. Additionally, she may testify to how she pulled decedent, Juan Jose Guajardo's

7

leg causing him to fall, facing faced down, with City Jailer, Eduardo Treviño on top of him. Furthermore, she may testify to her assistance to Mr. Treviño in handcuffing, decedent, Juan Jose Guajardo. She may further testify to the great physical and mental pain and anguish suffered by decedent, Juan Jose Guajardo before his death. Furthermore, she may testify to how the decedent, Juan Jose Guajardo was battered and placed in a choke hold, and how his entire body suffered a great shock. She may further testify to how decedent experienced excruciating conscious pain, suffering, and terror of grasping for air as Jailer, Eduardo Treviño applied the choke hold on him. In conclusion, she may testify to the policies and procedures of the Brownsville Police Department. **(NOTE:** Ms. Hernandez' deposition was taken on May 23, 1997 in regard to this case. Her deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).

Eduardo Treviño (Defendant)
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

He may testify to how he hit decedent in the left side of the head producing decedent to lose his balance and stagger. He may further testify to how he applied the choke hold on decedent, Juan Jose Guajardo, from behind and around his neck. Also, he may testify to how he slammed decedent's head against a steel access door, which caused decedent to bounce to the lateral wall in the main hall. Additionally, he may testify to how Jail Matron, Ana Hernandez pulled decedent, Juan Jose Guajardo's leg causing decedent to fall, facing faced down, with him on top of decedent. Additionally, he may testify to Ms. Hernandez' assistance in handcuffing, decedent, Juan Jose Guajardo. He may further testify to the great physical and mental pain and anguish suffered by decedent, Juan Jose Guajardo before his death. Furthermore, he may testify to how he battered and placed decedent, Juan Jose Guajardo in a choke hold, and how his entire body suffered a great shock. He may further testify to how decedent experienced excruciating conscious pain, suffering, and terror of grasping for air as he applied the choke hold on decedent. In conclusion, he may testify to the policies and procedures of the Brownsville Police Department. **(NOTE:** Mr. Treviño's deposition was taken on January 8, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).

Yvonne Salazar (Former Jail Matron)
225-1 Downs Drive
Brownsville, Texas 78520
(956) 546-6658

Ms. Salazar is a former jail matron and/or detention officer who worked at the Brownsville city jail. She has knowledge of Defendant Treviño's work habits and interaction with inmates and/or detainees. She also has knowledge of the policies and procedures followed at the Brownsville city jail by jail personnel and/or personnel of the Brownsville Police Department. She may further testify to any knowledge she may have of the incident that occurred on April 8, 1997 between City Jailer, Eduardo Treviño,

8

Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.  **(NOTE:** Ms. Salazar's deposition was taken on January 25, 1999 in regard to this case.  Her deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).

Lt. Eliborio Rios
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

It is my understanding that Lt. Rios is the administrator of the Brownsville city jail and was so at the time of the April 8, 1997 incident made the basis of this lawsuit.  Lt. Rios assisted in the investigation made the basis of this lawsuit and may testify to his investigation and findings.  He may further testify to any knowledge he may have regarding the incident which occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.  Lt. Rios also has knowledge of the contents of the affidavit which he signed on or about August 26, 1998.  **(NOTE:** Lt. Rios' deposition was taken on January 8, 1999 in regard to his case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).

Oscar Ponce (Former Assistant District Attorney)
c/o United States Attorney's Office
600 East Harrison Street
Brownsville, Texas 78520
(956) 548-2554

Mr. Ponce is a former Assistant District Attorney formerly employed by the Cameron County District Attorney's office.  He assisted in the investigation of the incident made the basis of this lawsuit and is expected to testify as to his investigation and findings.  He may further testify to any knowledge he may have of the incident which occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.  **(NOTE:** Mr. Ponce's deposition was taken on May 5, 1999 in regard to this case.  His deposition is incorporated herein by reference the same as if fully copied and set forth at length).

Hector Eguia Garcia
2714 Elena Street
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. **(NOTE:** Mr. Garcia's deposition was taken on June 11, 1997 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.) **(ALSO NOTE**: Plaintiffs intend to call Mr. Garcia to testify at trial by way of videotaped deposition.).

Alejandro Medina
7055 Kana Drive
Brownsville, Texas 78520
(no telephone number)

Mr. Medina was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit. He may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Jail Matron, Ana Hernandez, and my son, Juan Jose Guajardo. **(NOTE:** Mr. Medina's deposition was taken on July 17, 1997 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.) **(ALSO NOTE**: Plaintiffs intend to call Mr. Medina to testify at trial by way of videotaped deposition).

Orlando Benavides
2105 East Los Ebanos, #3
Brownsville, Texas 78520
(956) 831-7199

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. **(NOTE:** Mr. Benavides' deposition was taken on July 17, 1997 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.) **(ALSO NOTE:** Plaintiffs intend to call Mr. Benavides to testify at trial by way of videotaped deposition.).

William Alan Kennedy
1512 Santa Ana
Olmito, Texas 78575

He may testify to his prior experience of excessive use of force by Detention Officer, Eduardo Treviño, while incarcerated at the Brownsville City Jail. He may further testify as to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. **(NOTE:** Mr. Kennedy's deposition was taken on June 11, 1997, in regard to

10

this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.) (**ALSO NOTE**: Plaintiffs intend to call Mr. Kennedy to testify at trial by way of videotaped deposition).

Sam Ortega (EMT Technician)
Brownsville Emergency Medical Service
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Ortega may testify to the emergency medical treatment and care provided to decedent, Juan Jose Guajardo for injuries and damages he sustained as a result of the incident made the basis of this lawsuit. He may further testify to decedent, Juan Jose Guajardo's, prognosis and diagnosis, past medical bills and to his medical opinion of Juan Jose Guajardo's cause of death. (**NOTE:** Mr. Ortega's deposition was taken on May 10, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length). (**ALSO NOTE**: Plaintiffs intend to call Mr. Ortega to testify at the trial of this lawsuit by way of videotaped deposition.).

Oscar Lara (EMT Technician)
Brownsville Emergency Medical Service
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Lara was an attendant with the City of Brownsville Emergency Medical Service on the evening of April 8, 1997. He was one of the EMS attendants who rendered medical treatment and/or care to my son at the city jail and transferred him via ambulance to Brownsville Medical Center. Mr. Lara also prepared the Ambulance Activity Report on or about April 8, 1997 including the narrative of events which took place on said evening. Mr. Lara has knowledge of the contents of the Ambulance Activity Report as well as what Jailer Eduardo Treviño told him about using the choke hold maneuver on my son. Mr. Lara may further testify to the emergency medical treatment and care provided to decedent, Juan Jose Guajardo, for injuries and damages he sustained as a result of the incident made the basis of this lawsuit. He may further testify to decedent, Juan Jose Guajardo's, prognosis and diagnosis past medical bills, and to his opinion of Juan Jose Guajardo's cause of death. (**NOTE**: Mr. Larra's deposition was taken on May 10, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length). (**ALSO NOTE**: Plaintiffs intend to call Mr. Larra to testify at the trial of this lawsuit by way of videotaped deposition).

Jaime Ibarra (EMT Technician)
Brownsville Emergency Medical Service
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Ibarra may testify to the emergency medical treatment and care provided to decedent, Juan Jose Guajardo for injuries and damages he sustained as a result of the incident made the basis of this lawsuit.  He may further testify to decedent, Juan Jose Guajardo's prognosis and diagnosis, past medical bills and to his medical opinion of Juan Jose Guajardo's cause of death.  (**NOTE**: Mr. Ibarra's deposition was taken on May 10, 1999 in regard to this case.  His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).  (**ALSO NOTE**: Plaintiffs intend to call Mr. Ibarra to testify at the trial of this lawsuit by way of videotaped deposition).

Reynaldo Gil (EMT Technician)
Brownsville Emergency Medical Service
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491

Mr. Gil may testify to the emergency medical treatment and care rendered to decedent, Juan Jose Guajardo for the injuries and damages he sustained as a result of the incident made the basis of this lawsuit.  He may further testify to Juan Jose Guajardo's prognosis and diagnosis, past medical bills, and to his medical opinion of Juan Jose Guajardo's cause of death.  (**NOTE**: Mr. Gil's deposition was taken on May 10, 1999 in regard to this case.  His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length).  (**ALSO NOTE**: Plaintiffs intend to call Mr. Gil to testify at the trial of this lawsuit by way of videotaped deposition).

Claudio Juventino Ortiz, III (EMT Technician)
Brownsville Emergency Medical Service
1325 East Ringgold
Brownsville, Texas 78520
(956) 541-9491
            or
34 Highland Drive
Brownsville, Texas 78520
(956) 541-2412

12

Mr. Ortiz may testify to the emergency medical treatment and care rendered to decedent, Juan Jose Guajardo, for the injuries and damages he sustained as a result of the incident made the basis of this lawsuit. He may further testify to Juan Jose Guajardo's prognosis and diagnosis, past medical bills, and to his medical opinion of Juan Jose Guajardo's cause of death. **(NOTE:** Mr. Ortiz' deposition was taken on May 14, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.). **(ALSO NOTE:** Plaintiffs intend to call Mr. Ortiz to testify at trial by way of videotaped deposition.).

Margie Cornwell, M.D.(Pathologist)
c/o Valley Baptist Medical Center
2101 Pease
P.O. Drawer 2588
Harlingen, Texas 78551
(956) 389-1100

Dr. Cornwell is a pathologist who performed an autopsy on my son, Juan Jose Guajardo, on April 10, 1997 at Valley Baptist Medical Center in Harlingen, Texas. She has knowledge as to the autopsy she performed on my son as well as the contents of her written pathology report dated May 27, 1997. Dr. Cornwell also has knowledge of the final principal autopsy findings and final summary as contained in her May 27, 1997 report. Any additional knowledge held by Dr. Cornwell is unknown to me at this time. (**NOTE:** Dr. Cornwell's deposition was taken on May 13, 1999 in regard to this case. Her deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.). **(ALSO NOTE:** Plaintiffs may call Dr. Cornwell to testify at trial by way of videotaped deposition.).

Dr. Luis Alberto Campos
Cardiology, Cardiac Catheterization and Coronary Angioplasty
920 Frostwood #630
Houston, Texas 77024
(713) 465-3535
                    or
8830 Long Point #601
Houston, Texas 77055
(713) 467-0609

Dr. Campos is a medical doctor who specializes in cardiology, cardiac catherization and coronary angioplasty. He was been retained as a testifying expert witness on behalf of Plaintiffs in this case. Dr. Campos has knowledge of his findings and opinions in regard to Juan Jose Guajardo's death. He also has knowledge of the contents of his written report dated September 8, 1997. **(NOTE:** Dr. Campos' deposition was taken on March 5, 1999 in regard to this case. His deposition testimony is incorporated herein by reference the

13

same as if fully copied and set forth at length.).  (**ALSO NOTE**: Plaintiffs intend to call Dr. Campos to testify as an expert witness of the trial of this lawsuit by way of videotaped deposition.).

Dr. Juan Luis Zamora
15790 Dooley Rd., Suite 218-D
Dallas, Texas 75244
(972) 774-1141

Dr. Zamora is a medical doctor who specializes in pathology.  Dr. Zamora was retained as a testifying expert witness on behalf of Plaintiffs in this case.  Dr. Zamora has knowledge of the facts of this case, and his conclusions and opinions in regard to Juan Jose Guajardo's cause of death.  He also has knowledge of the contents of his written report dated August 28, 1997.

Dr. Thadeus J. Schulz
3451 Misty Meadow Drive
Dallas, Texas 75287-6025
(817) 654-8824

Dr. Schulz is an anatomic and clinical pathologist who has been retained as a testifying expert witness on our behalf in this case.  Dr. Schulz has knowledge of his findings and opinions in regard to my son's death.  He also has knowledge of the contents of his written report dated November 7, 1997.  **(NOTE:** Dr. Schulz' deposition was taken on February 5, 1999 in regard to this case.  His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.)  (**ALSO NOTE**: Plaintiffs intend to call Dr. Schulz to testify as an expert witness at the trial of this lawsuit by way of videotaped deposition.).

Chief Billy Ray Tidwell
Operational Support Services, Inc.
19018 Candleview
Spring, Texas 77388
(281) 288-9190

Mr. Tidwell is the Chief of Police in Liberty, Texas who has been retained as a testifying expert witness on behalf of the Plaintiffs in this case.  He is a law enforcement advisor who has extensive background, knowledge and training in the area of law enforcement.  He is expected to testify as to Defendants' negligence which resulted in Juan Jose Guajardo's death which made the basis of this lawsuit.  Mr. Tidwell also has knowledge of the contents of his report dated March 25, 1999 and is expected to testify as to his discussion, opinions, and conclusion contained therein.  (**NOTE**: Mr. Tidwell's deposition was taken on May 11, 1999 in regard to this case.  His deposition testimony is incorporated herein

14

by reference the same as if fully copied and set forth at length.).  (**ALSO NOTE**: Plaintiffs intend to call Mr. Tidwell to testify at trial by way of videotaped deposition.).

Facunda B. Garcia
3033 East 20th Street
Brownsville, Texas 78521
(956) 544-6448

Ms. Garcia is Alejandro Garcia's mother.  She may testify to her son's injuries and damages.

Alma Guadalupe Aguilar
1763 Villanova
Brownsville, Texas 78520
(956) 504-5194

She may testify to the injuries and damages of her children, Thomas Guajardo, III, Cynthia Guajardo, and Caroline Guajardo.  She may further testify to any knowledge she may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent,  Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Brian Castro (City Jailer)
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Mr. Castro may testify to the policies and procedures of the Brownsville Police Department. He may further testify to any knowledge he may have of the incident that occurred on April 8, 1997 between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Tommy Clough (Former Jailer)
50 Duncan Road
Brownsville, Texas 78520
(956) 350-5629

Mr. Clough may testify to the policies and procedures of the Brownsville Police Department.  He may further testify to any knowledge he may have of the incident that occurred on April 8, 1997 between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

15

:

Ignacio Perez (Former Jailer)
1900 East Elizabeth, Apt. 4E
Brownsville, Texas 78520
(956) 541-5957
(956) 544-8233 (work)

Mr. Perez may testify to the policies and procedures of the Brownsville Police
Department. He may further testify to any knowledge he may have of the incident that
occurred on April 8, 1997 between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Bertha Garay (Former Jail Matron)
424 East Jefferson Street
Brownsville, Texas 78520
(956) 541-4838

Ms. Garay is a former jail matron and/or detention officer who worked at the Brownsville
City Jail. It is my understanding that Ms. Garay has knowledge of the use of excessive
force by detention officers on inmates, detainees, or prisoners on prior occasions. Ms.
Garay may testify to the policies and procedures of the Brownsville Police Department.
She may further testify to any knowledge she may have of the incident that occurred on
April 8, 1997 between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and
Jail Matron, Ana Hernandez.

Bertha Partida (Former Detention Officer)
Address Unknown

Ms. Partida is a former jail matron and/or detention officer who worked at the Brownsville
city jail. She worked with Defendant Treviño and has knowledge of his work habits and
interaction with inmates and/or detainees. Ms. Partida also has knowledge of the policies
and procedures followed at the Brownsville city jail by jail personnel and/or personnel of
the Brownsville Police Department. She may further testify to any knowledge she may
have of the incident that occurred on April 8, 1997 between City Jailer, Eduardo Treviño,
Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Sgt. Perry Peppin
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

16

Sgt. Peppin arrived at the scene of the incident with Brownsville Emergency Medical Services and has personal knowledge relevant to Plaintiffs' claims and Defendants' defenses. He may testify to any knowledge he may have regarding Juan Jose Guajardo's cause of death which forms the basis of this lawsuit.

Sgt. James Paschall
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Sgt. Paschall is employed in the Brownsville Police Department's Internal Affairs Division and assisted in the investigation of the incident made the basis of this lawsuit and he may testify to his investigation and findings. He may further testify to any knowledge he may have regarding Juan Jose Guajardo's cause of death which forms the basis of this lawsuit.

Sgt. Sandra Galvan
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Sgt. Galvan assisted in the investigation made the basis of this lawsuit and may testify to her investigation and findings. She may further testify to any knowledge she may have regarding the incident which occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Officer Eduardo Zuniga
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Zuniga arrested my son, Juan Jose Guajardo on the night of the incident made the basis of this lawsuit. He may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez. Officer Zuniga has knowledge of the contents of the Offense/Incident report (dated April 8, 1997) and Police Supplement Report (dated April 11, 1997) he prepared on behalf of the Brownsville Police Department. He also has knowledge of the circumstances leading up to my son's arrest on the evening of April 8, 1997 as well as his behavior following the arrest. Any additional knowledge held by Officer Zuniga is unknown to me at this time.

17

Officer Juan Manuel Salinas
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Salinas assisted Officer Zuniga in arresting Juan Jose Guajardo on the night of the
incident made the basis of this lawsuit. He may testify to any knowledge he may have of
the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño,
Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Officer Eduardo Garces
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Garces may testify to any knowledge he may have of the incident made the basis of
this lawsuit and as to his investigation and findings if any, of the incident that occurred on
or about April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Officer William Clough
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Clough assisted in the investigation of the incident made the basis of this lawsuit
and he may testify to his investigation and findings. He may further testify to any
knowledge he may have of the incident that occurred on April 8, 1997, between City
Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Officer R.J. Pineda
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Pineda took the statements of witnesses, Orlando Benavides, Guadalupe Garcia,
Miguel Rios, Jaime Cortez, Andres Posados, Antonio Velazquez, and Eduardo Treviño
and he may testify to said statements and  any additional knowledge he may have
regarding the incident that occurred on  April 8, 1997, between City Jailer, Eduardo
Treviño, Decedent, Juan Jose  Guajardo, and Jail Matron, Ana Hernandez.

18

Officer Raul Rodriguez
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Officer Rodriguez assisted in the investigation made the basis of this lawsuit, e.g., by taking paint chip samples from Defendant Eduardo Treviño's clothing and he may testify to his investigation and findings. He may further testify to any knowledge he may have regarding the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Commander Charlie Cabler
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Commander Cabler advised me that my son, Juan Jose Guajardo had been transported to Brownsville Medical Center on the night of the incident made the basis of this lawsuit. He may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Commander Randy Dunn
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Commander Dunn assisted in the investigation of the incident made the basis of this lawsuit and he may testify to his investigation and findings. He may further testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Detective David Garcia
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Detective Garcia assisted in the investigation of the incident made the basis of this lawsuit and he may testify to his investigation and findings. He may further testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernande

19

Detective Gilberto Garcia, Jr.
Brownsville Police Department
600 East Jackson Street
Brownsville, Texas 78520
(956) 548-7000

Detective Garcia assisted in the investigation of the incident made the basis of this lawsuit
and he may testify to his investigation and findings.  He may further testify to any
knowledge he may have of the incident that occurred on April 8, 1997, between City
Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

T. David Church, Jr., Special Agent
Federal Bureau of Investigation
1700 Paredes Line Road
Brownsville, Texas 78521
(956) 546-6922

He assisted in the investigation made the basis of this lawsuit and may testify to his
investigation and findings.  He may further testify to any knowledge he may have
regarding the incident that occurred on April 8, 1997, between City Jailer, Eduardo
Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Pete Lopez, Security Officer
Federal Courthouse
500 East Levee Street
Brownsville, Texas 78520
(956) 548-2500
(956) 504-2614

Mr. Lopez claims he was assaulted by decedent, Juan Jose Guajardo on the evening of the
incident made the basis of this lawsuit.  He may testify to any knowledge he may have of
the incident which occurred on April 8, 1997, between City Jailer, Eduardo Treviño,
Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Richard Tejada, Security Officer
Federal Courthouse
500 East Levee Street
Brownsville, Texas 78520
(956) 548-2500

Mr. Tejada was working with Pete Lopez the night of the incident in question.  He may
testify to any knowledge he may have of the incident that occurred on April 8, 1997,
between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron,
Ana Hernandez.

Cesar Lerma Barbosa
1244 Norma Lane
Brownsville, Texas 78520
(956) 831-5880

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit. He may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Fernando Hinojosa Mendoza
Colonia 19, Galeana #163
Matamoros Tamaulipas, Mexico
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Jaime Gutierrez Cortez
Colonia Popular, Roberto Guerra
Callejon 11 #16
Matamoros Tamaulipas, Mexico
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Antonio Velazquez
825 Minnesota Ave.
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit. He may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Marco Antonio Rodriguez
7 Elda Street
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Jesus Manuel Olivarez
728 West Washington
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Jesse Garcia
1644 Isla De Palmas
Brownsville, Texas 78520
(956) 504-1624

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Jose Perez
3695 East 26th Street
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis of this lawsuit and he may testify to any knowledge he may have of the incident that occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose Guajardo, and Jail Matron, Ana Hernandez.

Juan Ortiz Salazar
Adams Street (Apts. on 6th & Adams Street) #9
Brownsville, Texas 78520
(956) 542-8704

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Juan Loera
7918 Southmost Road
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Miguel Rios
10 y Rayon
Matamoros Tamaulipas, Mexico
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Cosme Berrones
5712 Southmost Road
Brownsville, Texas 78520
(956) 542-6539

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident which
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Andres Posadas
402 Madison Street
Harlingen, Texas 78550
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident which
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Santos Pedro Ochoa
34 Zena
Brownsville, Texas 78520
(no telephone number)

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident which
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Jesse Garcia
1644 Isla De Palmas
Brownsville, Texas 78520
(956) 504-1624

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident which
occurred on April 8, 1997, between, City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Guadalupe Garcia
350 East St. Charles Street, #116
Brownsville, Texas 78520
(956) 541-6185

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Roberto Juarez
Address unknown at this time

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Miguel Angel Barron
Address unknown at this time

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Jose Maria Moreno
Address unknown at this time

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Roberto S. Medina
Address unknown at this time

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

Juan Garza
Address unknown at this time

He was incarcerated at the Brownsville City Jail at the time of the incident made the basis
of this lawsuit and he may testify to any knowledge he may have of the incident that
occurred on April 8, 1997, between City Jailer, Eduardo Treviño, Decedent, Juan Jose
Guajardo, and Jail Matron, Ana Hernandez.

27

# Exhibit "G"

# Plaintiffs' Proposed Jury Instructions, Definitions, and Interrogatories



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIA F. GUAJARDO, INDIVIDUALLY &
AS ADMINISTRATOR OF THE ESTATE &
OF JUAN JOSE GUAJARDO, AND AS &
GUARDIAN OF THOMAS GUAJARDO, &
III, CYNTHIA GUAJARDO, AND &
CAROLINE GUAJARDO, MINOR &    CIVIL ACTION NO. 97-215
CHILDREN AND ALEJANDRO GARCIA &    (JURY REQUESTED)
&
VS. &
&
EDUARDO TREVINO, INDIVIDUALLY &

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS, DEFINITIONS, AND INTERROGATORIES

COME NOW, MARIA F. GUAJARDO, INDIVIDUALLY, and as ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO, and as GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, and CAROLINE GUAJARDO, MINOR CHILDREN and ALEJANDRO GARCIA, Plaintiffs in the above-styled and civil action, having been presented before the Court the charge to the jury in the time and manner required by law, respectfully requests that the Court submit to the jury the jury instructions, definitions, and interrogatories attached Exhibit hereto as Exhibit "A".

1

Respectfully submitted,

**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas 78520
Telephone No.: (956) 541-3820
Facsimile No.: (956) 541-7694

BY: _____
VICTOR QUINTANILLA
State Bar No. 00786181
Federal Id. No. 16073

**ATTORNEY-IN-CHARGE FOR
PLAINTIFFS MARIA F.
GUAJARDO, INDIVIDUALLY,**
and as **ADMINISTRATOR OF
THE ESTATE OF JUAN JOSE
GUAJARDO,** and as **GUARDIAN
OF THOMAS GUAJARDO, III,
CYNTHIA GUAJARDO,** and
**CAROLINE GUAJARDO, MINOR
CHILDREN** and **ALEJANDRO
GARCIA**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing **Plaintiffs'
Proposed Jury Instructions, Definitions, and Interrogatories** has been served on
opposing counsel **VIA HAND-DELIVERY** in accordance with the Federal Rules of Civil
Procedure, on this the 30TH day of March, 2001, to Hon. George C. Kraehe,
**WILLETTE & GUERRA, L.L.P.,** International Plaza, Suite 460, 3505 Boca Chica
Blvd., Brownsville, Texas,
78521.

_____
VICTOR QUINTANILLA

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY | & | |
| AS ADMINISTRATOR OF THE ESTATE | & | |
| OF JUAN JOSE GUAJARDO, AND AS | & | |
| GUARDIAN OF THOMAS GUAJARDO, | & | |
| III, CYNTHIA GUAJARDO, AND | & | |
| CAROLINE GUAJARDO, MINOR | & | CIVIL ACTION NO. 97-215 |
| CHILDREN AND ALEJANDRO GARCIA | & | (JURY REQUESTED) |
| | & | |
| VS. | & | |
| | & | |
| EDUARDO TREVINO, INDIVIDUALLY | & | |

**EXHIBIT "A"**

**CONTENTS**

1.  PRELIMINARY INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . .   5

2.  FIRST RECESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

3.  STIPULATED TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . .   8

4.  STIPULATIONS OF FACT  . . . . . . . . . . . . . . . . . . . . . . .   9

5.  JUDICIAL NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

6.  DISCONTINUANCE AS TO SOME PARTIES . . . . . . . . . . . . . . . . .  11

7.  PUBLICITY DURING TRIAL. . . . . . . . . . . . . . . . . . . . . . .  12

8.  BENCH CONFERENCES AND RECESSES  . . . . . . . . . . . . . . . . . .  13

9.  DEMONSTRATIVE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . .  14

10. WITNESS NOT CALLED. .  . . . . . . . . . . . . . . . . . . . . . . .  15

11. SIMILAR ACTS-CAUTIONARY CHARGE . . . . . . . . . . . . . . . . . .  16

12. DUTY TO DELIBERATE  . . . . . . . . . . . . . . . . . . . . . . . .  17

13. INSTRUCTIONS ON DELIBERATION. . . . . . . . . . . . . . . . . . . .  18

14.  BIAS-CORPORATE PARTY INVOLVED . . . . . . . . . . . . . . . . . . . 19

15.  LIMITING INSTRUCTION. .   . . . . . . . . . . . . . . . . . . . . . 20

16.  IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS . . . . . . 21

17.  IMPEACHMENT BY WITNESSES' FELONY CONVICTION . . . . . . . . . . 22

18.  CONSIDERATION OF THE EVIDENCE  . . . . . . . . . . . . . . . . . . 23

19.  EXPERT WITNESSES . . . . . . . . . . . . . . . . . . . . . . . . . 24

20.  BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN  . . . . . . . 25

21.  USE OF NOTES TAKEN BY JURORS. . . . . . . . . . . . . . . . . . . 26

22.  CAUTIONARY INSTRUCTION ON DAMAGES . . . . . . . . . . . . . . . 27

23.  DEPOSITION TESTIMONY . . . . . . . . . . . . . . . . . . . . . . . 28

24.  GENERAL INSTRUCTIONS FOR CHARGE  . . . . . . . . . . . . . . . . 29

25.  EXCESSIVE FORCE SECTION 1983 . . . . . . . . . . . . . . . . . . . 35

26.  DAMAGES . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . 39

27.  COMPENSATORY DAMAGES. . . . . . . . . . . . . . . . . . . . . . . 40

28.  PAIN, SUFFERING, AND EMOTIONAL DISTRESS . . . . . . . . . . . . 42

29.  CALCULATION OF PAST AND FUTURE DAMAGES  . . . . . . . . . . . 43

30.  INJURY/PAIN/DISABILITY/DISFIGUREMENT/LOSS  . . . . . . . . . . 45

31.  MEDICAL EXPENSES. . . . . . . . . . . . . . . . . . . . . . . . . 46

32.  WRONGFUL DEATH - ESTATE DAMAGES . . . . . . . . . . . . . . . . 47

33.  WRONGFUL DEATH - SURVIVORS' DAMAGES . . . . . . . . . . . . . 48

34.  PROPOSED INTERROGATORIES. .  . . . . . . . . . . . . . . . . . . . 50

4

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY | & | . . . . . . . . . . . . . . . . . . |
| AS ADMINISTRATOR OF THE ESTATE | & | |
| OF JUAN JOSE GUAJARDO, AND AS | & | |
| GUARDIAN OF THOMAS GUAJARDO, | & | |
| III, CYNTHIA GUAJARDO, AND | & | |
| CAROLINE GUAJARDO, MINOR | & | . . . . CIVIL ACTION NO. 97-215 |
| CHILDREN AND ALEJANDRO GARCIA | & | . . . . . . . (JURY REQUESTED) |
| | & | |
| VS. | & | . . . . . . . . . . . . . . . . . |
| | & | |
| EDUARDO TREVINO, INDIVIDUALLY | & | . . . . . . . . . . . . . . . . . . |

---

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

---

## 1. PRELIMINARY INSTRUCTIONS[1]

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §1.1 (1998).

5

CutePDF - www.tevho.com

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.  Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case-the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

6

2.FIRST RECESS[2]


We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

_____

 Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.1 (1998).

7

### 3.STIPULATED TESTIMONY[3]

The parties have agreed or stipulated that [e.g., if _____ were called as a witness he would testify that _____].

The agreement is that would be [_____ s] testimony if called as a witness.  You should consider that testimony in the same way as if it had 'been given here in court, and give it the value you believe it deserves.

_____

 Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.2 (1998).

8

## 4.STIPULATIONS OF FACT4

       The parties have agreed, or stipulated, that [_____].  This means that both sides agree that this is a fact. You must therefore treat this fact as having been proved.

---

 Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), **§2.3** (1998).

9

**5.JUDICIAL NOTICE[5]**

Although no evidence has been presented, I instruct you that you must accept as proved [state the facts].

---

 Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.4 (1998).

CutePDF - www.tesco.com

6.DISCONTINUANCE AS TO SOME PARTIES[6]


_____ and _____ are no longer involved in this trial. As jurors, it is your duty to consider the issues between [among] (identify remaining parties) under the instructions I give you after you have heard all of the evidence [which might still concern _____ and _____ s conduct in this dispute].

---

 Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.5 (1998).

11

7.PUBLlCITY DURING TRIAL7

If there is publicity about this trial, you must ignore it. You must decide this case only from the evidence presented in the trial. Do not read anything or listen to any TV or radio programs about the case. [This instruction can be modified according to the extent of the case's notoriety].

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.6 (1998).

12

CIltPDF - www.fastio.com

## 8.BENCH CONFERENCES AND RECESSES[8]

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.7 (1998).

13

9.DEMONSTRATIVE EVIDENCE9

Exhibit [describe] is an illustration. It is a party's [description or picture or model] to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.8 (1998).

14

CutePDF - www.fastio.com

10.WITNESS NOT CALLED[10]


(Name of Witness) _____ was available to both sides. Thus [the plaintiff] [the defendant] cannot complain that (Witness) was not called to testify, because (Party) could have called (Witness).


[This instruction is appropriate only if the issue arises during closing argument or at some other time in trial.]

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.9 (1998).

15

11.SIMILAR ACTS-CAUTIONARY CHARGE[11]

Evidence that an act was done at one time or on one occasion is not any evidence or proof whatever that the act was done in this case.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing __ )s [motive, opportunity, intent, knowledge, plan, identity, or absence of mistake or accident] which is at issue in this case.

Such evidence may not be considered for any other purpose whatsoever. You can t use it to reflect on _____ s character.

[This is a charge pursuant to FRE 404B and should not be used if the evidence is otherwise admissible as circumstantial evidence of the act at issue in the case [prior or subsequent occurrence; see, e.g., McCormick on Evidence, Third Edition, See. 200, West Pub. Co., 1984; Hicks v. Six Flags Over Mid-America, 821 F.2d 1311 (8th Cir.1987) and the cases cited therein].]

_____

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.10 (1998).

16

12.DUTY TO DELIBERATE[12]

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges~judges of the facts. Your only interest is to seek the truth from the evidence in the case.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.11 (1998).

17

13.INSTRUCTIONS ON DELIBERATION13

When you retire to the jury room. to deliberate, you may take with you [this charge and] the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. [Return this charge together with your written answers to the questions.] Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.12 (1998).

18

14.BIAS-CORPORATE PARTY INVOLVED14

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.13 (1998).

19

CVisPDF - www.fesisi.com

15.LIMITING INSTRUCTION15

You will recall that during the course of this trial I instructed you that I admitted ' certain testimony [and certain exhibits] for a limited purpose and I instructed you that you may consider some testimony [and documents] as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. [Specific limiting instructions may be repeated as appropriate.]

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.15 (1998).

20

16.IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS16

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial!

This charge may be elaborated on in the following manner:

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.16 (1998).

21

CVISPDF - www.fenixx.com

17. IMPEACHMENT BY WITNESSES' FELONY CONVICTION[17]

     In weighing the credibility of a witness, you may consider the fact that he has previously been convicted of a felony [a crime involving dishonesty or false statement]. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

--------

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.17 (1998).

22

18. CONSIDERATION OF THE EVIDENCE[18]

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.18 (1998).

23

19. EXPERT WITNESSES19

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field-he is called an expert witness-is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.19 (1998).

CitaPDF - www.fasiss.com

20. BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN20

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiffs claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

_____

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.20 (1998).

25

21. USE OF NOTES TAKEN BY JURORS21

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

_____

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.21 (1998).

22. CAUTIONARY INSTRUCTION ON DAMAGES[22]

You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.22 (1998).

27

CVisPDF - www.fastio.com

23.DEPOSITION TESTIMONY23

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read (shown) to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you insofar as possible in the same way] as if the witness had been present and had testified from the witness stand in court.

---

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.23 (1998).

24.GENERAL INSTRUCTIONS FOR CHARGE24

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. [Do not decide who you think should win and then answer the questions accordingly.] Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater

weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.) I

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

[The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.]

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §3.1 (1998).

29

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field-he is called an expert witness-is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

[Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. [You may now retire to the jury room to conduct your deliberations.]

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

30

CISPDF - www.fenlio.com

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a claim of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field--he is called an expert witness--is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When words are used in the questions in a sense which varies from the meaning

31

commonly understood, you will be given in this charge a proper legal definition, which you are bound to accept in place of any other definition or meaning.

Answer "Yes" or "No" unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find a preponderance of the evidence supports a "Yes" answer, then answer "No".

**"Preponderance of the evidence"** means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

**"Proximate cause"** that cause, which in a natural and continuous sequence produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

**"Ordinary care"** means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

If you find that the Defendants are liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff s damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole- -that is, to compensate the Plaintiff for the damaged that the Plaintiff has suffered. [Compensatory damages are not limited to expenses that the Plaintiff may have incurred because of his injury. If the Plaintiff wins, he is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of the Defendants' conduct.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendants  allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff s damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

32

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

### A.   DAMAGES ACCRUED

If you find for the Plaintiffs, they are entitled to recover an amount that will fairly compensate them for any damages they have suffered to date.

### B.   CALCULATION OF FUTURE DAMAGES

If you find that the Plaintiffs are reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.

### C.   REDUCTION OF FUTURE DAMAGES TO PRESENT VALUE

An award of future damages necessarily requires that payment be made now for a loss that Plaintiffs will not actually suffer until some future date. If you should find that the Plaintiffs are entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1.   You should reduce any award by the amount of the expenses that the Plaintiff would have incurred in making those earnings.

2.   If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the Plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award an amount representing future loss of earnings is more valuable to the Plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money.

33

CutePDF - www.fenico.com

Thus you should adjust the amount of any award of future loss of earnings by the amount of interest that the Plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

You may award damages for any bodily injury that the Plaintiffs sustained and any pain and suffering, disfigurement, mental anguish, or loss of capacity for enjoyment of life that **JUAN JOSE GUAJARDO** experienced in the past or will experience in the future as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate the Plaintiff for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

## D.   MEDICAL EXPENSES

The reasonable expense of hospitalization and medical care and treatment that **JUAN JOSE GUAJARDO** required because of his injuries which were caused by the Defendant's wrongful conduct.

34

25. ALTERNATIVE EXCESSIVE FORCE SECTION 1983 JURY CHARGE

THE PLAINTIFFS IN THIS ACTION CLAIM THAT THE DEFENDANT VIOLATED **JUAN JOSE GUAJARDO'S** CONSTITUTIONAL RIGHTS WHEN HE USED EXCESSIVE AND UNNECESSARY FORCE AGAINST THE PLAINTIFFS. AS A RESULT OF THE DEFENDANT'S ACTIONS, THE PLAINTIFFS CLAIM THAT **JUAN JOSE GUAJARDO** SUFFERED INJURY FOR WHICH THEY SEEK DAMAGES.

THE DEFENDANT DENIES THAT ANY OF HIS ACTIONS DURING THE TIME IN QUESTION VIOLATED **JUAN JOSE GUAJARDO'S** CONSTITUTIONAL RIGHTS. THE DEFENDANT CLAIMS THAT HE WAS ACTING IN GOOD FAITH AND WITH PROBABLE CAUSE. THE DEFENDANT FURTHER CLAIMS THAT HE WAS NOT GUILTY OF ANY FAULT OR WRONGDOING IN REGARD TO THE INCIDENT SUED UPON.

SECTION 1983 OF TITLE 42 OF THE UNITED STATES CODE PROVIDES THAT ANY CITIZEN MAY SEEK REDRESS IN THIS COURT BY WAY OF DAMAGES AGAINST ANY PERSON WHO, UNDER COLOR OF STATE LAW OR CUSTOM, INTENTIONALLY DEPRIVES THAT CITIZEN OF ANY RIGHT, PRIVILEGES, OR IMMUNITIES SECURED OR PROTECTED BY THE CONSTITUTION OR LAWS OF THE UNITED STATES.

IN ORDER TO PROVE HIS CLAIM UNDER THIS STATUTE, THE PLAINTIFFS MUST ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE EACH OF THE FOLLOWING ELEMENTS:

(1)   THE DEFENDANT INTENTIONALLY COMMITTED ACTS WHICH OPERATED TO DEPRIVE THE PLAINTIFF OF A RIGHT SECURED BY THE CONSTITUTION OF THE UNITED STATES;

(2)   THE DEFENDANT ACTED UNDER COLOR OF THE AUTHORITY OF THE STATE OF TEXAS;

(3)   THAT THE DEFENDANT'S ACTS WERE THE LEGAL CAUSE OF THE PLAINTIFF'S DAMAGES.

IN THIS CASE YOU ARE INSTRUCTED THAT THE DEFENDANT WAS ACTING UNDER COLOR OF STATE LAW AT THE TIME OF THE ACTS COMPLAINED OF. PLAINTIFFS ALLEGE THAT THE DEFENDANT USED EXCESSIVE FORCE AGAINST **JUAN JOSE GUAJARDO** AT THE BROWNSVILLE CITY JAIL.

35

UNITED STATES CITIZENS ARE PROTECTED AGAINST THE USE OF EXCESSIVE FORCE BY THE FOURTH AMENDMENT TO THE CONSTITUTION. IN ORDER TO PROVE THAT THE DEFENDANT USED EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT, THE PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE:

1.   SOME HARM, THAT

2.   RESULTED DIRECTLY AND ONLY FROM THE USE OF FORCE THAT WAS CLEARLY EXCESSIVE TO THE NEED; AND THE EXCESSIVENESS OF WHICH WAS

3.   OBJECTIVELY UNREASONABLE IN LIGHT OF THE FACTS AND CIRCUMSTANCES AT THE TIME.

IF THE PLAINTIFFS FAIL TO PROVE ANY ONE OF THESE ELEMENTS, YOU MUST FIND FOR THE DEFENDANT.

SOME OF THE THINGS YOU MAY WANT TO CONSIDER IN DETERMINING WHETHER THE DEFENDANT(S) USED EXCESSIVE FORCE ARE (1) THE EXTENT OF THE INJURY SUFFERED, (2) THE NEED FOR THE APPLICATION OF FORCE, (3) THE RELATIONSHIP BETWEEN THE NEED AND THE AMOUNT OF FORCE USED, (4) THE THREAT REASONABLY PERCEIVED BY THE RESPONSIBLE OFFICIALS, AND (5) ANY EFFORTS MADE TO TEMPER THE SEVERITY OF A FORCEFUL RESPONSE. INJURIES WHICH RESULT FROM, FOR EXAMPLE, AN OFFICER'S USE OF FORCE TO OVERCOME RESISTANCE TO ARREST DO NOT INVOLVE CONSTITUTIONALLY PROTECTED INTERESTS. AN OFFICER'S USE OF EXCESSIVE FORCE DOES NOT GIVE CONSTITUTIONAL PROTECTION AGAINST INJURIES THAT WOULD HAVE OCCURRED ABSENT THE EXCESSIVE FORCE.

---

25.  Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), §10.2 (1999).

THE REASONABLENESS OF A PARTICULAR USE OF FORCE MUST BE JUDGED FROM THE PERSPECTIVE OF A REASONABLE OFFICER ON THE SCENE, RATHER THAN WITH THE 20/20 VISION OF HINDSIGHT. THE NATURE OF REASONABLENESS MUST EMBODY ALLOWANCE FOR THE FACT THAT POLICE OFFICERS ARE OFTEN FORCED TO MAKE SPLIT-SECOND JUDGMENTS--IN CIRCUMSTANCES THAT ARE TENSE, UNCERTAIN, AND RAPIDLY EVOLVING--ABOUT THE AMOUNT OF FORCE THAT IS NECESSARY IN A PARTICULAR SITUATION.

THIS REASONABLENESS INQUIRY IS AN OBJECTIVE ONE:  THE QUESTION IS WHETHER THE OFFICER'S ACTIONS ARE OBJECTIVELY REASONABLE IN LIGHT OF THE FACTS AND CIRCUMSTANCES CONFRONTING THEM, WITHOUT REGARD TO THEIR UNDERLYING INTENT OR MOTIVATION.

IF YOU FIND THAT PLAINTIFFS HAVE PROVEN THEIR CLAIM, YOU MUST THEN CONSIDER THE DEFENDANT'S DEFENSE THAT HIS CONDUCT WAS OBJECTIVELY REASONABLE IN LIGHT OF THE LEGAL RULES CLEARLY ESTABLISHED AT THE TIME OF THE INCIDENT IN ISSUE AND THAT THE DEFENDANT IS THEREFORE NOT LIABLE.

POLICE OFFICERS ARE PRESUMED TO KNOW ABOUT THE CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS OF CITIZENS. (HERE, ANNOUNCE THE COURT'S RULING ON WHAT CONSTITUTIONAL RIGHT INVOLVED WAS CLEARLY ESTABLISHED.)

IF, AFTER CONSIDERING THE SCOPE OF DISCRETION AND RESPONSIBILITY GENERALLY GIVEN TO POLICE OFFICERS IN THE PERFORMANCE OF THEIR DUTIES, AND AFTER CONSIDERING ALL OF THE SURROUNDING CIRCUMSTANCES OF THE CASE AS THEY WOULD HAVE REASONABLY APPEARED AT THE TIME OF THE ARREST, YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFFS HAVE PROVED EITHER (1) THAT THE DEFENDANT WAS PLAINLY INCOMPETENT OR THAT (2) HE KNOWINGLY VIOLATED THE LAW REGARDING THE PLAINTIFFS' CONSTITUTIONAL RIGHTS, YOU MUST FIND FOR THE PLAINTIFFS. IF, HOWEVER, YOU FIND THAT THE DEFENDANT HAD A REASONABLE

25.  Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §10.2 (1999).

CMsPDF - www.twola.com

BELIEF THAT HIS ACTIONS DID NOT VIOLATE THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF, THEN YOU CANNOT FIND HIM LIABLE EVEN IF THE PLAINTIFF'S RIGHTS WERE IN FACT VIOLATED AS A RESULT OF THE DEFENDANT'S OBJECTIVELY REASONABLE ACTION.

THE PLAINTIFFS MUST ALSO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE ACT OR FAILURE TO ACT BY THE DEFENDANT WAS A CAUSE-IN-FACT OF THE DAMAGES THE PLAINTIFF SUFFERED.  AN ACT OR A FAILURE TO ACT IS A CAUSE-IN-FACT OF AN INJURY OR DAMAGES IF IT APPEARS FROM THE EVIDENCE THAT THE ACT OR OMISSION PLAYED A SUBSTANTIAL PART IN BRINGING ABOUT OR ACTUALLY CAUSING THE INJURY OR DAMAGES..  THE PLAINTIFF MUST ALSO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE ACT OR FAILURE TO ACT BY THE DEFENDANT WAS A PROXIMATE CAUSE OF THE DAMAGES PLAINTIFFS SUFFERED.  AN ACT OR OMISSION IS A PROXIMATE CAUSE OF THE PLAINTIFFS' INJURIES OR DAMAGES IF IT APPEARS FROM THE EVIDENCE THAT THE INJURY OR DAMAGE WAS A REASONABLY FORESEEABLE CONSEQUENCE OF THE ACT OR OMISSION.

IF YOU SHOULD FIND FOR THE PLAINTIFFS AND AGAINST THE DEFENDANT, THEN YOU MUST DECIDE THE ISSUE OF DAMAGES.

25.  Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), §10.2 (1999).

38

## 26.  DAMAGES

### CONSIDER DAMAGES ONLY IF NECESSARY

If the Plaintiffs have proven their claim against the Defendant by a **preponderance of the evidence**, you must determine the damages to which the Plaintiffs are entitled.  You should not interpret the fact that I have given instructions about the Plaintiffs' damages as an indication in any way that I believe that the Plaintiffs should, or should not, win this case.  It is your task first to decide whether the Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the Defendant is liable and that the Plaintiffs are entitled to recover money from the Defendant.

25.  Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), §10.2 (1999).

## 27.  <u>COMPENSATORY DAMAGES</u>

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole--that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered. [Compensatory damages are not limited to expenses that the Plaintiff may have incurred because of his injury. If the Plaintiff wins, he is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he has suffered because of the defendant's conduct.]

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. [Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant.] You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), §15.1 (1999).

40

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guess work. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §15.2 (1999).

41

## 28. <u>PAIN, SUFFERING, AND EMOTIONAL DISTRESS</u>

In assessing compensatory damages, you may include an amount for pain, suffering, and emotional distress that you determine to be reasonable compensation in the light of all the evidence in this case. We all know that the nature and degree of pain and mental distress may differ widely from person to person. Consequently, the law does not try to fix, nor does the law permit, a precise formula by which pain or emotional distress as a element of compensatory damages may be measured and reduced to dollars and cents. Instead of providing a formula for measuring these damages to the common sense and good judgment of you, the jurors. You should arrive at a monetary amount, in the light of your common knowledge and general experience, and without regard to sentiment, that you deem to be fair, reasonable, and adequate. In other words, without favor, without sympathy, and without any precise formula, you as jurors must arrive at a sum of money that will justly, fairly, and adequately compensate the Plaintiff for the actual pain, suffering, and emotional distress you find that he endured as the direct result of any constitutional deprivation he may have suffered. The amount of damages should be neither excessive nor inadequate. It should be fair, just, and reasonable.

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §15.2 (1999).                42

## 29. CALCULATION OF PAST AND FUTURE DAMAGES

### A.    DAMAGES ACCRUED

If you find for the Plaintiffs, they are entitled to recover an amount that will fairly compensate them for any damages the have suffered to date.

### B.    CALCULATION OF FUTURE DAMAGES

If you find that the Plaintiffs are reasonably certain to suffer damages in the future from their injuries, then you should award them the amount you believe would fairly compensate them for such future damages.

### C.    REDUCTION OF FUTURE DAMAGES TO PRESENT VALUE

An award of future damages necessarily requires that payment be made now for a loss that Plaintiffs will not actually suffer until some future date.  If you should find that the Plaintiffs are entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1.    You should reduce any award by the amount of the expenses that **JUAN JOSE GUAJARDO** would have incurred in making those earnings.

Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), **§15.2** (1999).
43

2.   If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that **JUAN JOSE GUAJARDO** could earn on the amount of the award if he made a relatively risk-free investment.  The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it.   It is more valuable because **JUAN JOSE GUAJARDO** can earn interest on it for the period of time between the date of the award and the date he would have earned the money.   thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the Plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

Authority:   Fifth Circuit, Pattern Jury Instructions (Civil Cases), §15.3 (1999).                                          44

## 30. INJURY/PAIN/DISABILITY/DISFIGUREMENT/LOSS OF

## CAPACITY FOR ENJOYMENT OF LIFE

You may award damages for any bodily injury that the Plaintiffs sustained and any pain and suffering, [disability], [disfigurement], [mental anguish], [and/or], [loss of capacity for enjoyment of life] that the Plaintiff experienced in the past [or will experience int he future] as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate the Plaintiffs for the damages they have suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), $15.3 (1999).

## 31.  MEDICAL EXPENSES

### A.    FOR MAJOR PLAINTIFF

The reasonable [value] [expense] of [hospitalization and] medical [and nursing] care and treatment that the Plaintiff will require because of his injuries which were caused by the Defendant's wrongful conduct.

### B.    FOR PLAINTIFF'S MINOR CHILD

The reasonable [value] [expense] of [hospitalization and] medical [and nursing] care and treatment that the Plaintiff [reasonably obtained for his child int he past] [will obtain for his child in the future] until the child reaches the age of majority.

### C.    FOR MINOR PLAINTIFF (AFTER MAJORITY)

The reasonable [value] [expense] of [hospitalization and] medical [and nursing] care and treatment that the minor Plaintiff reasonably will require after he reaches the age of majority.

Authority:  Fifth Circuit, Pattern Jury Instructions (Civil Cases), $15.4 (1999).

CVisPDF - www.texisi.com

## 32. WRONGFUL DEATH--ESTATE DAMAGES

**1.    LOST EARNINGS:**


The estate's loss of earnings of **JUAN JOSE GUAJARDO** from the date of injury to the date of death, less any amount you award for a survivor's loss of monetary support during that period.


**2.    LOST ACCUMULATIONS**


The estate's loss of net accumulations, that is, that part of the decedent's net income from [salary] [business] after taxes, including pension benefits [but excluding income from investments continuing beyond death] that **JUAN JOSE GUAJARDO**, after paying personal expenses and monies for the support of the his survivors, would have remaining as part of the estate if **JUAN JOSE GUAJARDO** had lived his normal life expectancy.


**3.    MEDICAL OR FUNERAL EXPENSES**


Medical or funeral expenses resulting from the **JUAN JOSE GUAJARDO's** injury and/or death that [have become a charge against the decedent's estate] [were paid by or on behalf of the decedent by one other than a survivor].

CVisPDF - www.verypdf.com

## 33. <u>WRONGFUL DEATH--SURVIVORS' DAMAGES</u>

1.    LOST SUPPORT AND SERVICES


The loss of **JUAN JOSE GUAJARDO's** support and services that the Plaintiffs have sustained [and will sustain in the future] because of **JUAN JOSE GUAJARDO's** death. You must determine the duration of any future loss by considering the joint life expectancy of _____ and the Plaintiffs. Joint life expectancy means the number of years that both ___ and ___ could have been expected to be alive together, considering the ages and life expectancy of each at the time of **JUAN JOSE GUAJARDO's** death. [Joint life expectancy means the number of years that the decedent could have expected to be alive during which the Plaintiffs would have been a minor child.]


In evaluating past and future loss of support and services, you must consider the Plaintiffs' relationship to **JUAN JOSE GUAJARDO**, the amount of **JUAN JOSE GUAJARDO's** probable net income available for distribution to the Plaintiffs and the replacement value of **JUAN JOSE GUAJARDO's** services to the Plaintiffs. ["Support" includes contributions in kind as well as sums of money. "Services" means tasks that _____ regularly performed that now will be a necessary expense to the Plaintiffs because of **JUAN JOSE GUAJARDO's** death.]


2.    MEDICAL AND FUNERAL EXPENSES


[Medical] [and/or] [funeral] expenses due to **JUAN JOSE GUAJARDO's** death paid by the Plaintiffs.


3.    SURVIVING SPOUSE


The Plaintiffs' loss of companionship and protection, and his (her) mental pain and suffering that resulted from **JUAN JOSE GUAJARDO's** death. In determining the duration of these losses, you must consider the joint life expectancy of the decedent and the Plaintiffs.

48

4.    SURVIVING MINOR CHILD


The loss of parental companionship, instruction, and guidance, and the mental pain and suffering of [name all minor children] sustained because of **JUAN JOSE GUAJARDO's** death.  In determining the duration of these losses, you must consider the joint life expectancy of the decedent and [the surviving children] [each of the surviving children].


5.    SURVIVING PARENT OF MINOR CHILD


The Plaintiffs' mental pain and suffering resulting from the death of their minor children.  In determining the duration of this mental pain and suffering, you must consider the life [expectancy] [expectancies] of the Plaintiffs and the minor children.

## 34. <u>PROPOSED INTERROGATORIES</u>

### <u>INTERROGATORY NO. 1</u>:

Did **EDUARDO TREVIÑO** use excessive force against **JUAN JOSE GUAJARDO**, Decedent?

Answer **"YES"** or **"NO"**.

**ANSWER:** _____

If you answer **"YES"** to **INTERROGATORY NO. 1**, then answer **INTERROGATORY NO. 2**. Otherwise, do not answer **INTERROGATORY NO. 2**.

50

## INTERROGATORY NO. 2:

Did **JUAN JOSE GUAJARDO,** Decedent, suffer some harm as a result of **EDUARDO TREVIÑO's** use of excessive force?

Answer **"YES"** or **"N0"**.

**ANSWER:** _____

If you answer **"YES"** to **INTERROGATORY NO. 2,** then answer **INTERROGATORY NO. 3** and **INTERROGATORY NO. 4.**  Otherwise, do not answer **INTERROGATORY NO. 3** and/or **INTERROGATORY NO. 4.**

51

## INTERROGATORY NO. 3:

What sum of money, if any, will reasonably and fairly compensate the following persons?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not include damages for one element in any other element.  Do not include interest on any amount of damages you find.

### A.   MARIA F. GUAJARDO

    1.   THE PECUNIARY LOSS SUFFERED BY HER

                _____

    2.   HER LOSS OF SOCIETY AND COMPANIONSHIP

                _____

    3.   HER MENTAL PAIN AND SUFFERING THAT RESULTED FROM HER SON'S DEATH

                _____

**B.   THOMAS GUAJARDO, III**

    1.    THE PECUNIARY LOSS SUFFERED BY HIM

                _____

    2.    HIS LOSS OF SOCIETY AND COMPANIONSHIP

                _____

    3.    HIS MENTAL PAIN AND SUFFERING THAT RESULTED FROM HIS FATHER'S DEATH

                _____

**C.   CYNTHIA GUAJARDO**

    1.    THE PECUNIARY LOSS SUFFERED BY HER

                _____

    2.    HER LOSS OF SOCIETY AND COMPANIONSHIP

                _____

    3.    HER MENTAL PAIN AND SUFFERING THAT RESULTED FROM HER FATHER'S DEATH

                _____

D.    **CAROLINE GUAJARDO**

    1.    THE PECUNIARY LOSS SUFFERED BY HER

          _____

    2.    HER LOSS OF SOCIETY AND COMPANIONSHIP

          _____

    3.    HER MENTAL PAIN AND SUFFERING THAT RESULTED FROM HER FATHER'S DEATH

          _____

E.    **ALEJANDRO GARCIA**

    1.    THE PECUNIARY LOSS SUFFERED BY HIM

          _____

    2.    HIS LOSS OF SOCIETY AND COMPANIONSHIP

          _____

    3.    HIS MENTAL PAIN AND SUFFERING THAT RESULTED FROM HIS FATHER'S DEATH

          _____

54

# INTERROGATORY NO. 4

What sum of money, if any, will reasonably and fairly compensate the

**ESTATE OF JUAN JOSE GUAJARDO?**:

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

**ANSWER IN DOLLARS AND CENTS, IF ANY:**

1.    **JUAN JOSE GUAJARDO's** pain and suffering          $_____

2.    **JUAN JOSE GUAJARDO's** burial and funeral expenses    $_____

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

SIGNED: _____

TIME: _____

_____
**JUDGE PRESIDING**

## CERTIFICATE

We, the Jury, have answered the above and foregoing issues as herein indicated, and herewith return same into Court as our verdict.

(To be signed by presiding juror if unanimous)

_____

**PRESIDING JUROR**

(To be signed by those rendering the verdict if not unanimous)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

57

# Exhibit "H"

## Plaintiffs' Proposed Questions on Voir Dire of Jury Panel

CVisPDF – www.fastio.com



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

MARIA F. GUAJARDO, INDIVIDUALLY &
AS ADMINISTRATOR OF THE ESTATE &
OF JUAN JOSE GUAJARDO, AND AS &
GUARDIAN OF THOMAS GUAJARDO, &
III, CYNTHIA GUAJARDO, AND &
CAROLINE GUAJARDO, MINOR &    CIVIL ACTION NO. 97-215
CHILDREN AND ALEXANDRO GARCIA &
&
VS. &
&
EDUARDO TREVINO, INDIVIDUALLY &

---

### PLAINTIFFS' PROPOSED QUESTIONS ON VOIR DIRE OF JURY PANEL

---

COME NOW, MARIA F. GUAJARDO, INDIVIDUALLY, and **as**
**ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO,** and as **GUARDIAN**
**OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO,** and **CAROLINE GUAJARDO,**
**MINOR CHILDREN** and **ALEJANDRO GARCIA,** Plaintiffs in the above-styled
and numbered civil action, and respectfully request that this
Honorable Court propound to the jury panel during voir dire and/or
jury selection the questions attached hereto as Exhibit "A".

Respectfully submitted,

**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas  78520
Telephone No.:  (956) 541-3820
Facsimile No.:  (956) 541-7694

BY: _____
VICTOR QUINTANILLA
State Bar No. 00786181
Federal Id. No. 16073

**ATTORNEY-IN-CHARGE FOR**
**PLAINTIFFS MARIA F.**
**GUAJARDO, INDIVIDUALLY,**
and as ADMINISTRATOR OF
**THE ESTATE OF JUAN JOSE**
**GUAJARDO, and as GUARDIAN**
**OF THOMAS GUAJARDO, III,**
**CYNTHIA GUAJARDO, and**
**CAROLINE GUAJARDO, MINOR**
**CHILDREN**

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA**, hereby certify that on this 30TH day of March, 2001, a true and correct copy of the foregoing **Plaintiffs' Proposed Questions on Voir Dire of Jury Panel** was served via hand-delivery in accordance with the Federal Rules of Civil Procedure to Hon. George C. Kraehe, **WILLETTE, GUERRA &** **TREVINO, L.L.P.,** International Plaza, Suite 460, 3505 Boca Chica Blvd., Brownsville, Texas, 78521.

_____
VICTOR QUINTANILLA

2

EXHIBIT "A"

1.  Is any member of the panel familiar with any facts of the occurrence in question which involved the use of excessive, unnecessary, and unlawful force against **JUAN JOSE GUAJARDO** on or about April 8, 1997 at the Municipal Jail in Brownsville, Cameron County, Texas?

2.  Is there any member of the panel or a member of his family who has been involved in an altercation with police officers, any other enforcement agency, the **CITY OF BROWNSVILLE**, or the **CITY OF BROWNSVILLE POLICE DEPARTMENT**?  If so, state the identify of such person, injuries received, whether or not any claims were made because of such altercation, regardless of whether or not the claim included a lawsuit and regardless of whether or not a lawyer was hired to represent you?

3.  Is there any member of this jury panel who has worked as a jailer, correctional officer or detention officer or whose spouse has worked as a jailer, correctional officer or detention officer?

4.  Is there any member of the jury panel who is or has worked for the **CITY OF BROWNSVILLE** or the **CITY OF BROWNSVILLE POLICE DEPARTMENT** or has a close member of your family who was or is employed with the **CITY OF BROWNSVILLE** or the city of **BROWNSVILLE POLICE DEPARTMENT**?

5.  Do any of you at the present time work as a jailer or correctional officer or detention officer for the **CITY OF BROWNSVILLE**, or for the City of **BROWNSVILLE POLICE DEPARTMENT**, or have you at any time in the past done so?

6.  Is there any member of this jury panel who presently has or has had in the past any altercation with any police officer employed the **CITY OF BROWNSVILLE**?

7.  Is there any member of this jury panel who presently has or has had in the past any altercations with any police officer employed the **CITY OF BROWNSVILLE POLICE DEPARTMENT**?

8.  Has any member of this jury panel ever been a Defendant in a lawsuit?

3

9.  Has any member of this jury panel ever had a claim for money damages made against them, whether it resulted in a lawsuit or not?

10. Has any member of this jury panel heard of the "Litigation Crisis" known as Lawsuit Abuse and do you believe that such crisis exists?

11. Has any member of this jury panel ever been the owner of a business, large or small, at any time in the past?

12. Has any member of this jury panel ever been a witness in any kind of a lawsuit, whether it is not pending or has been disposed of by settlement or trial in the past?

13. Does any member of this jury panel have any prior jury service either in the United States District Court or in a state court?  If so, what kind of case did you serve on?

14. Has any member of this jury panel been represented by any of the lawyers in this case?

    VICTOR QUINTANILLA of the LAW OFFICES OF ERNESTO GAMEZ, JR., P.C., Counsel for Plaintiffs;

    ERNESTO GAMEZ, JR. of the LAW OFFICES OF ERNESTO GAMEZ, JR., P.C., Counsel for Plaintiffs;

    CHARLES WILLETTE, JR., Counsel for Defendants; or

    GEORGE C. KRAEHE, Counsel for Defendants;

15. Is there anyone on the jury panel who would not or could not award damages in a substantial sum, even if the evidence supported such an award?

16. Is there any member of this jury panel who has any prejudice or feeling against suits against jailers or correctional officers or detention officers or who has had any experience which would cause him or her to have a feeling, bias, prejudice or opinion before hearing any of the evidence in the instant case?

17. Is there any member of this jury panel who has any quarrel with the rule of law that Plaintiffs have to prove their case only by a preponderance of the evidence and not beyond a reasonable doubt or to a moral certainty, as in a criminal case?

18. Is there any member of this jury panel who for any reason, whether asked or not, could not be fair and impartial in this case if chosen as a juror?

19. Is there any member of this jury panel who feels that people should not file lawsuits for either personal injuries or wrongful death?

20. Is there any member of this jury panel who knows or is personally acquainted with the Defendant in this civil action, **EDUARDO TREVIÑO?**

21. Is there any member of this jury panel who knows or is personally acquainted with the family of the Defendant in this civil action, **EDUARDO TREVIÑO?**

CNVPDF - www.tesito.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY | & | |
| AS ADMINISTRATOR OF THE ESTATE | & | |
| OF JUAN JOSE GUAJARDO, AND AS | & | |
| GUARDIAN OF THOMAS GUAJARDO, | & | |
| III, CYNTHIA GUAJARDO, AND | & | |
| CAROLINE GUAJARDO, MINOR | & | CIVIL ACTION NO. 97-215 |
| CHILDREN AND ALEJANDRO GARCIA | & | |
| | & | |
| VS. | & | |
| | & | |
| EDUARDO TREVIÑO, INDIVIDUALLY | & | |

---

### PLAINTIFFS' MOTION IN LIMINE

---

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS:

COME NOW, **MARIA F. GUAJARDO, INDIVIDUALLY,** and **as
ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO,** and **as
GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO,** and **CAROLINE
GUAJARDO, MINOR CHILDREN,** and **ALEJANDRO GARCIA,** Plaintiffs in the
above-styled and numbered civil action, before the commencement
of the Voir Dire examination of the jury panel, and respectfully
move that counsel for **EDUARDO TREVIÑO,** Defendant, and through
such counsel any and all defense witnesses, be instructed by
appropriate Order of this Honorable Court to refrain from making
any mention or interrogation, directly or indirectly, in any,
manner whatsoever, concerning any of the matters hereinafter set
forth, without first approaching the Bench and obtaining a ruling
from the Court outside the presence and the outside hearing of
all prospective jurors and jurors ultimately selected in this
case, in regard to any alleged theory of admissibility of such

matters in the trial of this cause would result in irreparable prejudice and harm to Plaintiffs' case, which no instruction by the Court to the Jury could cure, to wit:

1.

That Plaintiffs, including, **JUAN JOSE GUAJARDO**, received, have received, will receive or are receiving benefits of any kind or character from a collateral source, including but not limited to the following collateral source benefits:

A.   Benefits under private insurance policy;

B.   Benefits under insurance policies generally;

C.   Benefits from voluntary contribution by the employer of Plaintiffs;

D.   Benefits from sick leave and/or vacation;

E.   Benefits from the Federal Government, including Social Security, Veteran's Administration, tax exemption or military medical benefits;

F.   Services furnished without charge;

G.   The fact of any suit or the settlement or amount therein related to any third party claims arising out of the incident made the basis of this lawsuit;

H.   Compensation for time not actual worked; and

I.   Benefits from pensions.

J.   Food stamps, supplemental income, AFDC benefits, or Lone Star card, or any other type of welfare benefits.

2.

To not attempt to admit into evidence any photographs, documents, videotape recordings, medical records and/or other tangible items which Defendant has not previously produced to Plaintiffs, by and through their counsel, in compliance with

2

either discovery requests, Texas Rules of Civil Procedure, or
Texas Rules of Civil Evidence, Federal Rules of Civil Procedure,
or Federal Rules of Civil Evidence.

### 3.

That Defendant not call any witnesses or individuals which
have not been disclosed to Plaintiffs, by and through counsel, at
least thirty (30) days before trial or contained in Defendant's
Witness List.  See Rule 215(5) of the Texas Rules of Civil
Procedure; Morrow v. H.E.B., 714 S.W.2d 297 (Tex. 1986); Brewer
v. Islom, 704 S.W.2d 911 (Tex. Civ. App. - Dallas 1986, no writ).

### 4.

That no mention be made or alluded to by Defendant's counsel
or Defendant's witnesses as to the existence or contents of any
documents, records, reports or affidavits which have not been
properly admitted into evidence without the author or custodian
thereof present, either in person, by Affidavit, or by
deposition, and subject to cross-examination or objection by
Plaintiffs' counsel, and whose custodian of records has not been
disclosed to Plaintiffs, by and through counsel, in response to
either Interrogatories, Requests for Production, and/or Requests
for Disclosure.

### 5.

That no mention be made or alluded to by Defendant's counsel
of **JUAN JOSE GUAJARDO**'s criminal history in that its probative
value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury.  (See

3

CIMPDF - www.texisi.com

Rule 403 of the Federal Rules of Civil Procedure).

6.

That any recovery by the Plaintiffs either would or would not be subject to Federal Income taxation or any other form of taxation. (See M.K. and T. Railroad v. McFerrin, 291 S.W.2d 931, 156 Tex. 69 (Tex. 1955).

7.

The date that Plaintiffs retained counsel. The name of any other lawyer retained or consulted by Plaintiffs and whether such lawyer or any other lawyer referred it to the undersigned attorneys, for the reason that said information is not relevant to any of the factual and/or legal issues involved in this civil action.

8.

That Defendant and any witness called or named by Defendant not repeat or utter any statements made out-of-court that constitute hearsay, as identified in **Rules 801 and 802 of the Federal Rules of Civil Evidence,** unless it can be shown that there is a valid exception to the hearsay rule which would allow its inclusion and said exceptions are identified outside the presentence of the Jury. (See Rules 801 and 802 of the Federal Rules of Civil Procedure).

9.

That the opinions or any references to any opinions of experts not designated timely pursuant to the terms of either the Texas Rules of Civil Procedure, or the Federal Rules of Civil

4

Procedure, including any opinions of experts that are based, in whole or in part, on consulting experts' opinions if any of the consulting experts who were not identified or designated not be mentioned, referenced to, or alluded to Defendant's counsel and/or Defendant's witnesses.  (See Builder's Equipment Co. v. Onion, 713 S.W.2d 786, 788 (Tex. App. - San Antonio 1986, no writ); Brewer v. Ison, 704 S.W.2d 911, 912 (Tex. App. - Dallas 1986, no writ); Rules 192, 193, and 195 of the Texas Rules of Civil Procedure); Rule 26 of the Federal Rules of Civil Procedure).

## 10.

That prior to admitting or tendering exhibits into evidence that Defendant by and through his counsel, remove and/or omit all hearsay statements that have no exception to the hearsay rule and/or are irrelevant.

## 11.

That Defendant, Defendant's witnesses, and/or Defendant's counsel, be precluded from informing the Jury that any judgment in this case may or may not be subject to pre-judgment interest.

## 12.

That Defendant, by and through his respective counsel, not mention or state to the Jury the probable testimony of a witness who is absent, unavailable or not called to testify in this cause.  (See General Motors Corporation v. Bryant, 582 S.W.2d 521, 527 (Tex. Civ. App. - Houston [1st Dist.] 1979, writ ref'd n.r.e.).

5

13.

Any reference or mention by Defendant's counsel and/or his representatives regarding whether or not a settlement offer has been made or whether failure to make settlement has made it necessary to bring this case to trial. (See General Motors Corp. v. Simmons, 558, S.W.2d 855 (Tex. 1977); Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1 (Tex. 1986).

14.

Any testimony or reference to any testimony by any individual who Defendant has not identified as having knowledge of relevant facts and the correct address and telephone number not furnished in answer and/or response to valid and timely propounded Interrogatories by Plaintiffs pursuant to either the Texas Rules of Civil Procedure or the Federal Rules of Civil Procedure. (See Yeldell v. Holiday, 701 S.W.2d 243 (Tex. 1985).

15.

That there will probably be testimony of certain facts by witnesses who are not later called to testify at trial. Sanders v. St. Paul Fire & Marine Ins. Co., 429 S.W.2d 516 (Tex. Civ. App. - Texarkana 1968, writ ref'd n.r.e.).

16.

That Plaintiffs have had unrelated, prior or subsequent claims, suits or settlements, or the amounts thereof since there is no evidence that Plaintiffs have made any prior unrelated claims, suits, or settlements.

6

17.

That witnesses have been involved in any other lawsuits or have been disciplined in their respective employments or the effects thereof as same is totally irrelevant to any factual issue in this case.

18.

That **JUAN JOSE GUAJARDO** had any prior arrests and/or convictions not a felony or involving moral turpitude under Rule 609 of the Federal Rules of Civil Evidence.

19.

That any medical expert's testimony not based on reasonable medical probability be excluded and precluded from mention before the jury.

20.

That this Motion has been filed or any ruling by the Court in response to this Motion, suggesting or implying to the Jury that the Plaintiffs have moved to prohibit proof or that the Court has excluded proof of any particular matter.

21.

That any written statement that tends to impeach the credibility of any witness be precluded from mention unless a ruling from the Court on the competency and validity of the statement is first obtained.  Reckless disregard of this may result in highly prejudicial comments from Defendant with little or no probative basis for their impeachment.

7

22.

That Plaintiffs' pleadings not be read out loud to the jury without first obtaining a ruling as to the purpose of such reading.

23.

Any reference to Plaintiffs' pleadings that are not live or the contents therein.

24.

Any reference to Plaintiffs' financial ability and/or inability to pay any expenses not be made, alluded to, or brought forth by either Defendant, Defendant's counsel, or any witness testifying on behalf of Defendants.

25.

Any reference to Plaintiffs' relative wealth, poverty, gross or net income, since same is totally irrelevant to the issues being litigated herein.

26.

That no mention be made or alluded to by agents, employees, and/or representatives of **EDUARDO TREVIÑO**, Defendant's counsel or any witness called or named by Defendant that Plaintiffs have failed to or has not filed income tax returns in certain years, including any comments that Plaintiffs and/or their companies have not reported certain income to the Internal Revenue Service, for the reason that such is totally irrelevant to any issue in this case and such would be highly prejudicial to Plaintiffs and possibly result in criminal and/or tax invasion charges pursued

8

against the Plaintiffs.

## 27.

That this Court order the Defendant and/or his witnesses be refrained from making reference to or alluding to in any manner any to **JUAN JOSE GUAJARDO's** marital status for the reason that same is totally irrelevant to any issues being litigated in this lawsuit.

## 28.

Further, this Court should order the Defendant and/or his witnesses be refrained from commenting on any claim of privilege made by the Plaintiffs pursuant to Rule 501 of the Federal Rules of Civil Evidence.

## 29.

That any comments that tend to impeach the credibility of any expert witness be precluded from mention unless there is admissible evidence upon which to base said impeachment.

## 30.

That Defendant be instructed not to make any demands or requests before the Jury for any matters found or contained in Plaintiffs' files or their possession during the course of this trial and while in the presence of the Jury.  Further, that Defendant be instructed not make any demands or requests before the Jury that Plaintiffs agree or stipulate to any matters, during the course of this trial and while in the presence of the Jury.

9

CutePDF - www.tevas.com

## 31.

That Defendant, by and through his counsel, not read the contents of any documents, records, reports, or affidavits which have not been properly admitted into evidence without the author or custodian thereof present, either in person, by Affidavit, or by deposition, and subject to cross-examination or objection by Defendant's counsel, and whose custodian of records has not been disclosed to Plaintiffs, by and through counsel, in response to either Interrogatories, Requests for Production, and/or Requests for Disclosure.

## 32.

That no mention be made or alluded to by Defendant, Defendant's witnesses, or Defendant's counsel of **JUAN JOSE GUAJARDO**'s drug use, or use of illegal drugs, if any, in that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. (Rule 403 of Federal Rules of Civil Procedure).

## 33.

That no mention be made or alluded to by Defendant, Defendant's witnesses, or Defendant's counsel of **JUAN JOSE GUAJARDO**'s drinking habits, if any, in that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. (Rule 403 of Federal Rules of Civil Procedure).

CRAPDF - www.fenrir.com

CVISPDF – www.fastio.com

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs **MARIA F. GUAJARDO, INDIVIDUALLY,** and **as ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO,** and as **GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO,** and **CAROLINE GUAJARDO, MINOR CHILDREN,** and **ALEJANDRO GARCIA** respectfully pray that their Motion in Limine be granted and sustained by appropriate Order of this Honorable Court and further pray for any and such other relief, at law or in equity, to which they may show themselves entitled to receive.

Respectfully submitted,

LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.
777 E. Harrison Street
Brownsville, Texas 78520
Telephone No.: (956) 541-3820
Facsimile No.: (956) 541-7694

BY: _____
VICTOR QUINTANILLA
State Bar No. 00786181
Federal Id. No. 16073

Attorney-in-Charge for
Plaintiffs **MARIA F. GUAJARDO, INDIVIDUALLY,** and as **ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO,** and as **GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO,** and **CAROLINE GUAJARDO, MINOR CHILDREN,** and **ALEJANDRO GARCIA**

11

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA**, hereby certify that on this 30TH day of

March, 2001 a true and correct copy of the foregoing **Plaintiffs' Motion in Limine**

was served **Via Hand-Delivery** on opposing counsel for Defendant, Hon. George

C. Kraehe, **WILLETTE & GUERRA, L.L.P.**, 3505 Boca Chica Blvd., Suite 460

Brownsville, Texas, 78521, in accordance with the Texas Rules of Civil

Procedure.

VICTOR QUINTANILLA

12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | |
|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY &<br>AS ADMINISTRATOR OF THE ESTATE &<br>OF JUAN JOSE GUAJARDO, AND AS &<br>GUARDIAN OF THOMAS GUAJARDO, &<br>III, CYNTHIA GUAJARDO, AND &<br>CAROLINE GUAJARDO, MINOR &<br>CHILDREN AND ALEJANDRO GARCIA &<br>&<br>VS. &<br>&<br>EDUARDO TREVIÑO, INDIVIDUALLY & | CIVIL ACTION NO. 97-215 |

## ORDER ON PLAINTIFFS' MOTION IN LIMINE

Came to be considered Plaintiffs' Motion in Limine filed in the above-styled and numbered civil action. After considering the pleadings filed in this cause, and arguments of counsel, it appears that after hearing argument of counsel and review of the evidence, the Court finds the following as to the points brought forth by Plaintiffs:

1.  GRANT _____  DENY _____
2.  GRANT _____  DENY _____
3.  GRANT _____  DENY _____
4.  GRANT _____  DENY _____
5.  GRANT _____  DENY _____
6.  GRANT _____  DENY _____
7.  GRANT _____  DENY _____
8.  GRANT _____  DENY _____
9.  GRANT _____  DENY _____
10. GRANT _____  DENY _____
11. GRANT _____  DENY _____
12. GRANT _____  DENY _____
13. GRANT _____  DENY _____
14. GRANT _____  DENY _____
15. GRANT _____  DENY _____
16. GRANT _____  DENY _____
17. GRANT _____  DENY _____
18. GRANT _____  DENY _____
19. GRANT _____  DENY _____
20. GRANT _____  DENY _____

```
21.  GRANT _____     DENY _____
22.  GRANT _____     DENY _____
23.  GRANT _____     DENY _____
24.  GRANT _____     DENY _____
25.  GRANT _____     DENY _____
26.  GRANT _____     DENY _____
27.  GRANT _____     DENY _____
28.  GRANT _____     DENY _____
29.  GRANT _____     DENY _____
30.  GRANT _____     DENY _____
31.  GRANT _____     DENY _____
32.  GRANT _____     DENY _____
33.  GRANT _____     DENY _____
```

SIGNED this _____ day of _____, 2001.


_____
U. S. DISTRICT JUDGE


xc:  Hon. Victor Quintanilla
     **LAW OFFICES OF**
     **ERNESTO GAMEZ, JR., P.C.**
     777 E. Harrison Street
     Brownsville, Texas  78520

     Hon. George C. Kraehe
     **WILLETTE & GUERRA, L.L.P.**
     3505 Boca Chica Blvd., Suite 460
     Brownsville, Texas  78521

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

---

## DEFENDANT'S MOTION IN LIMINE

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Eduardo Treviño, Defendant in the above styled and numbered matter, and by and through his attorneys, file this their Motion in Limine and shows in support thereof the following:

## I.

Defendant requests that the Court enter an Order instructing Plaintiffs and their witnesses to refrain from mentioning, alluding to, or in any way referring to the following matters during trial of this case without express approval from the Court, as these matters are irrelevant to the

case at bar and/or their probative value is outweighed by their prejudicial effect:

1.  The facts and circumstances surrounding Defendant Eduardo Treviño's termination from employment with the City of Brownsville.

2.  Any reference to complaints about actions or inactions of City of Brownsville employees, including but not limited to Defendant Eduardo Treviño, other than the actions of Defendant forming the basis of Plaintiffs' claims under the Fourteenth Amendment for excessive use of force.

3.  Any reference to the Defendant's failure to call witnesses available to either party.

4.  Any reference to the filing of this Motion, its contents or the ruling of the Court on any item contained herein.

5.  Any hearsay statements and any references to hearsay statements attributed to any employee of the City of Brownsville other than Defendant Eduardo Treviño.

6.  Any reference to any complaints or occurrences or investigations of alleged unconstitutional or improper conduct by any employee or official of the City of Brownsville, including, but not limited to Defendant Eduardo Treviño, occurring prior to or subsequent to the incident made the basis of this lawsuit, as such complaints or occurrences, if any, are not probative of the incident made the basis of this lawsuit, and would be highly prejudicial.

7.  Any statements referencing any insurance coverage that Defendant have or may not have that may or may not cover any liability in this matter.

8.  Any statement or record referencing hearsay within hearsay or triple hearsay.

- 2 -

9.      Any phonographs from Juan Jose Guajardo's autopsy, other than those submitted

as exhibits I-10 through I-15 referenced in Defendant's Exhibit List, as such

photographs are not probative of any material fact or issue and are likely to

enflame the jury and would cause Defendant great prejudice.

10.     Any testimony from Ruth Schulz regarding use of force procedures and training.

11.     Any testimony from Sam Ortega regarding the cause of Juan Jose Guajardo's

death, "choke holds," or the use and/or consequences of "choke holds" in karate.

12.     Any testimony from any person other than Margaret Cornwell, M.D. not

previously designated as an expert regarding Juan Jose Guajardo's cause of death.

WHEREFORE, PREMISES CONSIDERED, Defendant, Eduardo Treviño, prays that this

Court enter an Order instructing Plaintiffs and their witnesses to refrain from mentioning,

alluding to, or in any way referring to the foregoing matters during trial of this case without

express approval from the Court and for such other relief to which Defendant may show himself

justly entitled.

Signed on March 28, 2001.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas  78521
Telephone:  (956) 541-1846
Facsimile:  (956) 541-1893


By: _George C. Kraehe_____

      George C. Kraehe
      State Bar No. 00792631
      USDC Adm. No. 19355


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Defendant's Motion in Limine has on this the 28th day of March, 2001, been forwarded hand delivery to:

Mr. Victor Quintanilla
LAW OFFICES OF ERNESTO GAMEZ, JR.
777 E. Harrison
Brownsville, Texas 78520


_George C. Kraehe_____
George C. Kraehe


### CERTIFICATE OF CONFERENCE

Counsel for Defendant has conferred with counsel for Plaintiffs regarding the contents of this Motion.  Plaintiffs, through counsel, have voiced their opposition to this Motion.


_George C. Kraehe_____
George C. Kraehe

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY, | § | |
| ON BEHALF OF THE ESTATE OF JUAN | § | |
| JOSE GUAJARDO AND AS NEXT FRIEND | § | |
| OF THOMAS GUAJARDO, III, CYNTHIA | § | |
| GUAJARDO, AND CAROLINE GUAJARDO, | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-215 |
| | § | (JURY REQUESTED) |
| THE CITY OF BROWNSVILLE, CITY | § | |
| OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| BEN REYNA, CHIEF OF POLICE FOR | § | |
| CITY OF BROWNSVILLE POLICE DEPARTMENT, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY, EDUARDO TREVIÑO, INDIVIDUALLY | § | |
| IN HIS OFFICIAL CAPACITY; AND ANA | § | |
| HERNANDEZ, INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY | § | |

## ORDER GRANTING DEFENDANT'S MOTION IN LIMINE

On this _____ day of _____, 2001, came on to be heard Defendants' Motion in Limine.

All parties appeared by and through respective counsel.  The Court after examining the pleadings

and the arguments of counsel is of the opinion and finds as follows:

1.    GRANTED _____        DENIED _____

2.    GRANTED _____        DENIED _____

3.    GRANTED _____        DENIED _____

4.    GRANTED _____        DENIED _____

5.    GRANTED _____        DENIED _____

6.    GRANTED _____          DENIED _____

7.    GRANTED _____          DENIED _____

8.    GRANTED _____          DENIED _____

9.    GRANTED _____          DENIED _____

10.   GRANTED _____          DENIED _____

11.   GRANTED _____          DENIED _____

12.   GRANTED _____          DENIED _____


IT IS THEREFORE, ORDERED ADJUDGED and DECREED that Defendant's Motion

in Limine, except as may be otherwise indicated herein, is hereby GRANTED.

Signed this the _____ day of _____, 2001.


_____

UNITED STATES DISTRICT JUDGE