105

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 3 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARIA F. GUAJARDO, INDIVIDUALLY & AS ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO, AND AS GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, AND CAROLINE GUAJARDO, MINOR CHILDREN AND ALEJANDRO GARCIA & & & & & & & | & & & & & & CIVIL ACTION NO. 97-215 & & |
| VS. | & & |
| EDUARDO TREVIÑO, INDIVIDUALLY | & |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, MARIA F. GUAJARDO, INDIVIDUALLY, and as ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO, and as GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO, Minor Children, and ALEJANDRO GARCIA, Plaintiffs in the above-styled and numbered civil action, and file their Plaintiffs' Third Amended Complaint, and complain of Defendant EDUARDO TREVINO, Individually, hereinafter referred to as "Defendant TREVINO", and for cause of action would show the Court and Jury the following:

I.

JURISDICTION

1.01 This action is brought pursuant to 42 U.S.C. § 1983, the Fourth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and pursuant to the common law of the State of Texas.

## II.

## **PARTIES**

2.01 Plaintiffs are individuals residing in Brownsville, Cameron County, Texas. Plaintiffs are the surviving mother and children of **JUAN JOSE GUAJARDO**, Deceased.

2.02 Defendant **EDUARDO TREVINO** is a former city jailer and/or detention office at the Brownsville City Jail in Brownsville, Cameron County, Texas. And at all times mentioned in this complaint, Defendant **TREVIÑO** was, a City Jailer and/or detention officer at the Brownsville City Jail. Defendant was duly served with citation and has made an appearance herein. Thus, service of citation or summons on this Defendant is not necessary at this time.

## III.

## **NOTICE TO THE COURT ONLY**

3.01 On or about May 14, 1997, Plaintiff **MARIA F. GUAJARDO** was issued letters of temporary administration of the estate of **JUAN JOSE GUAJARDO**, Deceased (hereinafter referred to as "Decedent" or "MR. GUAJARDO"), by the County Court at Law No. Two, Cameron County, Texas, in Cause No. 1997-CGC-24-B.

3.02 On May 21, 1997, Plaintiff **MARIA F. GUAJARDO** was issued letters of temporary guardianship of Decedent's surviving children, **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO**, and **CAROLINE GUAJARDO**, minor children by the County Court at Law No. Two, Cameron County, Texas, in Cause No. 1997-CGC-24-B.

## IV.

## STATUTORY AUTHORITY UNDER TEXAS LAW

4.01 Plaintiffs also bring this action against Defendant **TREVIÑO**, in part, pursuant to the provisions of the Texas Civil Practice and Remedies Code, Texas Wrongful Death Act, § 71.002, and the Texas Civil Practice and Remedies Code, Survival Statute, § 71.021 to recover damages from Defendants herein for the wrongful death and survival action of **JUAN JOSE GUAJARDO**, decedent.

4.02 Plaintiffs are within the specified class of individuals entitled to bring this action pursuant to § 71.004 of the Texas Civil Practice and Remedies Code. Their respective names and relationships to JUAN JOSE GUAJARDO are as follows:

| Name of Beneficiary: | Relationship to Decedent: |
|---|---|
| Maria F. Guajardo | Mother |
| Thomas Guajardo, III | Son |
| Cynthia Guajardo | Daughter |
| Caroline Guajardo | Daughter |
| Alexandro Garcia | Son |

## V.

## FACTUAL ALLEGATIONS

5.01 Plaintiffs would show this Court and Jury that on the evening of **April 8, 1997**, JUAN JOSE GUAJARDO was arrested for public intoxication. MR. GUAJARDO was booked into the Brownsville city jail where he was confined to a single cell (W-3). Defendant **TREVIÑO**, who was employed as a jailer and/or detention officer, was working at the Brownsville City Jail on the evening of **April 8, 1997.**

3

5.02 At approximately 9:25 p.m., MR. GUAJARDO was allowed to use the jail telephone to call his mother, Plaintiff MARIA F. GUAJARDO. MR. GUAJARDO was escorted to the telephone by Defendant TREVIÑO. On the way back to his cell, between the WDT common cell and the W-single cells, a verbal confrontation between MR. GUAJARDO and Defendant TREVINO commenced due to a blanket. While other inmates were offering a blanket to MR. GUAJARDO, Defendant TREVINO pulled MR. GUAJARDO back towards the booking area while applying a "choke hold" from behind, around his neck. In this holding position, Defendant TREVINO slammed MR. GUAJARDO's head against a steel access door, which caused him to bounce to the lateral wall in the main hall. Thereafter, Defendant TREVINO asked for help and Jail Matron, ANA HERNANDEZ, came to assist him. While Defendant TREVINO had MR. GUAJARDO in the "choke hold", MS. HERNANDEZ then grabbed MR. GUAJARDO from the legs causing him to fall to the ground faced down. Defendant TREVINO and MS. HERNANDEZ then handcuffed MR. GUAJARDO.

5.03 Plaintiffs would show this Court and Jury that this incident lasted for a few minutes with the "choke hold" for about two minutes. The eye witnesses describe that MR. GUAJARDO was able to have some voluntary movements at the beginning of the "choke hold", but he became motionless and remained totally loose and limp without seeing him move again. Defendant TREVINO applied the "choke hold" to MR. GUAJARDO and changed his hold at least once from right to left or visa versa. Thereafter Defendant TREVINO dragged MR. GUAJARDO to a padded cell. Since MR. GUAJARDO was

4

gurgling and having trouble breathing, Defendant **TREVINO** and **MS. HERNANDEZ** argued about whether to call Brownsville EMS or not. Defendant **TREVINO** did not want **MS. HERNANDEZ** to call the EMS unit. Finally, **MS. HERNANDEZ**, called Brownsville EMS.

5.04 Upon arrival at the scene, a Brownsville EMS attendant checked **MR. GUAJARDO** who appeared to be unconscious. The Brownsville EMS attendant further examined **MR. GUAJARDO** who, by then, was not breathing and had no pulse. The Brownsville EMS attendant radioed a "**CODE BLUE**" call to the Brownsville EMS supervisor, and another unit was dispatched for assistance. The Brownsville EMS attendant administered CPR, hyperventilation, intubation, IV line placed, EPI and Atropine was used, sodium bicarbinnte, and the EKG tracing indicated that there was no response from **MR. GUAJARDO**. After Brownsville EMS attempted to resuscitate **MR. GUAJARDO**, he was transported to Brownsville Medical Center where he was treated and required advanced life support, "**FULL CODE BLUE**". **MR. GUAJARDO** never regained consciousness from the "**choke hold**" and died at Brownsville Medical Center approximately twenty-four (24) hours later, on **April 9, 1997**.

VI.

### VIOLATIONS OF
### 42 U.S.C. SECTION 1983

6.01 As mentioned in Paragraph I above, this action is brought pursuant to 42 U.S.C. § 1983, the Fourth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

5

6.02 Plaintiffs would show the Court and Jury that, at all times relevant hereto, Defendant **TREVINO** was acting under color of law and pursuant to the authority as a jailer and/or detention officer.

6.03 As alleged beforehand, a verbal confrontation commenced on the way back to **MR. GUAJARDO**'s cell between Defendant **TREVINO** and **MR. GUAJARDO**. When other inmates were offering a blanket to **MR. GUAJARDO**, Defendant **TREVINO** hit **MR. GUAJARDO** in the left side of the head causing him to lose his balance and stagger. Defendant **TREVINO** pulled **MR. GUAJARDO** back towards the booking area while applying a "choke hold" from behind **MR. GUAJARDO**, around his neck, slammed **MR. GUAJARDO**'s head against a steel access door, which caused him to bounce to the lateral wall in the main hall. Thereafter, Defendant **TREVINO** asked for help and Defendant **HERNANDEZ** came to assist him. While Defendant **TREVINO** had **MR. GUAJARDO** in the "choke hold", **MS. HERNANDEZ** then grabbed **MR. GUAJARDO** from the legs causing him to fall to the ground faced down, with Defendant **EDUARDO TREVIÑO**, on top of him, **MR. GUAJARDO**, and all the while maintaining the "choke hold" on **MR. GUAJARDO**. Defendant **TREVINO** and **MS. HERNANDEZ** then handcuffed **MR. GUAJARDO**.

6.04 Plaintiffs contend that when Defendant **EDUARDO TREVINO** applied the "choke hold" on **MR. GUAJARDO**, such conduct was to such a degree that **MR. GUAJARDO** became motionless, unconscious and was no longer breathing and had no pulse. Defendant **TREVIÑO**'s actions were wanton, reckless, and without justification. Defendant **TREVINO** willfully, maliciously and intentionally applied the "choke

6

hold" on **MR. GUAJARDO** thereby committing a battery on **MR. GUAJARDO** and inflicting serious injuries.

6.05 Plaintiffs would show the Court and Jury that on the date in question, **MR. GUAJARDO** was unarmed and helpless, and in no way posed a threat to Defendant **TREVINO** or to the safety of any other person or himself. The eyewitnesses at the scene have testified that Defendant **TREVINO** struck the first blow to **MR. GUAJARDO** and that at no time did **MR. GUAJARDO** either hit, push or shove Defendant **TREVINO**. The force applied by Defendant **TREVINO** was not done in a good faith effort to maintain or restore discipline, rather it was done for the purpose of causing harm.

6.06 Defendant **TREVINO** held **MR. GUAJARDO** in a "choke hold" and **MS. HERNANDEZ**, assisted without just and legal cause, thereby violating his rights under the laws and Constitution of the United States, in particular the Fifth and Fourteenth Amendment, and his right under the Constitution of the State of Texas.

6.07 In applying the "choke hold" on **MR. GUAJARDO** to such a degree that he became motionless, unconscious, stopped breathing, and had no pulse, Defendant **TREVINO** violated the rules and regulations of the City of Brownsville Police Department regarding the use of excessive force on inmates and/or detainees.

6.08 As a direct and proximate result of the above-described unlawful and malicious acts of Defendant **TREVIÑO**, all committed under color of his authority as a City of Brownsville City Jailer and Jail Matron, and while acting in that capacity, Decedent, **JUAN JOSE GUAJARDO**, suffered grievous bodily harm and extreme pain, all

7

of which is in violation of his rights under the laws and Constitution of the United States, in particular the Fifth, Eighth, and Fourteenth Amendments thereof and 42 U.S.C. § 1983.

6.09 MR. GUAJARDO was the victim of punishment administered in a grossly disproportionate manner to whatever his acts, if any, may have been. Defendant TREVIÑO's conduct deprived MR. GUAJARDO of his right to due process of law under the laws and Constitution of the United States, in particular the Fifth, Eighth, and Fourteenth Amendments thereof. The beating and strangling of Decedent, **JUAN JOSE GUAJARDO** was unwarranted, cruel, unjustifiable and excessive. Defendant TREVIÑO's actions were not objectively reasonable in light of the facts, and circumstances confronting Defendant TREVIÑO on the evening of April 8, 1997.

6.10 As a further result of the above-described acts, Decedent, JUAN JOSE GUAJARDO, was deprived of rights and immunities provided to him, under the Constitution and Laws of the United States and of the State of Texas including, but not limited to, his rights under the Fourteenth Amendment to secure his person, to be free from punishment without due process, and to the equal protection of the laws.

6.11 As a further result of the above described acts, Defendants' actions have caused Decedent **JUAN JOSE GUAJARDO** and Plaintiffs, personal injury, mental anguish, loss of esteem, and other damages, which was proximately caused by Defendant TREVIÑO in the use of excessive, unnecessary, and unlawful force which deprived MR. GUAJARDO of his constitutional rights.

8

ClibPDF - www.fastio.com

6.12 Plaintiffs would further show this Court and Jury that Deendant **TREVINO** had either no training or inadequate training in carrying on his duties as jailer and/or detention officer. Plaintiffs allege that such of lack of education, experience, and training is a contributing cause in the use of the excessive force upon **MR. GUAJARDO**.

## VII.

### DAMAGES SUSTAINED BY THE PLAINTIFFS

7.01 As a direct and proximate result of the conduct of Defendant **TREVIÑO**, **MR. GUAJARDO** suffered abrasions to the right forehead, bridge of the nose, elbow, bruises to his back, right side of his face, elbows, arms, legs, and a "choke hold" which resulted in the hemorrhaging to his left eye, neck, just behind right ear, and his entire body. The "choke hold" prevented the blood and air flow through **MR. GUAJARDO**'s body which caused his body to go into shock and resulted in his untimely death. The loss of consciousness and death points toward asphyxia as the mechanism that triggered the chain of events that killed **MR. GUAJARDO**. **MR. GUAJARDO**'s entire body was bruised, battered, and contused, and he suffered great shock to his entire nervous system. **MR. GUAJARDO** was rushed to Brownsville Medical Center in a state of "CODE BLUE" where he was treated and died approximately twenty-four (24) hours from the time he was admitted. **MR. GUAJARDO** further suffered the following injuries:

(1) Massive injuries to his entire body as a result of the excessive force which were aggravated by Defendant **TREVINO**'s "choke hold".

9

    (2)    Great shock to his entire nervous system from the "choke hold" by Defendant **TREVINO** which caused his heart attack.

    (3)    Great physical mental pain and anguish from the excessive force used on him by Defendant **TREVINO**.

7.02 **MR. GUAJARDO** died on **April 9, 1997**, as a direct and proximate result of the occurrence and the injuries inflicted upon him by the conduct of Defendant **TREVIÑO**, including, but not limited to the violation of **MR. GUAJARDO**'s constitutional rights.

7.03 As a result of the aforementioned conduct of Defendant **TREVIÑO, MR. GUAJARDO** suffered great physical and mental pain and anguish. He suffered from being battered and placed in a "**choke hold**" which resulted in a heart attack, being brought back to life, and taken to the hospital for treatment. He suffered great shock to his entire body and nervous system. **MR. GUAJARDO** died on **April 9, 1997**, after several hours of conscious pain and suffering. The injuries resulted in **MR. GUAJARDO**'s untimely death.

7.04 **MR. GUAJARDO** was 39 years of age at the time of his death. He was in good health, with a reasonable life expectancy of 70 years. He was attending college at the time of his untimely death. **MR. GUAJARDO** was residing with his mother, Plaintiff **MARIA F. GUAJARDO**. **MR. GUAJARDO** was the father of the Minor Plaintiffs **THOMAS GUAJARDO, III., CYNTHIA GUAJARDO,** and **CAROLINE GUAJARDO**, and Plaintiff **ALEJANDRO GARCIA**. During his lifetime, **MR. GUAJARDO** was industrious and energetic, a good father, a good son, and provider. He performed numerous and usual tasks in and about the family residence, and gave advice, counsel, comfort, care and protection to his mother and children. In all reasonable probability, he

10

would have continued to do so, providing for and supporting his mother for the remainder of her natural life, and caring for and supporting his children at least until they attained adulthood, and probably thereafter, as he planned to provide each child with all the costs incident to attending college in accordance with their respective desires and goals in life.

7.05 Plaintiff **MARIA F. GUAJARDO** has suffered pecuniary losses from the death of her son, **JUAN JOSE GUAJARDO**, including loss of care, maintenance, support, services, advice, counsel, society, companionship, mental anguish, the emotional and mental trauma resulting from the untimely death of a loved one, funeral and burial expenses, and contribution of a pecuniary value that she would in reasonable probability, have received from her son during his lifetime had he lived.  She has suffered severe the destruction of the parent-child relationship and mental depression and anguish, grief and sorrow as a result of the death of her son, **JUAN JOSE GUAJARDO**, and is likely to continue to suffer for a long time in the future.  For these losses, **MARIA F. GUAJARDO**, seeks damages in a sum in excess of the minimum jurisdictional limits of the Court.

7.06 Plaintiffs **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO,** and **ALEJANDRO GARCIA**, have suffered pecuniary loss from the death of their father, **JUAN JOSE GUAJARDO**, including losses of care, maintenance, support, services, advice, counsel, and contribution of a pecuniary value that they would in reasonable probability, have received from their father during his lifetime had he lived.  They have suffered additional losses by virtue of

11

the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. They have suffered severe mental depression and anguish, grief and sorrow as a result of the death of their father, **JUAN JOSE GUAJARDO**, and are likely to continue to suffer for a long time in the future. For these losses, **THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO,** and **ALEJANDRO GARCIA,** seek damages in a sum in excess of the minimum jurisdictional limits of the Court.

7.07 Plaintiffs **MARIA F. GUAJARDO, THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO,** and **ALEJANDRO GARCIA,** suffered a loss of inheritance that, in all reasonable probability, **MR. GUAJARDO** would have left to them by will or inheritance. For these losses, Plaintiffs seek damages in a sum in excess of the minimum jurisdictional limits of this Court.

7.08 As a result of Defendant **TREVIÑO's** conduct as stated above, and as a direct and proximate result of said conduct, **MR. GUAJARDO** experienced excruciating conscious pain and terror of grasping for air as Defendant **TREVINO** applied the "choke hold" on him, which resulted in his heart failure and untimely death. The estate of **MR. GUAJARDO** has paid or incurred liability to pay $5,461.00, a reasonable and customary charge for funeral and burial services. By reason of all of the above and foregoing, the **ESTATE OF JUAN JOSE GUAJARDO** has been damaged in said amount and seeks to recover said funeral and burial expenses from Defendant **TREVIÑO.**

12

7.09 As a proximate result of the occurrence made the basis of this suit, **MR. GUAJARDO** sustained severe bodily injuries, consisting of abrasions to the right forehead, bridge of the nose, elbow, bruises to his back, right side of his face, elbows, arms, legs, and a "choke hold" which resulted in the hemorrhaging to his left eye, neck, just behind right ear, and his entire body. The "choke hold" prevented the blood and air flow through **MR. GUAJARDO's** body which caused his body to go into shock and resulted in a heart attack and his untimely death. **MR. GUAJARDO** was transported from the Brownsville City Jail to Brownsville Medical Center, "CODE BLUE" status, where he was under the care of physicians, surgeons, and nurses. The estate of **MR. GUAJARDO** has paid or incurred liability to pay the reasonable and necessary charges for medical care and treatment, including $443.00 for ambulance, and approximately $31,570.70 for hospital services, physicians, and supplies. On account of the nature of the seriousness and severity of **JUAN JOSE GUAJARDO's** injuries, he required medical care and attention. The **ESTATE OF JUAN JOSE GUAJARDO** has been required to pay for reasonable and customary medical and doctor's expenses and seeks to recover these expenses from Defendant **TREVIÑO**.

7.10 As a direct and proximate result of the unlawful conduct of Defendant **TREVIÑO** as described above, **MR. GUAJARDO** suffered mental, physical and emotional pain and suffering resulting in his death and was deprived of his substantive rights of life, liberty and due process, under the United States Constitutional all to **MR.**

13

**GUAJARDO's** damages in a sum in excess of the minimum jurisdictional limits of this Court for which the **ESTATE OF JUAN JOSE GUAJARDO** hereby sues.

7.11 Prior to the aforementioned incident, **MR. GUAJARDO** had been previously suffering from heart disease. Plaintiffs contend, however, that **MR. GUAJARDO's** condition was quiescent. It caused him little or no pain or discomfort and did not disable him in any way. The injuries sustained by **JUAN JOSE GUAJARDO** on the evening of April 8, 1997 aggravated, exacerbated, and activated this previously dormant condition so that **MR. GUAJARDO** suffered from asphyxia due to a "choke hold" applied around his neck by Defendant **EDUARDO TREVINO**, and ultimately caused a myocardial infarction and his untimely death.

## VIII.

### ALLEGATIONS OF GROSS NEGLIGENCE

8.01 Plaintiffs would show that the conduct of Defendant **TREVIÑO** as described above, was of such character as to make him guilty of gross negligence. The conduct of Defendant **TREVIÑO**, viewed objectively from the standpoint of Defendant at the time of its occurrence, involved an extreme degree of risk, considering the probability and the magnitude of potential harm to others, including but not limited to Plaintiffs and **MR. GUAJARDO**. Moreover, Defendant **TREVIÑO** engaged in the said conduct with conscious indifference to the rights, safety, or welfare of others, despite his actual, subjective awareness of the risk involved. Plaintiffs **MARIA F. GUAJARDO, THOMAS GUAJARDO, III, CYNTHIA**

14

GUAJARDO, CAROLINE GUAJARDO, and ALEJANDRO GARCIA, seek exemplary damages against Defendant TREVIÑO in such an amount as may be found to be proper under the facts and circumstances.

8.02 The conduct of Defendant EDUARDO TREVINO, was willful, wanton, malicious and one with an evil motive and intent and a reckless disregard for the rights and safety of MR. GUAJARDO, and therefore warrants the imposition of exemplary and/or punitive damages in an amount to be determined by the jury or trier of fact for which Plaintiffs hereby sue.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs MARIA F. GUAJARDO, Individually, as Administrator of the ESTATE OF JUAN JOSE GUAJARDO, and as Guardian of THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, CAROLINE GUAJARDO, Minors, and ALEJANDRO GARCIA, respectfully pray that Defendant EDUARDO TREVINO, Individually, be cited to appear and answer, that a trial by jury be had on the merits, and that on final trial, Plaintiffs be awarded the following:

1. Judgment against Defendant EDUARDO TREVIÑO for actual, compensatory, and general damages within the jurisdictional limits of this Court;

2. Prejudgment and post judgment interest as provided by law;

3. An award of exemplary and/or punitive damages against Defendant EDUARDO TREVIÑO in a sum to be determined by the trier of fact;

4. Reasonable costs and expenses of this action, including reasonable attorneys' fees; and

5. Such other and further relief to which Plaintiffs may be justly entitled.

15

Respectfully submitted,

**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas  78520
TEL/ (956) 541-3820
FAX/ (956) 541-7694

BY: _/s/ Victor Quintanilla_
VICTOR QUINTANILLA
Federal Id. No. 16073
State Bar No.: 00786181

ATTORNEY-IN-CHARGE   FOR PLAINTIFFS

MARIA F. GUAJARDO, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF JUAN JOSE GUAJARDO AND AS GUARDIAN OF THOMAS GUAJARDO, III, CYNTHIA GUAJARDO, AND CAROLINE GUAJARDO, MINOR CHILDREN AND ALEJANDRO GARCIA

16

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA**, hereby certify that on this 3rd day of April, 2001, a true and correct copy of the foregoing Plaintiffs' Third Amended Complaint was served via hand-delivery to Defendant's counsel of record, Hon. George C. Kraehe, **WILLETTE & GUERRA, L.L.P.**, International Plaza, Suite 460, 3505 Boca Chica Blvd., Brownsville, Texas, 78521.

*/s/ Victor Quintanilla*
**VICTOR QUINTANILLA**

17